**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| DR. MANHUA MANDY LIN | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | CIVIL ACTION NO.  02-cv-3612 |
| | : | |
| ROHM AND HAAS COMPANY | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant | : | |

**AMENDED COMPLAINT**

## I.    PARTIES

1.      Plaintiff, Dr. Manhua Mandy Lin ("Dr. Lin") is an individual who resides at 1616 Holly Hall Lane, Maple Glen, Pennsylvania 19002 and was employed by Rohm and Haas as a Senior Scientist until November 1999.

2.      Defendant, Rohm and Haas Company is a Delaware Corporation with its corporate offices at 100 Independence Mall West, Philadelphia, Pennsylvania 19106.

## II.    JURISDICTION AND VENUE

3.      This action arises under Title 42 U.S.C. § 1981 and 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq, the Fourteenth Amendment to the Constitution of the United States, the Pennsylvania Human Relations Act, 43 P.S. §951 et seq, together with related claims arising under state law.

4.      The jurisdiction of the Court is invoked under the provisions of Title 28 U.S.C. § 1331 and 1343 and Title 42 U.S.C. § 2000e-5(f), together with pendent jurisdiction over claims arising under state law.

5.    Venue is proper in this district as all parties reside in this district and the events complained of occurred in this district.

6.    All conditions precedent to the institution of this action have been fulfilled.

III.    **FACTUAL ALLEGATIONS**

7.    Plaintiff, Dr. Lin, is a highly respected female scientist of Chinese origin.

8.    Dr. Lin was hired by Rohm and Haas on January 3, 1989 as a Senior Scientist and, subsequent to February 1995, worked in the New Routes Team of the Monomers Research Department at Rohm and Haas.

9.    As a Senior Scientist in the New Routes Team of the Monomers Research Department, Dr. Lin was instrumental in inventing preparation processes for a wide variety of high yield catalysts for the catalytic synthesis of acrylic acid from propane.

10.    Despite Dr. Lin's breakthrough inventions, Rohm and Haas failed and refused to recognize the value of her invention, routinely and repeatedly belittled her scientific achievement, attempted to give credit to other persons for her accomplishments, failed and refused to reward her for her invention, retaliated against her when she voiced her concerns about unfair treatment to Asian-Americans and otherwise harassed her and treated her in a discriminatory manner.

11.    Dr. Lin's scientific achievement was compared to the achievement of "a monkey," and was claimed by Rohm and Haas to be of no value whatsoever.

12.    Despite the efforts to belittle Dr. Lin's scientific achievement, her inventions were incorporated into multiple patent applications filed by Rohm and Haas in

the United States Patent Office and in patent offices worldwide, wherein Dr. Lin was named in the applications as sole or the principal inventor.

13.     As a result of the persistent and pervasive discriminatory and retaliatory treatment to which she was subjected, in January 1999 Dr. Lin filed a Complaint with the EEOC (Charge No. 170990468) alleging that she was subjected to discrimination and retaliation on the basis of her race, gender and national origin.

14.     The EEOC took an active role in mediating a settlement of the dispute between Dr. Lin and Rohm and Haas.  The terms of the Settlement are set forth in a Settlement Agreement that provided specific rights and remedies to Dr. Lin.  A copy of the executed Settlement Agreement dated November 10, 1999, is in the possession of both parties.

15.     Subsequently, Dr. Lin and Rohm and Haas further formalized the terms of Dr. Lin's separation from Rohm and Haas in a written Agreement titled Agreement and Release.  A copy of the executed Agreement and Release dated November 18, 1999, is in the possession of both parties.

16.     As part of the settlement, Dr. Lin agreed to resign from Rohm and Haas as of November 30, 1999.

17.     Throughout the proceedings before the EEOC, representatives of Rohm and Haas repeatedly represented to the EEOC that Dr. Lin's invention with respect to the catalytic synthesis of acrylic acid from propane was of absolutely no value.

18.     Pursuant to Paragraph 7(I) of the EEOC Settlement Agreement and Paragraph 5(h) of the Agreement and Release, the parties agreed that Dr. Lin would be able to publish scientific papers and make the scientific presentations  pertaining to her

work while employed at Rohm Haas on the condition that she provide Rohm and Haas with the opportunity to review her publication/presentation for trade secret content prior to the time that it was actually published or presented.

19.    Pursuant to the Paragraphs 7(D) of he EEOC Settlement Agreement and 5(g) of the Agreement and Release, the parties agreed that Dr. Lin would be named on all patents filed by Rohm and Haas for which she was entitled, according to U.S. patent law, to be an inventor.

20.    Rohm and Haas further agreed to inform Dr. Lin of the filing status of all Rohm and Haas' patent applications in which Dr. Lin was, or should have been, named as an inventor.

21.    Rohm and Haas knew and agreed that Dr. Lin required the opportunity to make presentations and publish papers about her scientific work and required that she be credited with lawful inventorship of her inventions for the specific purpose of enhancing her standing in the scientific community and to assist her to secure future employment.

22.    Rohm and Haas agreed that an inherent component of Dr. Lin's right to publish scientific papers was her right to access and possession of the underlying data and other information required to prepare the scientific papers and/or presentations, and to verify the truthfulness of the contents of any patent applications to be filed by Rohm and Haas in which she was the lawful inventor.

23.    Rohm and Haas further agreed to pay out-of-pocket expenses and reasonable compensation for time spent by Dr. Lin in the review of papers or other data in connection of patent applications filed by Rohm and Haas for Dr. Lin's inventions.

24.    Prior to the effective date of her resignation, Dr. Lin met with representatives of Rohm and Haas for the specific purpose of reviewing an inventory of her inventions to be incorporated into future patent applications and a list of topics for potential scientific papers and presentations relating to her work to discuss whether any of the proposed presentations/publications would implicate trade secrets of Rohm and Haas.  The results of that meeting were recorded in writing.

25.    At the time of her departure from Rohm and Haas, representatives of Rohm and Haas specifically acknowledged, in writing, that Dr. Lin was retaining in her possession copies of various documents containing confidential information, data and other information required to prepare the agreed publications/presentations and conduct patent application reviews for Rohm and Haas.

26.    On multiple occasions after the termination of her employment, Dr. Lin performed services for Rohm and Haas and submitted proposed scientific papers and presentations to Rohm and Haas that required the use of data retained in Dr. Lin's possession after her departure from Rohm and Haas.

27.    At all times material hereto, Rohm and Haas knew and agreed that Dr. Lin was authorized to be in possession of the technical data and scientific documents pertaining to her work.

28.    Rohm and Haas made no objection to Dr. Lin's access to the technical data and was well aware that certain data was in her possession.

29.    Rohm and Haas submitted draft patent applications for her inventions to Dr. Lin for review and paid her for the time spent (twenty hours) reviewing data in

conjunction with her verification of the truthfulness of patent application against the data in her possession.

30.    In December 1999, the European Patent Office published a patent application (EP 0 962 253 A2) (hereinafter, the "EP 253") for Dr. Lin's invention of a process for catalytic synthesis of acrylic acid from propane.

31.    The complete patent application is available to the public in general and specifically to the competitors of Rohm and Haas and was published on the World Wide Web.

32.    The EP 253 contains detailed instructions for making a series of mixed metal oxide catalysts as described in Examples 1-16 of the application.

33.    Any scientist reasonably skilled in the art can follow the instructions published in EP 253 and create a catalyst identical to one or more of the sixteen catalysts described in the examples in the application.

34.    Any scientist skilled in the art, using standard characterization techniques, can obtain objectively measurable characteristics of each of the catalysts described in EP 253 by creating the catalyst and subjecting the resulting catalyst to standard tests.

35.    Objectively measurable characteristics of the catalysts described in the claims, examples and specifications of the EP 253 are not Rohm and Haas trade secrets nor do they constitute Rohm and Haas confidential information.

36.    In March 2000, Dr. Lin attended a meeting of the American Chemical Society in San Francisco to make a presentation concerning the preparation, characterization and performance of catalysts based upon the patent examples disclosed in EP 253.

37.     The abstract of her presentation had been approved by Rohm and Haas prior to her departure from Rohm and Haas, including her request to reference the effects of various preparative techniques on catalytic structure and the resulting effect on catalytic performance.

38.     In preparation for the presentation, and in compliance with her obligations under the Settlement Agreement and Agreement and Release, Dr. Lin provided an outline of the substance of her presentation to Rohm and Haas for its trade secret review.

39.     The outline included a reference to information published in the EP 253 that had not been included in the original abstract.

40.     The new information was publicly disclosed in EP 253 as the invention of Dr. Lin.

41.     Rohm and Haas advised Dr. Lin that disclosure of the material, even though already published, was not in Rohm and Haas' "best interest" because it would draw attention to advances made by Rohm and Haas in this competitive field.

42.     Rohm and Haas demanded that Dr. Lin remove the reference to her published  invention from the slides she proposed to use in her presentation.

43.     Rohm and Haas made no effort to utilize formal legal remedies to prevent Dr. Lin from making the disclosures contained in her proposed presentation as it was aware that there was no legal basis to prevent a discussion of previously published scientific data.

44.      Despite its failure to seek formal legal protection, immediately prior to her presentation to the American Chemical Society, representatives of Rohm and Haas

threatened to destroy Dr. Lin's future employment opportunities if she proceeded with the presentation that included the reference to the new information published in EP 253.

45.    On March 28, 2000, Dr. Lin made the presentation to the American Chemical Society.

46.    The presentation was limited to information from the patent examples disclosed in the EP 253 for her invention concerning the catalytic synthesis of acrylic acid from propane.

47.    At no time did Dr. Lin disclose information that constituted a trade secret or confidential information of Rohm and Haas other than as specifically authorized by Rohm and Haas or by law.

48.    Subsequent to Dr. Lin's presentation, Rohm and Haas took no action to protect any alleged trade secrets or confidential information from further disclosure by Dr. Lin as it was aware that Dr. Lin's presentation was not in violation of any legal or contractual obligation to Rohm and Haas.

49.    On or about April 2, 2000, Dr. Lin made an informal complaint to the EEOC that the actions of Rohm and Haas in threatening her future employment prior to her presentation to the American Chemical Society were in violation of the terms of the Settlement Agreement and otherwise prohibited by law.

50.    Plaintiff is advised, believes and therefore avers that on or about May 23, 2000, the EEOC notified Rohm and Haas that Dr. Lin had complained that Rohm and Haas had repeatedly failed to comply with the Settlement Agreement and was otherwise improperly threatening her or seeking to impose unauthorized obligations on her.

51.     On or about May 26, 2000, a representative of Rohm and Haas sent a letter to Dr. Lin alleging for the first time that: a) Dr. Lin had taken data from Rohm and Haas without Rohm and Haas' permission or knowledge; b) Dr. Lin had disclosed Rohm and Haas trade secrets at her March 2000 presentation to the American Chemical Association; c) Dr. Lin had acknowledged to the EEOC mediator that she was contemplating making future presentations without consulting with Rohm and Haas prior to those presentations.

52.     Dr. Lin subsequently met with the EEOC mediator who denied that he had ever advised to Rohm and Haas that Dr. Lin would not be faithful to her obligations.

53.     On or about June 1, 2000, an EEOC representative hand delivered a letter to Rohm and Haas to specifically correct any erroneous "impression" Rohm and Haas may have drawn from the prior conversation and to reaffirm Dr. Lin's intention to comply with her contractual obligations.

54.     On or about June 2, 2000, Rohm and Haas filed a lawsuit in the Court of Common Pleas of Montgomery County, Pennsylvania at Civil Action No. 00-10035 (served June 5, 2000), seeking a Preliminary and Permanent Injunction (the "Injunction Action") on the basis that Dr. Lin was threatening to publish confidential and trade secret information in the future without providing Rohm and Haas with prior opportunity for trade secret review.

55.     At the time the Injunction Action was filed, Rohm and Haas had no information that Dr. Lin posed an immediate threat to disclose trade secrets belonging to Rohm and Haas but asserted the same nevertheless.

56.    At the time the Injunction Action was filed, Dr. Lin had no specific scientific presentation contemplated or scheduled.

57.    Dr. Lin subsequently formalized her allegations of discrimination and retaliation against Rohm and Haas in charges filed with the EEOC and the Pennsylvania Human Relations Commission and served on Rohm and Haas.

58.    At a hearing on the Preliminary Injunction on July 11, 2000, Rohm and Haas sought and obtained, prior to the introduction of any evidence, a Preliminary Injunction containing terms that are inconsistent with and more burdensome to Dr. Lin than the terms of the EEOC Settlement Agreement or the Agreement and Release.

59.    The terms of the Preliminary Injunction insisted on and obtained by Rohm and Haas contain greater restrictions on Dr. Lin's ability to use or discuss scientific information than that imposed on any current or former employee of Rohm and Haas.

60.    The Preliminary Injunction was revised by Order of April 17, 2001 providing still greater restrictions on Dr. Lin and her right to use and disclose information based on affirmative representations by Rohm and Haas that such restrictive terms were consistent with Rohm and Haas' policies applicable to all employees.

61.    The terms of the policies represented by Rohm and Haas in Court are far more restrictive than the policies applied by Rohm and Haas to any current or former employee of Rohm and Haas.

62.    The representations made in Court by authorized representatives of Rohm and Haas concerning Rohm and Haas' policies were intended to and did effectively foreclose Dr. Lin from seeking future employment and/or pursuing professional opportunities.

63.     The injunctive relief pursued by Rohm and Haas was intended to and did effectively deprive Dr. Lin of substantive benefits to which she was entitled under the EEOC Settlement Agreement and the Agreement and Release.

64.     Rohm and Haas aggressively litigated the matter and at its insistence obtained a Preliminary Injunction whose terms are punitive and more restrictive than the obligations imposed on any present or former Rohm and Haas employee.

65.     Rohm and Haas based its claim on information and evidence that was knowingly false, deceptive and/or intentionally misleading.

66.     Rohm and Haas made affirmative allegations about its exposure to past and future potential damage that were knowingly false, exaggerated or misleading.

67.     Rohm and Haas represented that Dr. Lin had previously disclosed trade secrets and confidential information knowing the same to be false.

68.     Rohm and Haas pursued the litigation in a manner calculated to drain Dr. Lin of her resources before the matter could be resolved on the merits.

69.     Rohm and Haas pursued the litigation in bad faith and with full knowledge that the representations made to the Court on its behalf were false, misleading and/or fabricated.

70.     Subsequent to learning of Dr. Lin's effort to seek the assistance of the EEOC and PHRC to require Rohm and Haas to comply with its obligations under the Settlement Agreement and the law, Rohm and Haas has:

    A.    Demanded that Dr. Lin execute patent applications for certain of her inventions while refusing to disclose to her the substance of the application and the underlying data.

    B.    Refused to compensate Dr. Lin for her post-employment efforts expenses incurred on multiple patent applications on behalf of

Rohm and Haas as required by the Settlement Agreement and Agreement and Release.

C.    Insisted that Dr. Lin execute assignments of certain patent rights without disclosing the substance of the patent claims to her.

D.    Filed patent applications for Dr. Lin's inventions and in her name without consulting with her or giving her an opportunity to review and approve the applications concerning her invention.

E.    Filed patent applications for Dr. Lin's inventions listing other persons as inventors who were not the inventors of the inventions.

F.    Filed patent applications for inventions where Dr. Lin was the primary or principal inventor while refusing to acknowledge that status.

G.    Failed and refused to provide Dr. Lin with information concerning the current status of applications for patents for which she is an inventor.

H.    Refused to timely approve proposed scientific presentations and publications despite the full knowledge that the proposed presentations and publications contained no Rohm and Haas trade secret information.

I.    Affirmatively interfered with Dr. Lin's efforts to obtain employment in the scientific community by withholding trade secret approval of her proposed presentations or delaying trade secret review for an unwarranted and unnecessary length of time.

J.    Insisted that Dr. Lin comply with policies and procedures that are more burdensome and restrictive than apply to any other current or former employee.

K.    Disparaged Dr. Lin's good name and reputation in the scientific community, including potential employers.

L.    Published articles circulated to all Rohm and Haas employees worldwide suggesting that Dr. Lin misappropriated confidential information and trade secrets and was willing to disclose that information to third parties until stopped by legal action.

M.    Threatened Dr. Lin with additional legal action and adverse employment actions if she continues to assert her rights as established by agreement and by law.

71.     All of the foregoing conduct was a continuation of the discrimination and retaliation based on her race and national origin that had characterized Rohm and Haas' conduct during Dr. Lin's employment as well as retaliation against Dr. Lin for asserting her rights before the EEOC and PHRC and seeking the benefit of the EEOC/PHRC's enforcement proceedings.

72.     Rohm and Haas' justification for its conduct is transparent and pretextual.

73.     As a direct and proximate result of the conduct of Rohm and Haas, Dr. Lin has been unable to attend to her personal and professional obligations to her great detriment and loss.

74.     As a direct and proximate result of the conduct of Rohm and Haas, Dr. Lin has suffered severe emotional distress, embarrassment, emotional pain and suffering, inconvenience, loss of life's pleasures and diminution of her reputation and standing in the community.

75.     As a direct and proximate result of the conduct of Rohm and Haas, Dr. Lin has suffered and continues to suffer severe economic harm, including a loss of past and future wages and benefits and a loss of past and future professional opportunities.

76.     As a direct and proximate result of the conduct of Rohm and Haas, Dr. Lin has been caused to incur and continues to incur substantial costs and expenses to defend herself from Rohm and Haas' retaliatory claims as well as for medical care and treatment.

77.     The conduct of Rohm and Haas has been characterized by a knowing and intentional disregard for Dr. Lin's rights and/or a reckless and callous indifference to her rights and serves no legitimate interest of Rohm and Haas.

78.     At all times material hereto, the conduct of Rohm and Haas has been outrageous in that it has been devoid of a proper purpose, knowingly intended to harass and cause the maximum detriment and injury to Dr. Lin and represents a misuse and abuse of the legal system and is so cruel and malicious as to shock the conscious of Court and warrant the imposition of punitive damages.

**COUNT I**
**14th AMENDMENT -TITLE 42 U.S.C. § 1981**
**EQUAL RIGHTS UNDER LAW**

79.     Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 78 above by reference as though same were set forth at length herein.

80.     During Dr. Lin's employment with Rohm and Haas, Rohm and Haas engaged in a persistent and pervasive series of discriminatory acts intended to deprive Dr. Lin of the benefits and rights enjoyed by other employees who are of non-Chinese extraction.

81.     Subsequent to Dr. Lin's resignation, Rohm and Haas continued its discriminatory activities and has repeatedly and persistently engaged in discriminatory conduct intended to deprive Dr. Lin of the benefits, privileges, terms and conditions of her contractual relationship with Rohm and Haas.

82.     In seeking injunctive relief Rohm and Haas applied policies, terms and conditions to Dr. Lin and to Dr. Lin's conduct that are inconsistent with her contractual rights and have discriminated against her based on her race and national origin.

83.     The discriminatory conduct of Rohm and Haas has impaired her right to make and enforce contracts and to the full and equal benefit of all laws and proceedings as enjoyed by persons of non-Chinese extraction and has subjected her to punishment and penalties that are more severe than those imposed on persons of non-Chinese extraction.

84.    The conduct of Rohm and Haas has been undertaken with an evil and malicious motive and is in violation of the protections afforded by Title 43 U.S.C. § 1981 and by the Fourteenth Amendment to the United States Constitution.

85.    As a direct result of the conduct of Rohm and Haas, Dr. Lin has suffered and continues to suffer injuries and damage aforesaid.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and requests that this Court grant relief as follows:

A.    Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.    Compensatory Damages for lost past and future income and benefits.

C.    Compensatory Damages for out-of-pocket expenses, including and counsel fees and costs required to defend herself from Rohm and Haas' retaliatory and discriminatory claims and medical expenses.

D.    Punitive Damages

E.    Interest

F.    Attorney fees and costs

G.    Such other further relief as the Court deems just and appropriate.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e-3(a) RETALIATION

86.    Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 85 above by reference as though same were set forth at length herein.

87.    At the time that Rohm and Haas instituted the Injunction Action, Rohm and Haas knew that there was no basis to support its claim that Dr. Lin posed an

immediate threat to disclose trade secrets and confidential information belonging to Rohm and Haas.

88.    The representations and claims asserted by Rohm and Haas in support of its claim for injunctive relief were pretextual and were known by Rohm and Haas to be false and without substantive merit.

89.    Rohm and Haas's pursuit of Dr. Lin by filing the Injunction Action and the aggressive, tenacious, and wrongful subsequent pursuit of that claim served no substantive purpose and was a continuation of the discrimination and retaliation based on her race and national origin that had characterized Rohm and Haas' conduct during Dr. Lin's employment.

90.    Rohm and Haas' pursuit of Dr. Lin by filing the Injunction Action and seeking injunctive relief was in retaliation against Dr. Lin for asserting her rights before the EEOC.

91.    The Injunction Action would not have been filed had Dr. Lin not asserted charges against Rohm and Haas before the EEOC and sought the benefit of the EEOC's enforcement proceedings.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and requests that this Court grant relief as follows:

A.    Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.    Compensatory Damages for lost past and future income and benefits.

B.    Compensatory Damages for out-of-pocket expenses, including and counsel fees and costs required to defend herself from Rohm and Haas' retaliatory and discriminatory claims and medical expenses.

D.          Punitive Damages

E.          Interest

F.          Attorney fees and costs

G.          Such other further relief as the Court deems just and appropriate.

**COUNT III**
**VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. §955(d) – RETALIATION**

92.    Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 91 above by reference as though same were set forth at length herein.

93.    At the time that Rohm and Haas instituted the Injunction Action, Rohm and Haas knew that there was no basis to support its claim that Dr. Lin posed an immediate threat to disclose trade secrets and confidential information belonging to Rohm and Haas.

94.    The representations and claims asserted by Rohm and Haas in support of its claim for injunctive relief were pretextual and were known by Rohm and Haas to be false and without substantive merit.

95.    Rohm and Haas's pursuit of Dr. Lin by filing the Injunction Action and the aggressive, tenacious, and wrongful subsequent pursuit of that claim served no substantive purpose and was a continuation of the discrimination and retaliation based on her race and national origin that had characterized Rohm and Haas' conduct during Dr. Lin's employment.

96.     Rohm and Haas pursuit of Dr. Lin in filing the Injunction Action and seeking injunctive relief was in retaliation against Dr. Lin for asserting her rights before the PHRC.

97.     The Injunction Action would not have been filed had Dr. Lin not asserted her rights before the PHRC and sought the benefit of the PHRC's enforcement proceedings.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and requests that this Court grant relief as follows:

A.     Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.     Compensatory Damages for lost past and future income and benefits.

C.     Compensatory Damages for out-of-pocket expenses, including and counsel fees and costs required to defend herself from Rohm and Haas' retaliatory and discriminatory claims and medical expenses.

D.     Punitive Damages

E.     Interest

F.     Attorney fees and costs

G.     Such other further relief as the Court deems just and appropriate.

**COUNT IV**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e-3(a) – RETALIATION**

98.     Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 97 above by reference as though same were set forth at length herein.

99.     Despite its Agreement that Dr. Lin had the right to publish scientific papers and make scientific presentations and to retain and use Rohm and Haas' data for the preparation of those papers and presentations, since June, 2000 Rohm and Haas has consistently frustrated Dr. Lin's ability prepare and present scientific papers and publications by refusing to provide data required for the preparation of those presentations and preparations.

100.     Rohm and Haas has consistently refused to provide data in a timely fashion for the sole purpose of hindering Dr. Lin's ability to prepare scientific papers and presentations.

101.     Rohm and Haas has consistently failed and refused to provide a timely trade secret review of Dr. Lin's proposed scientific papers and presentations.

102.     Rohm and Haas has failed and refused to approve Dr.Lin's proposed scientific publications and presentations despite full knowledge that the proposed presentations and publications contained public information and not Rohm and Haas' trade secret information.

103.     Rohm and Haas has adopted a policy of hindering or precluding scientific publications and presentations by Dr. Lin solely for the purpose of undermining her ability to obtain employment in her field, to take advantage of professional opportunities and to otherwise advance her professional career.

104.     The conduct of Rohm Haas as aforesaid is in furtherance of the threats made by Rohm Haas prior to Dr. Lin's presentation to the American Chemical Society in March 2000 and is a continuation of the discrimination and retaliation based on her race

and national origin that had characterized Rohm and Haas' conduct during Dr. Lin's employment.

105.    The conduct of Rohm and Haas as aforesaid is in retaliation against Dr. Lin for asserting her rights before the EEOC and seeking benefits of the EEOC enforcement proceedings and would not have occurred had she not filed charges before the EEOC.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and request that this Court grant relief as follows:

A.    Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.    Compensatory Damages for lost past and future income and benefits.

C.    Compensatory Damages for out-of-pocket expenses, including and counsel fees and costs required to defend herself from Rohm and Haas' retaliatory and discriminatory claims and medical expenses.

D.    Punitive Damages

E.    Interest

F.    Attorney fees and costs

G.    Such other further relief as the Court deems just and appropriate.

## COUNT V
## VIOLATION OF PENNSYLVANIA HUMAN RETALIATIONS ACT
## 43 P.S. § 955 (D) – RETALIATION

106.    Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 105 above by reference as though same were set forth at length herein.

107.    Despite its initial acknowledgment of Dr. Lin's right to publish scientific papers and make scientific presentations and to retain and use Rohm and Haas' data for the preparation of those papers and presentations, since June, 2000 Rohm and Haas has consistently frustrated Dr. Lin's ability prepare and present scientific papers and publications by refusing to provide data required for the preparation of those presentations and preparations.

108.    Rohm and Haas has consistently refused to provide data in a timely fashion for the sole purpose of hindering Dr. Lin's ability to prepare scientific papers and presentations.

109.    Rohm and Haas has consistently failed and refused to provide a timely trade secret review of Dr. Lin's proposed scientific papers and presentations.

110.    Rohm and Haas has failed and refused to approve Dr. Lin's proposed scientific publications and presentations despite full knowledge that the proposed presentations and publications contained public information and not Rohm and Haas' trade secret or  information.

111.    Rohm and Haas has adopted a policy of hindering or precluding scientific publications and presentations by Dr. Lin solely for the purpose of undermining her ability to obtain employment in her field, to take advantage of professional opportunities and to otherwise advance her professional career.

112.    The conduct of Rohm Haas as aforesaid is in furtherance of the threats made by Rohm Haas prior to Dr. Lin's presentation to the American Chemical Society in March 2000 and is a continuation of the discrimination and retaliation based on her race

and national origin that had characterized Rohm and Haas' conduct during Dr. Lin's employment.

113.    The conduct of Rohm and Haas as aforesaid is in retaliation against Dr. Lin for asserting her rights before the PHRC and seeking benefits of the PHRC enforcement proceedings and would not have occurred had she not filed charges before the PHRC.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and requests that this Court grant relief as follows:

A.      Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.      Compensatory Damages for lost past and future income and benefits.

C.      Compensatory Damages for out-of-pocket expenses, including and counsel fees and costs required to defend herself from Rohm and Haas' retaliatory and discriminatory claims and medical expenses.

D.      Punitive Damages

E.      Interest

F.      Attorney fees and costs

G.      Such other further relief as the Court deems just and appropriate.

**COUNT VI**
**DEFAMATION**

114.    Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 113 above by reference as though same were set forth at length herein.

115.    Subsequent to the termination of Dr. Lin's employment with Rohm and Haas, Rohm and Haas filed one or more patent applications for inventions in which Dr. Lin was the inventor without Dr. Lin's knowledge, permission or opportunity to review the description of her invention.

116.    The patent application(s), as drafted and filed by Rohm and Haas, added the names of multiple people as co-inventors of Dr. Lin's invention who did not contribute to the concepts of Dr. Lin's inventions and, by law, were not co-inventors.

117.    As the inventor of invention, Dr. Lin's name should have been given primacy on the patent application.

118.    Solely for the purpose of denigrating her scientific achievement and to deprive her of credit for sole inventorship, Rohm and Haas listed Dr. Lin's name in the patent applications at or near the bottom of a list of "co-inventors."

119.    Solely for the purpose of degrading her scientific achievement and to deprive her of credit for sole inventorship, Rohm and Haas filed patent applications for Dr. Lin's inventions in combination with derivative concepts so as to obscure her identification as the sole or primary inventor of the core invention.

120.    The conduct of Rohm and Haas was intended to and did disparage Dr. Lin's reputation in the scientific community and with potential future employers.

121.    Members of the scientific community who have reviewed or will review the published patent application will be mislead and will believe that the inventions are not the inventions of Dr. Lin, thereby depriving her of the advantage of enhancing her reputation in the scientific community and otherwise damaging her good name and reputation in the community.

122.    Rohm and Haas has otherwise published defamatory remarks and statements that either directly, or by implication, are intended to and do disparage Dr. Lin's name and reputation.

123.    At the time Rohm and Haas published defamatory communications, Rohm and Haas knew that the publications were false or acted with reckless disregard as to their falsity.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and request that this Court grant relief as follows:

A.    Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.    Compensatory Damages for lost past and future income and benefits and expenses incurred.

C.    Punitive Damages

D.    Interest

E.    Attorney fees and costs

F.    Such other further relief as the Court deems just and appropriate.

**COUNT VII**
**INVASION OF PRIVACY/FALSE LIGHT**

124.    Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 123 above by reference as though same were set forth at length herein.

125.    Subsequent to the termination of Dr. Lin's employment with Rohm and Haas, Rohm and Haas filed one or more patent applications for inventions in which Dr. Lin was the inventor without Dr. Lin's knowledge, permission or opportunity to review the description of her invention.

126.    The patent application(s), as drafted and filed by Rohm and Haas, added the names of multiple people as co-inventors of Dr. Lin's invention who did not contribute to the concepts of Dr. Lin's invention and, by law, were not co-inventors.

127.    As the inventor of invention, Dr. Lin's name should have been given primacy on the patent application.

128.    Solely for the purpose of denigrating her scientific achievement and to deprive her of credit for sole inventorship, Rohm and Haas listed Dr. Lin's name in the patent applications  at or near the bottom of a list of  "co-inventors."

129.    Solely for the purpose of degrading her scientific achievement and to deprive her of credit for sole inventorship, Rohm and Haas filed patent applications for Dr. Lin's inventions in combination with derivative concepts so as to obscure her identification as the sole or primary inventor of the core invention.

130.    The conduct of Rohm and Haas was intended to and did place Dr. Lin and her reputation in a false light within the scientific community and with potential future employers.

131.    Members of the scientific community who have reviewed or will review the published patent application will be mislead and will believe that the inventions are not the inventions of Dr. Lin, thereby depriving her of the advantage of enhancing her reputation in the scientific community and otherwise damaging her good name and reputation in the community.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and requests that this Court grant relief as follows:

A.  Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.  Compensatory Damages for lost past and future income and benefits and expenses incurred.

C.  Punitive Damages

D.  Interest

E.  Attorney fees and costs

F.  Such other further relief as the Court deems just and appropriate.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

132. Plaintiff avers and incorporates the averments contained in Paragraphs 1 through 131 above by reference as though same were set forth at length herein.

133. The conduct of Rohm and Haas was intended to and did inflict severe emotional distress on Dr. Lin, causing her to be unable to attend to her usual personal and professional obligations, to be deprived of sleep, to become depressed and to require professional care and counseling.

134. The conduct of Rohm and Haas further caused severe and continuing emotional pain, distress and suffering, mental anguish, humiliation and loss of enjoyment of life's pleasures.

135. The conduct of Rohm and Haas has been outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is intolerable in a civilized community.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and requests that this Court grant relief as follows:

A.    Compensatory Damages for emotional pain, distress, suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation.

B.    Compensatory Damages for lost past and future income and benefits and expenses incurred.

C.    Compensatory Damage for out of pocket costs and expenses incurred.

D.    Punitive Damages

E.    Interest

F.    Attorney fees and costs

G.    Such other further relief as the Court deems just and appropriate.

## COUNT IX
## BREACH OF CONTRACT

136.    Plaintiff avers and incorporates the averments contained in Paragraph 1 through 135 above by reference as though the same were set forth at length herein.

137.    The conduct of Rohm and Haas as aforesaid, breached the terms and conditions of the EEOC Settlement Agreement and the Agreement and Release to Dr. Lin's great detriment and loss.

138.    The conduct of Rohm and Haas as aforesaid and was intended to and did frustrate the agreement of the parties to the Settlement Agreement and Agreement and Release and deprived Dr. Lin of the benefits to which she was entitled to under the Agreement.

WHEREFORE, Plaintiff, Dr. Lin demands judgment in her favor and against Defendant, Rohm and Haas and request that this Court grant relief as follows:

A.      Compensatory damages for the loss of the benefits to which she was
        entitled under the Agreement.

B.      Compensatory damages for the foreseeable consequential injuries
        sustained as a result of the Defendant's breach of contract.

C.      Compensatory damages for expenses incurred in reviewing and seeking
        the opportunity to review patent applications for Dr. Lin's inventions.

D.      Such other relief as the Court deems appropriate.

                        Respectfully submitted,

                        LEONARD, TILLERY & SCIOLLA, LLP


                        By:_____
                            HUGH J. HUTCHISON, ESQUIRE
                            Attorney I.D. No.: 02384
                            1515 Market Street, 18th Fl.
                            Philadelphia, PA 19102-2068
                            (215) 567-1530
                            Attorney for Plaintiff
Date: