Leonard, Tillery & Sciolla, LLP
Hugh J. Hutchison, Esquire
Attorney ID No. 02381
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530

Attorney for Defendant
Dr. Manhua Mandy Lin

| | | |
|---|---|---|
| ROHM AND HAAS COMPANY | : | COURT OF COMMON PLEAS OF MONTGOMERY COUNTY PENNSYLVANIA |
| vs | : | |
| | : | CIVIL ACTION NO. 00-10035 |
| DR. MANHUA MANDY LIN | : | |
| | : | |

**ANSWER, NEW MATTER AND COUNTERCLAIM OF
DEFENDANT DR. MANHUA MANDY LIN**

## INTRODUCTION

Dr. Manhua Mandy Lin ("Dr. Lin") was employed as a research scientist at Rohm and Haas where she invented a process for developing a lower cost method of catalytic acrylic acid synthesis. Despite her discovery, she was belittled by her superiors and given no recognition for her accomplishment. She was told by her superiors that her invention "could have been discovered by a monkey" and was of no commercial value. She complained that the company's attitude about her and her invention reflected bias against her based on her gender and national origin. She eventually filed a claim of discrimination with the EEOC. In all proceedings before the EEOC, Rohm and Haas maintained that her invention was without commercial significance.

As a product of the EEOC mediation process, Dr. Lin agreed to a termination of her employment with Rohm and Haas. She received the modest compensation package based upon Rohm and Haas' insistence that her inventions were of no value.

Dr. Lin's invention was the subject of a patent application filed in the United States Patent Office by Rohm and Haas in May, 1998. In addition, the invention was the subject of a

patent application filed in the European Patent Office at EP 0 962 253 A2 (the "European Patent Application"). The European Patent Application was published in December, 1999 and is readily available to the public, including any and all competitors of Rohm and Haas, on the Internet.

As part of her termination agreement, Dr. Lin insisted that she be permitted to give presentations and publish papers on matters involving her discoveries so long as she did not disclose Rohm and Haas trade secrets. Dr. Lin intended to give presentations and author publications regarding her inventions for the specific purpose of enhancing her standing within the scientific community and thereby increasing future employment opportunities. Prior to her departure from Rohm and Haas, she reviewed every potential publication and presentation with representatives of Rohm and Haas who agreed that after publication of the European Patent Application, none of the substance of her presentations would implicate trade secrets or confidential information.

Despite the prior specific agreement that disclosures made in public patent applications no longer constituted trade secrets, Rohm and Haas subsequently claimed that any discussion of the published material was not in Rohm and Haas' best interest and attempted to intimidate Dr. Lin into limiting her presentation to the American Chemical Society to matters that did not involve the European Patent Application. Dr. Lin gave a presentation in which she discussed her invention but did not disclose any information that had not previously been published in the public domain.

Thereafter, Rohm and Haas repeatedly violated the terms of the Settlement Agreement requiring Dr. Lin to again seek the assistance of the EEOC to enforce the terms of the Settlement Agreement negotiated under their authority. This lawsuit was filed in response to the EEOC Complaint and represents nothing more than a continuing pattern of harassment and intimidation

by Rohm and Haas. Dr. Lin has at all times been faithful to her obligations to maintain trade secret and confidential information in confidence. This lawsuit was filed in bad faith, as the sole substantive remedy sought by Plaintiff is the return of materials and documents required by Dr. Lin in her ongoing effort to obtain new employment.

Dr. Lin, by and through her counsel, Leonard, Tillery & Sciolla, LLP therefore responds to the averments in the Complaint as follows:

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted. By way of further answer, to the extent that Plaintiff's cause of action arises as a result of a written settlement agreement, Plaintiff has failed to attach a copy of the agreement in violation of Pa.R.C.P. 1019(h).

5.    Denied. It is specifically denied that Defendant has caused harm or injury to Rohm and Haas in the Commonwealth of Pennsylvania or anywhere. To the contrary, Dr. Lin has always been faithful to her contractual and common law obligations and has not caused harm or threatened to cause harm to Plaintiff.

6.    Admitted.

7.    Admitted and denied. It is admitted only that Rohm and Haas is one of the world's largest manufacturers of specialty chemicals. After reasonable investigation, Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations and the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

8.      Admitted and denied. It is admitted that the chemical industry is competitive. As to the remaining allegations, after reasonable investigation Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations and the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

9.      Admitted.

10.      Denied. After reasonable investigation Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations and the same are hereby denied. Strict proof of each and every allegation, if relevant, is hereby demanded at the trial of this case.

11.      Admitted and denied. It is admitted that Rohm and Haas requires research employees to execute appropriate confidentiality agreements. As to the remaining allegations, after reasonable investigation Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations and the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

12.      Admitted and denied. It is admitted that Rohm and Haas has a legitimate business interest in protecting confidential business information from competitors. As to the remaining allegations, after reasonable investigation Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations and the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

13.      Admitted and denied. It is admitted that Rohm and Haas has undertaken certain measures to secure the confidentiality of research information. It is denied that all of the

provisions set forth in Paragraph 13 apply to Dr. Lin. To the contrary, Dr. Lin's relationship to Rohm and Haas is set forth in a series of agreements that were specifically negotiated at the time of the termination of her employment with Rohm and Haas. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

14.    Admitted. By way of further answer, much of the most sensitive research information concerning the catalytic synthesis of acrylic acid from propane was the direct product of Dr. Lin's intellect.

15.    Admitted and denied. It is admitted that Dr. Lin has been aware of trade secret information relating to the catalytic synthesis of acrylic acid. By way of further answer, it was Dr. Lin's invention that provided a breakthrough in the catalytic synthesis of acrylic acid. It is denied that Dr. Lin was intimately familiar with the research efforts of persons other than those assisting her own research and those in direct collaboration with her. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

16.    Admitted and denied. It is admitted that Dr. Lin knows certain trade secret information. It is denied that such information is critical to Rohm and Haas or that disclosure would cause severe and reparable harm. To the contrary, at all times during the negotiation of the settlement of Dr. Lin's claims before the EEOC and the severance of Dr. Lin, Rohm and Haas repeatedly advised Dr. Lin and the EEOC that the trade secret information that she developed was of no commercial value. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

17.    Admitted and denied. It is admitted only that Dr. Lin executed a Confidentiality and Employment Agreement a copy of which is similar to Exhibit "A". The terms of the

Agreement are in writing and therefore speak for themselves. The remaining allegations are denied.

18.    Admitted and denied. It is admitted only that the Agreement is a written document, the terms of which speak for themselves. To the extent that the allegations contained in Paragraph 18 purport to characterize or otherwise restate or interpret the terms of a written agreement, the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

19.    Admitted and denied. It is admitted only that on or about November 18, 1999 Dr. Lin and Rohm and Haas entered into an "Agreement and Release" which is a written document, the terms of which speak for themselves. To the extent that the allegations contained in Paragraph 19 purport to characterize or otherwise restate or interpret the terms of a written agreement, the same are hereby denied. By way of further answer, Plaintiff has failed to affix a copy of the written Agreement and Release which specifically provides that the terms of the Agreement and Release control any conflict that exists between that Agreement and the "Worldwide Confidentiality and Employment Agreement" and the "Departing and Failure Notice and Acknowledgment of Continuing Obligations." Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

20.    Admitted and denied. It is admitted only that the "Acknowlegment" purported to include Plaintiff's definition of the scope of confidential information. It is denied that the document "highlighted" any such definition. To the extent that the allegations contained in Paragraph 20 purport to characterize or otherwise restate or interpret the terms of a written agreement, the same are hereby denied.

21.   Admitted and denied.  It is Admitted that Plaintiff and Defendant entered into a "Agreement and Release" (misdesignated as "Release and Agreement,"), a written document the terms of which speak for themselves.  It is further admitted that Defendant signed a document entitled "Acknowledgment and Records Security Statement," a written document the terms of which speak for themselves.  To the extent that the allegations contained in Paragraph 21 purport to characterize or otherwise restate or interpret the terms of a written agreement, the same are hereby denied. By way of further answer, the Agreement and Release specifically provides that in the event of a conflict between the Agreement and Release and the Acknowledgment and Record Security Statement, the Agreement and Release controls.  Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

22.   Admitted and denied.  It is admitted only that Plaintiff and Defendant entered into an "Agreement and Release" at the time of the termination of Dr. Lin's employment.  The "Agreement and Release" is a document in writing, the terms of which speak for themselves.  To the extent that the allegations contained in Paragraph 22 purport to characterize or otherwise restate or interpret the terms of a written agreement, the same are hereby denied. By way of further answer, the "Agreement and Release" nowhere provided that Dr. Lin's ability to publish information was subject to the approval of Plaintiff or any of its agents, servants or representatives. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

23.   Admitted and denied.  It is admitted that on or about November 30, 1999, Dr. Lin's employment with Rohm and Haas was terminated.  It is further admitted that Dr. Lin acquired certain documents during her employment and that she retained copies of those documents upon her departure.  It is denied that her retention of certain documents was contrary

7

to the terms of her Agreement with Plaintiff. To the contrary, at all times material hereto, Rohm and Haas agreed that Defendant would have possession of technical data and scientific papers to allow her to publish scientific papers relating to her research. Further, at the time of her separation from Rohm and Haas, Rohm and Haas acknowledged in writing that Dr. Lin would retain certain documents in compliance with the terms of the "Agreement and Release." To the extent that the allegations contained in Paragraph 23 purport to characterize or otherwise restate or interpret the terms of a written agreement, the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

24.     Admitted and denied. It is admitted that Dr. Lin committed to making a presentation at the American Chemical Society and that, prior to Dr. Lin's departure from Rohm and Haas, she met with representatives of Rohm and Haas to discuss the number of proposed future presentations and publications. It is denied that any such meeting took place on November 11, 1999 or that a meeting resulted in agreement with respect to a limitation on the specific substance of any future presentation. To the contrary, at that meeting, future presentations and publications were reviewed to determine whether their content would implicate confidential and/or trade secret information of Rohm and Haas. At that meeting, it was specifically agreed that matters involving certain 1996 data did not constitute confidential information and that matters subsequently published and in the public domain did not constitute trade secrets or confidential information. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

25.     Admitted and denied. It is admitted only that on or about March 20, 2000, Dr. Lin e-mailed a message to Dr. Han, a copy of which is similar to Exhibit "B". To the extent that

8

the allegations contained in Paragraph 25 purport to characterize or restate the content of the written document, the same are hereby denied.

26.    Admitted.  It is admitted that Exhibit "C" is similar to the e-mail sent by Dr. Lin. By way of further answer, at the time the outline was forwarded to Dr. Han, it was discussed in detail with Dr. Han who concurred that the substance of the presentation did not implicate Rohm and Haas trade secrets and offered to arrange to provide Dr. Lin with additional materials to incorporate into the visual aspect of her presentation.

27.    Denied.  It is denied that upon review of the outline, Dr. Han realized that the abstract was different than that previously "approved," or that Dr. Lin required Plaintiff's "approval" for her presentation.   To the contrary, Dr. Lin fully discussed the proposed presentation with Dr. Han who concurred with the inclusion of post-1996 data that had recently been published in an application for a patent on Dr. Lin's invention and was therefore in the public domain.  By way of further answer, after a full and complete discussion of the substance of the presentation, Dr. Han offered to provide Dr. Lin with additional visual materials relating to post-1996 data to assist in her presentation. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

28.    Denied.  It is denied that Dr. Han ever advised Dr. Lin that the proposed presentation was unacceptable because it would disclose confidential and trade secret information.  To the contrary, after initially approving the presentation, Dr. Han advised Dr. Lin that Rohm and Haas had decided that a discussion of matters contained in the published European Patent Application was not in Rohm and Haas' best interests and demanded that Dr. Lin delete any such reference from her presentation.  It is further denied that Dr. Lin at any time failed to fully and completely disclose the intended content of her presentation.  After reasonable

9

investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments and the same are hereby denied. Strict proof of each and every allegation, if relevant, is hereby demanded at trial.

29.    Admitted and denied. It is admitted only that on or about March 22, 2000, Dr. Han repeated his request that Dr. Lin refrain from incorporating post-1996 data into her presentation despite the fact that the information did not constitute trade secrets and/or confidential information.    After reasonable investigation, Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations and the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

30.    Admitted and denied. It is admitted only that on March 28, 2000, Dr. Han and Dr. Gaffney attended the American Chemical Society Meeting and, in particular, the presentation given by Dr. Lin. It is further admitted that immediately before the presentation, Dr. Han handed Dr. Lin an envelope that was subsequently determined by Dr. Lin to contain a copy of a letter that is similar to the letter attached as Exhibit D. To the extent that the allegations contained in Paragraph 30 purport to characterize or restate or interpret the contents of that letter, the same are hereby denied. By way of further answer, the letter from Mr. McLaughlin, on its face, purports to impose obligations on Dr. Lin that are inconsistent with the agreement that was negotiated between Rohm and Haas and Dr. Lin. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

31.    Admitted and denied. It is admitted that Dr. Lin gave a presentation that generally followed the outline that had been provided to Dr. Han and Dr. Tatum. It is denied that the presentation disclosed trade secret information or that the presentation included unauthorized

slides containing unpublished analytic data.  To the contrary, the presentation disclosed no trade secret or confidential information of Rohm and Haas and was limited to the substance of matters previously authorized by Rohm and Haas and the agreements negotiated between Rohm and Haas and Dr. Lin. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

32.     Admitted and denied.  It is admitted that it is customary for presenters to publish the substance of their presentations following such presentations.  It is denied that a subsequent publication would disclose trade secret data.  To the contrary, any subsequent publication of any matter involving the scientific work of Dr. Lin would be published only in full compliance with the rights and obligations of the parties as set forth in the Agreement between Rohm and Haas and Dr. Lin. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

33.     Denied.     After reasonable investigation, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 33 and the same are hereby denied.  By way of further answer, Defendant is advised, believes and therefore avers that Rohm and Haas has received communications intended for Dr. Lin from the Fourth World Congress on Oxidation Catalysis, and perhaps other scientific organizations, which Rohm and Haas has failed to forward to Dr. Lin.  Further, in violation of its Agreement with Dr. Lin, Rohm and Haas has made unauthorized communications to the Fourth World Congress disparaging Dr. Lin's good name and reputation in the scientific community.

34.     Admitted and denied.  It is admitted only that on or about May 26, 2000, Rohm and Haas sent a letter to Dr. Lin, a copy of which is similar to Exhibit "E".  To the extent that the allegations contained in Paragraph 34 purport to characterize or restate or interpret the contents

of the written document, the same are hereby denied. Further, it is admitted that Exhibit "F" is similar to a letter sent by Dr. Lin to Rohm and Haas.

35.    Admitted and denied. It is admitted only that Dr. Lin knows and possesses certain trade secret information. By way of further answer, the trade secret information was created by Dr. Lin. After reasonable investigation, Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 35 and the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

36.    Denied. The allegations contained in Paragraph 36 constitute conclusion of law which require no answer but the same are hereby denied. By way of further answer, it is specifically denied that the balance of equities favors the entry of injunctive relief for Plaintiff. To the contrary, Dr. Lin has not and will not disclose trade secret and confidential information of Rohm and Haas. Conversely, the injunctive relief sought by Plaintiff is solely intended to further harass and destroy Dr. Lin's professional career by depriving her of access to scientific data that she requires for the purpose of preparing scientific presentations and publications in accordance with the specific terms of the Agreement between Rohm and Haas and Dr. Lin. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

### COUNT I

37.    Admitted and denied. The allegations contained in Paragraph 37 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraphs 1-36 inclusive, which responses are incorporated herein by reference.

38.    Denied. It is specifically denied that a valid and enforceable "Release and Agreement" exists between the parties. To the contrary, it is admitted that an "Agreement and

Release" exists between the parties. To the extent that the allegations contained in Paragraph 38 constitute conclusions of law, they require no answer but the same are hereby denied. Strict proof of each and every allegation, if relevant, is hereby demanded at trial.

39.    Denied. It is specifically denied that Dr. Lin's presentation at the American Chemical Society violated the terms of the Agreement or disclosed any trade secrets whatsoever. To the contrary, at all times material hereto, Dr. Lin has complied with the strict terms of the obligations imposed by the Agreement and Release. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

40.    Denied. The allegations contained in Paragraph 40 constitute conclusions of law that require no answer and the same are hereby denied. By way of further answer, at all times material hereto, Dr. Lin has complied with the strict terms of the obligations imposed by the Agreement and Release. Further, after reasonable investigation, Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 40 and the same are hereby denied. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

WHEREFORE, Defendant Dr. Lin demands judgment in her favor and against Plaintiff together with costs and disbursements and counsel fees.

## COUNT II

41.    Admitted and denied. The allegations contained in Paragraph 41 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraphs 1-40 inclusive, which responses are incorporated herein by reference.

42.    Admitted and denied. It is admitted that Defendant is in possession of certain confidential, proprietary and trade secret information which Dr. Lin developed when she was an

employee of Rohm and Haas. It is denied that the information was "disclosed in confidence by Rohm and Haas." To the contrary, the information is specifically the intellectual product of Dr. Lin and was provided to Rohm and Haas pursuant to the terms of Dr. Lin's Employment Agreement. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

43.    Admitted and denied. It is admitted that only that certain confidential, proprietary and trade secret information is known to Dr. Lin. It is denied that all of the information currently available to Dr. Lin remains as confidential, proprietary or trade secret information. To the contrary, a substantial portion of the information known to Dr. Lin has been disseminated to the public at large and is readily available to competitors of Rohm and Haas and is therefore no longer subject to trade secret restrictions. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

44.    Denied.    After reasonable investigation, Defendant is without sufficient knowledge or information to form a belief as to truth of the allegations contained in Paragraph 44 and the same are hereby denied. By way of further answer, Rohm and Haas has consistently and repeatedly represented that the information known to and developed by Dr. Lin that previously constituted trade secret information was of no commercial value whatsoever. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

45.    Denied. It is specifically denied that Dr. Lin has used, disclosed, converted or otherwise misappropriated confidential, proprietary or trade secret information of Rohm and Haas. To the contrary, to the extent that trade secret information is available to Dr. Lin, the same has been maintained in confidence pursuant to the terms of the Agreement between the parties. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

46.     Denied.    After reasonable investigation, Defendant is without knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 46 and the same are hereby denied.  By way of further answer, it is specifically denied that Dr. Lin has utilized trade secret, confidential or proprietary information at any time in any manner that was not authorized by the Agreements between the parties. Strict proof of each and every allegation, if relevant, is hereby demanded at trial.

WHEREFORE, Defendant Dr. Lin demands judgment in her favor and against Plaintiff together with costs and disbursements and counsel fees.

### COUNT III

47.     Admitted and denied.  The allegations contained in Paragraph 47 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraphs 1-46 inclusive, which responses are incorporated herein by reference.

48.     Denied.  The allegations contained in Paragraph 48 constitute conclusions of law that require no answer but the same are hereby denied.

49.     Denied.  The allegations contained in Paragraph 49 constitute conclusions of law that require no answer but the same are hereby denied.  It is specifically denied that the use of published information for the purpose of furthering Dr. Lin's individual stature in the scientific community is a violation of the terms of any agreement between the parties.  Further, it is specifically denied that Defendant is required to use published and/or public and/or trade secret information only in a manner that Rohm and Haas deems in its "best interests." To the contrary, Dr. Lin is bound only to comply with the agreements negotiated between her and Rohm and Haas. Strict proof of each and every allegation if relevant is hereby demanded at the trial of this cause.

50.     Denied.  The allegations contained in Paragraph 50 constitute conclusions of law that require no answer but the same are hereby denied.  By way of further answer, it is specifically denied that Dr. Lin has breached any duty to Rohm and Haas in any manner whatsoever. To the contrary, at all times material hereto Dr. Lin has fully and fairly complied with all of the obligations imposed on her by any agreement with Rohm and Haas. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 50 and the same are hereby denied

WHEREFORE, Defendant Dr. Lin demands judgment in her favor and against Plaintiff together with costs and disbursements and counsel fees.

## NEW MATTER

51.     Defendant, Dr. Lin, is a highly respected female scientist of Chinese origin.

52.     Dr. Lin was hired by Rohm and Haas on January 3, 1989 as a Senior Scientist and, subsequent to February 1995, worked in the New Routes Team of the Monomers Research Department at Rohm and Haas.

53.     As a Senior Scientist in the New Routes Team, Dr. Lin was instrumental in inventing a process for the catalytic synthesis of acrylic acid from propane.

54.     Despite Dr. Lin's breakthrough invention, Rohm and Haas failed and refused to recognize the value of her invention, routinely and repeatedly belittled her scientific achievement of Dr. Lin, attempted to give credit to other persons for her accomplishments, failed and refused to reward her for her invention and otherwise harassed her and treated her in a discriminatory manner.

55.     Dr. Lin's scientific achievement was compared to the achievement of "a monkey," and was claimed by Rohm and Haas to be of no commercial value.

56.     Despite the efforts to belittle Dr. Lin's scientific achievement, her invention was incorporated into a patent application filed by Rohm and Haas in the United States Patent Office in May 1998. Dr. Lin was named in the application as the principal inventor.

57.     As a result of the persistent and pervasive discriminatory treatment to which she was subjected, Dr. Lin filed a Complaint with the EEOC alleging that she was subjected to discrimination and retaliation on the basis of her race, gender and national origin.

58.     The EEOC took an active role in mediating a settlement of the dispute between Dr. Lin and Rohm and Haas.  The terms of the Settlement are set forth in a Settlement Agreement, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "1"

59.     As part of the settlement, Dr. Lin agreed to resign from Rohm and Haas in November 1999.

60.     Throughout the proceedings before the EEOC, representatives of Rohm and Haas repeatedly represented to the EEOC that Dr. Lin's invention with respect to the catalytic synthesis of acrylic acid from propane was of absolutely no commercial value.

61.     As a product of the mediation process, Dr. Lin and Rohm and Haas entered into an Agreement and Release, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "2".

62.     Pursuant to Paragraph 5(h) of the Agreement and Release, the parties agreed that Dr. Lin would be able to publish scientific papers and make the scientific presentations on the

condition that she provide Rohm and Haas with the substance of her publication prior to the time that it was actually published.

63.    Rohm and Haas knew and agreed that Dr. Lin required the opportunity to publish papers about her scientific work for the specific purpose of enhancing her standing in the scientific community.

64.    Rohm and Haas knew and agreed that an inherent component of Dr. Lin's right to publish scientific papers was her right to access and possession of the underlying data and other information required to prepare the scientific papers and/or presentations.

65.    Prior to the effective date of her resignation, Dr. Lin met with representatives of Rohm and Haas for the specific purpose of reviewing the topics for potential scientific papers and presentations relating to her work to determine whether any of the proposed presentations would implicate trade secrets or confidential information of Rohm and Haas.

66.    As a result of that meeting, a list was prepared of potential papers and presentations for which it was specifically agreed that there were no trade secret implications or would be no trade secret implications after the future publication of information by Rohm and Haas.

67.    At the time of her departure from Rohm and Haas, representatives of Rohm and Haas specifically acknowledged, in writing, that Dr. Lin was retaining copies in her possession of various documents containing confidential information, data and other information generated as a product of Dr. Lin's research.

68.    In December 1999, Rohm and Haas sent a draft patent application to Dr. Lin for another of her inventions during her employment with Rohm and Haas with the request that she review the application and provide comments on the application.

69.    At the time that the request to review the application was made, Rohm and Haas knew that the application could not be reviewed in the absence of the technical data and scientific documents that supported the invention set forth in the application.

70.    At the time of the request to review the patent application, Rohm and Haas knew and agreed that the technical data and scientific documents were authorized to be in Dr. Lin's possession by the terms of the Agreement and Release.

71.    At the time that Dr. Lin was requested to review and comment on the draft patent application, Rohm and Haas made no request that Dr. Lin return any of the data and/or scientific documentation that was in her possession.

72.    In December 1999, the European Patent Office published the patent application (EP 0 962 253 A2) for Dr. Lin's invention of a process for catalytic synthesis of acrylic acid.

73.    The complete patent application is available to the public in general and specifically to the competitors of Rohm and Haas, on the World Wide Web at "www.european-patent-office.org."

74.    In January 2000, Dr. Lin submitted for publication a scientific paper concerning certain of her work while employed at Rohm and Haas.

75.    The scientific paper was prepared and submitted with the full knowledge and assistance of Rohm and Haas.

76.    At the time that the paper was prepared and submitted, Rohm and Haas knew that the paper could not be prepared by Dr. Lin in the absence of the technical data and scientific documents that supported the substance of the paper.

77.    At the time that the paper was prepared and submitted, Rohm and Haas knew and agreed that the technical data and scientific documents were authorized to be in Dr. Lin's possession by the terms of the Agreement and Release.

78.    At the time that the paper was prepared and submitted, Rohm and Haas made no request that Dr. Lin return any of the data and/or scientific documentation that was in her possession.

79.    In March 2000, Dr. Lin agreed to attend a meeting of the American Chemical Society in San Francisco where she would make a presentation concerning the catalytic synthesis of acrylic acid based upon research conducted while she was employed by Rohm and Haas.

80.    After the public disclosure of the details of Dr. Lin's invention in the European Patent Application, Dr. Lin updated her presentation to include matters disclosed in the European Patent Application.

81.    In preparation for the presentation, and in with full compliance with her obligations under the Agreement and Release, Dr. Lin provided an outline of the substance of her presentation to Dr. Han for his review.

82.    Consistent with the agreement reached between Dr. Lin and Rohm and Haas at the time of the initial review of her proposed presentations and publications, Dr. Han agreed that since the European Patent Application had been published, the updated version of Dr. Lin's presentation did not implicate Rohm and Haas trade secrets.

83.    After his initial review of the updated outline of Dr. Lin's proposed presentation to the American Chemical Society, Dr. Hahn offered to assist Dr. Lin by providing certain visual slides from the European Patent Application for use by Dr. Lin in her presentation.

84.    Subsequent to their limited agreement that the updated presentation would not implicate any trade secret or confidential information, representatives of Rohm and Haas advised Dr. Lin that it was not in the "best interests" of Rohm and Haas for Dr. Lin to discuss information contained in the European Patent Application.

85.    Neither the Agreement and Release nor any other agreement between Dr. Lin and Rohm and Haas prevents Dr. Lin from discussing or publishing matters involving her scientific achievements which have been previously published and are in the public domain.

86.    Neither the Agreement and Release nor any other agreement between Dr. Lin and Rohm and Haas limits Dr. Lin to publishing only those matters that Rohm and Haas deems to be in its "best interests."

87.    On March 28, 2000, Dr. Lin made a presentation to the American Chemical Society that included references to matters disclosed in the European Patent Application for her invention concerning the catalytic synthesis of acrylic acid.

88.    At no time did Dr. Lin disclose information that constituted a trade secret or confidential information of Rohm and Haas other than as specifically authorized by Rohm and Haas.

89.    Throughout the preparation for the presentation to the American Chemical Society and the related discussions with Rohm and Haas, Rohm and Haas was specifically aware that Dr. Lin was relying on technical data and other scientific papers related to the research she conducted while at Rohm and Haas.

90.    At no time throughout those discussions did anyone from Rohm and Haas intimate that Dr. Lin's possession of the technical data and other scientific documentation was in violation of the terms of the Agreement and Release.

91.    Immediately prior to her presentation to the American Chemical Society, representatives at Rohm and Haas threatened to destroy Dr. Lin's future employment opportunities if she proceeded with the presentation that included reference to the published European Patent Application.

92.    Pursuant to the provisions of the Agreement and Release, Rohm and Haas agreed to the payment of a $10,000.00 bonus to Dr. Lin, payable in March 2000.

93.    In violation of the terms of the Agreement and Release, Rohm and Haas failed and refused to pay the bonus in March, 2000.

94.    In April, 2000, Dr. Lin contacted the EEOC to complain that the actions of Rohm and Haas were in violation of the settlement agreement and to seek assistance in enforcing the settlement agreement that the EEOC helped to mediate.

95.    Defendant is advised, believes and therefore avers that Rohm and Haas was contacted by the EEOC on or about May 23, 2000 and advised that Dr. Lin complained that Rohm and Haas had repeatedly failed to comply with the settlement agreement and was otherwise improperly threatening her or seeking to impose unauthorized obligations on her.

96.    This lawsuit was filed on June 2, 2000.

97.    On information and belief, this lawsuit is filed in bad faith and is solely intended to intimidate and harass Dr. Lin in retaliation for reporting Rohm and Haas' violations of the settlement agreement to the EEOC.

98.    Plaintiff's Complaint, in whole or in part, fails to state a cause of action upon which relief can be granted.

99.    Plaintiff's claim is barred by laches

100.    Plaintiff's claim is barred by the doctrine of unclean hands.

101.   Plaintiff's complaint is arbitrary, vexatious and was brought in bad faith and for purposes other than to seek the relief requested.

102.   Plaintiff's claim is brought solely for the purposes of harassment and intimidation.

103.   Plaintiff's claim is brought for the purposes of retaliation against Defendant.

104.   At no time material hereto has Defendant disclosed or threatened to disclose trade secret information belonging to Rohm and Haas.

105.   At all times material hereto, Defendant has complied with the terms and conditions of all obligations imposed by the Agreement and Release between Rohm and Haas and Defendant.

106.   Plaintiff has not suffered any damage or other harm by reason of any disclosure made by Defendant.

107.   Defendant has not threatened to make any disclosures of trade secret information or undertake any other action that may harm Plaintiff.

108.   Plaintiff's complaint is intended to deprive or limit Dr. Lin's opportunities for future employment.

109.   Plaintiff's complaint is intended to cause Dr. Lin unreasonable annoyance and expense.

Wherefore, Defendant demands judgment in her favor and against Plaintiff, together with costs, disbursements and counsel fees.

## COUNTERCLAIM

110.    Defendant, Dr. Lin, hereby incorporates the allegations set forth in her Answer

and New Matter as though the same were fully set forth at length herein.

111.    In September, 1999, Dr. Lin advised the organizers of the Fourth World Congress

on Oxidation Catalysis of her interest in making a presentation at the meeting to be held in Berlin

in 2001.

112.    Dr. Lin has made no commitment to present a paper or presentation but was

awaiting further information from the organizers of the Fourth World Congress on Oxidation

Catalysis about their interest in having her make a presentation.

113.    On information and belief, the organizers of the Fourth World Congress on

Oxidation Catalysis attempted to contact Dr. Lin by communicating with her at her former

address at Rohm and Haas.

114.    Representatives of Rohm and Haas received the inquiry intended for Dr. Lin but

failed and refused to notify Dr. Lin of the communication.

115.    Rohm and Haas replied to the organizers of the Fourth World Congress on

Oxidation Catalysis that "Rohm and Haas" had not made a commitment to present a paper that

the conference and that no approval had been given to Dr. Lin to present a paper at the

conference.

116.    Dr. Lin does not require the authorization or approval of Rohm and Haas to

present a paper at the conference.

117.    The response of Rohm and Haas to the organizers of the conference was intended to, and did, falsely disparage Dr. Lin's standing in the scientific community.

118.    The response of Rohm and Haas to the organizers of the conference was intended to and did imply that Dr. Lin was likely to improperly use, disclose or otherwise misappropriate property of Rohm and Haas, to the great harm and detriment of Dr. Lin.

119.    The response of Rohm and Haas to the organizers of the conference was intended to and did improperly imply that Dr. Lin could not give a paper or presentation at the conference in the absence of authorization from Rohm and Haas.

120.    The actions of Rohm and Haas are solely intended to damage to good name and reputation of Dr. Lin in the scientific community and to damage her opportunities for future employment.

121.    If Dr. Lin is deprived of her possession and control of technical data and scientific papers that are currently in her possession, she will be unable to prepare and publish scientific papers and/or presentations.

122.    If Dr. Lin is prevented or hindered in publishing scientific papers and/or making presentation to the scientific community about her work, her opportunities for future employment will be irreparably harmed.

123.    If representatives of Rohm and Haas carry out their threats to destroy her future employment opportunities, Dr. Lin will be irreparably harmed.

124.    The actions of Rohm and Haas, as set forth herein, are motivated by malice and bad faith and are solely intended to cause Dr. Lin harm and to impose unreasonable and unwarranted costs and expenses on her.

Wherefore, Defendant, Dr. Lin, demands judgment in her favor and against Plaintiff and requests the entry of an Order:

(a)    enjoining Rohm and Haas, and its agents, servants and employees from interfering with her right of complete access, possession and control to the technical data and scientific information that she requires to prepare scientific papers and presentations:

(b)    enjoining Rohm and Haas, and its agents, servants and employees from taking any action or making any representation that might disparage Dr. Lin's good name and reputation or might compromise her opportunities for future employment:

(c)    enjoining Rohm and Haas, and its agents, servants and employees, from intercepting or refusing to forward any message or communication  intended for Dr. Lin or concerning her interests;

(d)    awarding counsel fees and costs against Plaintiff for the filing an action that is arbitrary, vexatious and in bad faith;

(e)    awarding damages, including compensatory and punitive damages;

(f)    awarding such other relief as the Court may deem just.

Respectfully submitted,

Leonard, Tillery & Sciolla, LLP

By:_____
     Hugh J. Hutchison

Date: July 5, 2000

26

VERIFICATION

Dr. Manhua Mandy Lin, hereby verifies that the facts set forth in the foregoing Answer, New Matter and Counterclaim are true and correct to the best of her knowledge, information and belief. This verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

_Manhua Lin_
Manhua Mandy Lin

DATE: _2/5/2000_