IN THE COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL DIVISION – EQUITY

**ROHM AND HAAS COMPANY** : NO. 00-10035
:
:
v. :
:
:
**DR. MANHUA MANDY LIN** :

## OPINION

Moore, J.                                                                                                    June 19, 2001

I.   **FACTS AND PROCEDURAL HISTORY:**

Plaintiff Rohm and Haas Company ("Rohm and Haas") is a specialty chemicals manufacturing company. Defendant Dr. Manhua Mandy Lin ("Lin") was a research scientist employed by Rohm and Haas until November of 1999.

Rohm and Haas manufactures and sells a large line of polymer materials such as coatings and adhesives. A central component in these products is acrylic acid. In fact, acrylic acid is used as a starting material in over 50% of the chemicals Rohm and Haas produces. Rohm and Haas has created a research team that focuses on analyzing and developing methods for synthesizing acrylic acid. Until the end of her employment, Lin was a member of this research team. Additionally, Rohm and Haas has expended large sums of money for this acrylic acid research project.

Rohm and Haas contends with intense competition in the specialty chemicals market. Many of these competitors are also working on developing a less expensive catalyst to convert propane to acrylic acid. Moreover, a competitor's development of a

better and cheaper process for synthesizing acrylic acid would have a serious financial impact on the company.

In 1989, Lin began working at Rohm and Haas as a research scientist. At that time, she executed and agreed to a "Confidentiality and Employment Agreement." Essentially, the agreement provided that Lin would not disclose any confidential trade secret information that she learned through her employment with the company. Lin also agreed to return all Rohm and Haas documents upon the completion of her employment.

In 1995, Lin was promoted to senior scientist. As a senior scientist, she was privy to and assisted in the development and implementation of confidential and trade secret information including information relating to the catalytic synthesis of acrylic acid.

In November of 1999, Lin decided to leave Rohm and Haas. Pursuant to the terms of an EEOC settlement, she executed an "Agreement and Release" with Rohm and Haas. The Agreement and Release contained three addenda: a "Worldwide Confidentiality and Employment Agreement," a "Departing Employee Notice and Acknowledgment of Continuing Obligations" and an "Acknowledgment and Records Security Statement."

All of the above documents recognized that Lin's obligations for confidentiality of Rohm and Haas' trade secrets remained in full force and effect after her departure from the company. Lin also agreed to return all confidential documents and trade secret information to Rohm and Haas by her last day of employment.

The Agreement and Release also provided Lin with the publication process for scientific literature. The agreement established that "Dr. Lin will be able to publish, subject to the review concerning trade secrets by Dr. Scott Han. In the event of a dispute,

an additional review will be conducted by Dr. Charles Tatum." Both Han and Tatum are high-ranking scientists at Rohm and Haas.

Prior to leaving Rohm and Haas, Lin copied hundreds of confidential Rohm and Haas documents onto high-storage-capacity computer disks. In addition, she took some reference books that were the property of Rohm and Haas. All of these actions were in clear violation of her contractual duty under the Agreement and Release and the Confidentiality and Employment Agreement.

Prior to Lin's departure from Rohm and Haas, she committed herself to giving a scientific presentation at the American Chemical Society ("ACS") in March of 2000. Lin submitted a very basic outline to Han for a trade secret review a few days before the presentation. Han clearly did not have enough time to give this outline a thorough trade secret review. However, he authorized the presentation based on the caveat that only 1996 data was to be used. Rohm and Haas had previously approved this 1996 data because it contained no trade secret information. Lin was aware that post-1996 data was not approved because it contained confidential trade secret information. She never submitted her final outline and presentation slides to Han for a trade secret review. This final outline and slide presentation contained post-1996 critical trade secret information. Lin intentionally placed this confidential information in the final outline knowing Rohm and Haas did not authorize it. This was a clear violation of Lin's contractual duty under the Agreement and Release and the Confidentiality and Employment Agreement.

At the ACS meeting, Han presented Lin with a letter from Rohm and Haas' legal staff requesting that she present the 1996 data and not the post-1996 trade secret data. Lin ignored this letter and her contractual duties and gave the presentation using the

3

confidential data. During this presentation, Lin disclosed trade secret information that irreparably harmed Rohm and Haas. In addition, many of the scientists in the audience were from Rohm and Haas competitors who are also striving to develop a catalyst for a reaction that would convert propane to acrylic acid.

After the ACS meeting, Lin inserted some of the confidential trade secret data into a previously approved scientific paper. This paper was to be published in a scientific journal. She did not inform Rohm and Haas of her insertion of the confidential material nor did she submit the updated paper for a new trade secret review. This is another clear violation of her contractual obligations concerning trade secret disclosures.

Thereafter, Rohm and Haas filed a petition for a preliminary injunction to enjoin Lin from further disclosure of Rohm and Haas trade secrets. A nine-day preliminary injunction hearing was held before this Court. This Court entered an interim preliminary injunction order against Lin merely preventing her from disclosing Rohm and Haas trade secrets and subjecting her to the agreed upon trade secret review process pending a final hearing. Pursuant to this Court's order, Lin is free to publish scientific papers so long as she obtains trade secret review and approval from Rohm and Haas. Lin appealed this Court's interim preliminary injunction order. This opinion follows.

## II. DISCUSSION:

### A. STANDARD OF REVIEW

A trial court has broad discretion to grant or deny a preliminary injunction. WPNT Inc. v. Secret Communications Inc., 443 Pa. Super. 269, 271, 661 A.2d 409, 410 (Pa. Super. Ct. 1995). When reviewing a trial court's grant or refusal of a preliminary injunction, an appellate court does not inquire into the merits of the controversy, but rather examines only the record to ascertain whether any apparently reasonable grounds existed for the action of the court below. Id. An appellate court may reverse a trial court's ruling only if it amounts to an abuse of discretion or a misapplication of the law. Id.

In this case, this Court granted Rohm and Haas' petition for preliminary injunction and entered an interim order preventing further disclosure of Rohm and Haas' trade secrets. This was a reasonable decision based upon the record including the Confidentiality and Employment Agreement and the Agreement and Release that provided Lin with the contractual duty to not disclose Rohm and Haas' trade secrets. This Court's ruling should be affirmed because it was not an abuse of discretion or a misapplication of the law.

### B. PREREQUISITES TO A PRELIMINARY INJUNCTION

A plaintiff must prove three elements to support a preliminary injunction: (1) a clear right to relief; (2) an immediate need for relief; and (3) an irreparable injury unless the court grants the injunction. A.M. Skier Agency, Inc. v. Gold, 747 A.2d 936, 939 (Pa. Super. Ct. 2000).

First, Rohm and Haas has a clear right to relief due to Lin's direct violations of her contractual duty not to disclose Rohm and Haas trade secrets. Second, Rohm and Haas is entitled to immediate relief to prevent further disclosures. Third, a temporary injunction was issued because of the irreparable injury caused by Lin's disclosure of Rohm and Haas' trade secrets. Fourth, if an injunction was not issued Rohm and Haas would lose the competitive advantage it gained over its competitors in the race for producing a low-cost acrylic acid. Based on all of the above, this Court's decision to enjoin Lin from further disclosure of confidential trade secrets was proper and should be upheld.

### C.   CLEAR RIGHT TO RELIEF

To be entitled to an injunction against use or disclosure of information, under Pennsylvania law, a plaintiff must show: (1) that the information constitutes a trade secret; (2) that it was of value to the employer and important in the conduct of his business; (3) that by reason of discovery or ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the defendant while employed in a position of trust under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer. SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1256 (3rd Cir. 1985).

In this case, the record is clear that the latter three elements were proven. First, Rohm and Haas values this trade secret information and has maintained and preserved its confidentiality. Second, Rohm and Haas has a right to the use and enjoyment of the trade secrets discovered by its employees. Third, Lin learned of these trade secrets through her

position as a senior scientist at Rohm and Haas. Therefore, this Court will now focus on the first element the existence of trade secrets.

A trade secret may consist of any formula, device, or compilation of information which is used in one's business, or which gives him an opportunity to obtain an advantage over competitors who do not know or use it. Greenburg v. Croydon Plastics Co., Inc., 378 F.Supp. 806, 812 (E.D. Pa. 1974). Trade secret protection cannot be claimed for information which is in common knowledge. Id. The secret may be no more than a slight mechanical advance over common knowledge and practice in the industry. Id.

Some factors to be considered in determining whether given information is a trade secret are: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort and money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. SI Handling, 753 F.2d at 1256.

At the ACS presentation, Lin disclosed several Rohm and Haas trade secrets relating to the development of a catalyst to be used in the synthesis of acrylic acid from propane. At trial, Rohm and Haas used the following examples:

**REDACTED**

# REDACTED

Rohm and Haas has implemented careful measures to maintain the secrecy of its trade secrets. All of the members of the acrylic acid research team sign confidentiality agreements. Rohm and Haas has implemented the use of passwords and data-encryption to secure its confidential computer data. All of the members of the acrylic acid research project keep all their communications confidential including Lin who wrote several confidential memos covering this valuable information. Moreover, Rohm and Haas maintains a secured facility and all visitors are monitored closely.

Rohm and Haas has expended large amounts of money on the acrylic acid research project. Many scientists are devoting large amounts of time to this project. In addition, Lin must believe this information has value because she wants to publish papers on this research. Finally, this information could not be properly acquired or duplicated by competitors of Rohm and Haas.

As testified by Dr. Henry Foley, the Rohm and Haas scientific research expert, none of the above trade secrets are known in the industry. These trade secrets have great value to Rohm and Haas and provide the company with a competitive advantage over its competitors in the race to mass-produce a low-cost acrylic acid. This trade secret information is a scientific advancement over the industry's understanding and practices. Rohm and Haas is entitled to protect the screening devices that it has generated with

respect to the creation of a better performing catalyst. Therefore, further disclosure of this information must be enjoined.

Lin disclosed these trade secrets at the ACS meeting and in a subsequent paper thereby breaching her contractual duty of confidentiality. Lin has totally ignored the trade secret review process agreed to by both parties. She also took hundreds of pages of confidential scientific documents from Rohm and Haas. Taking all of the above into account, this Court entered its preliminary injunction order for the protection of the legitimate interests of both parties.

### D. IMMEDIATE NEED FOR RELIEF, IRREPARABLE HARM, AND BALANCING THE EQUITIES

Rohm and Haas is entitled to immediate relief to prevent further disclosure of its trade secrets. The harm suffered by Rohm and Haas is clearly irreparable and not compensable through money damages. Rohm and Haas has and will suffer loss of revenue, market share, and competitive advantage. This Court issued a preliminary injunction to preserve the status quo and prevent further irreparable harm. This Court's interim order merely prevents Lin from disclosing Rohm and Haas trade secrets pending a final hearing. In the interim, Lin is free to publish scientific papers subject to the agreed upon trade secret review and approval process. This Court has not interfered with Lin's ability to find gainful employment as a research scientist. In fact, the greater injury will result by refusing the injunction than by granting it. Rohm and Haas has a reasonable right to protect its trade secret information, business reputation and revenue. Therefore, this Court's decision to grant a preliminary injunction was proper and should be upheld.

### III. CONCLUSION:

This Court's decision to grant a preliminary injunction was reasonable based upon the record. This Court did not abuse its discretion. Based on the foregoing, the Superior Court should **AFFIRM** the order of this Court granting Rohm and Haas' petition for preliminary injunction.

BY THE COURT:

BERNARD A. MOORE, J.

Date: June 19, 2001

CC: William H. Bradbury III, Esq.
Mari M. Gursky Shaw, Esq.
Dorian S. Mazurkevich, Esq.
Hugh J. Hutchinson, Esq.