UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DR. MANHUA MANDY LIN,         :
         :
         Plaintiff,         :
         :
         v.         :         CIVIL ACTION NO. 02-CV-3612
         :
ROHM AND HAAS COMPANY,         :
         :
         Defendant.         :

<u>ORDER</u>

        AND NOW, this _____ day of _____, 2003, upon consideration of

Defendant's Motion to Dismiss and Plaintiff's response thereto, it is hereby ORDERED that the

Motion is GRANTED, and Plaintiff's Amended Complaint is DISMISSED with prejudice.


_____
                                 J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. MANHUA MANDY LIN,            :
                                 :
            Plaintiff,           :
                                 :
       v.                        :        CIVIL ACTION NO. 02-CV-3612
                                 :
ROHM AND HAAS COMPANY,           :
                                 :
            Defendant.           :

<u>DEFENDANT'S MOTION TO DISMISS</u>

Pursuant to F.R.Civ.P. 12 (or alternatively, F.R.Civ.P. 56), defendant Rohm and

Haas Company hereby moves to dismiss the Amended Complaint with prejudice.  Defendant

incorporates herein the accompanying memorandum of law in support of this motion.  For any

and all of the reasons presented therein, the Court grant this motion to dismiss.

Respectfully submitted,


/s/ *Raymond A. Kresge*
RAYMOND A. KRESGE
ANDREW J. ROLFES
Klett Rooney Lieber & Schorling
Two Logan Square, 12th Floor
18th & Arch Streets
Philadelphia, PA 19103-2756
(215) 567-7500
        and
CELIA JOSEPH
Rohm and Haas Company
100 Independence Mall West
Philadelphia, PA 19106-2399
(215) 592-3661

Attorneys for Defendant

KRLSPHI:185474.2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DR. MANHUA MANDY LIN,        :
        :
        Plaintiff,      :
        :
        v.        :      CIVIL ACTION NO. 02-CV-3612
        :
ROHM AND HAAS COMPANY,      :
        :
        Defendant.    :

DEFENDANT'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>


            RAYMOND A. KRESGE
            ANDREW J. ROLFES
            Klett Rooney Lieber & Schorling
            Two Logan Square, 12th Floor
            18th & Arch Streets
            Philadelphia, PA 19103-2756
            (215) 567-7500
                and
            CELIA JOSEPH
            Rohm and Haas Company
            100 Independence Mall West
            Philadelphia, PA 19106-2399
            (215) 592-3661

            Attorneys for Defendant

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     THE PARALLELISM BETWEEN THE STATE COURT AND FEDERAL
        ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Lin's State Court Pleading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      State Court Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        A.      Under The Doctrine Of Collateral Estoppel, The Findings Of The
                State Court Preclude Lin From Establishing Essential Elements Of
                Her Claims In This Case And Warrant A Dismissal Of The
                Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                1.      As A Matter Of Law, The State Court Findings Are To Be
                        Accorded Conclusive Effect In This Action . . . . . . . . . . . . . . . . . . 16

                2.      The State Court Findings Preclude Lin From Establishing
                        The Required Element Of Pretext In Her Employment
                        Discrimination And Retaliation Claims Set Forth In Counts
                        I through V Of The Amended Complaint . . . . . . . . . . . . . . . . . . . . 27

                3.      The State Court Findings Preclude Lin From Establishing
                        That Rohm And Haas' Actions Were Sufficiently
                        Outrageous To Support A Claim Of Intentional Infliction
                        Of Emotional Distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

                4.      The State Court Findings Preclude Lin From Establishing A
                        Claim For Breach Of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

        B.      The <u>Colorado River</u> Analysis Warrants A Dismissal Of This
                Federal Action In Favor Of The State Action . . . . . . . . . . . . . . . . . . . . . . 31

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

I.     <u>INTRODUCTION</u>

On July 30, 2002, plaintiff Dr. Manhua Lin ( "Lin"), a former employee of

defendant Rohm and Haas Company ("Rohm and Haas"), filed an Amended Complaint in this

Court with allegations that are for the most part identical to allegations contained in her Answer

and New Matter in a State action, <u>Rohm and Haas Company v. Lin</u>, Civ. No. 00-10035

(Montgomery County Court of Common Pleas) ("State action").  In both the State action and this

Federal action, Lin alleges that Rohm and Haas acted in bad-faith and with unlawful retaliatory

motive in filing the State action seeking to enjoin her from misappropriating Rohm and Haas

trade secrets and from breaching of her contractual obligations of confidentiality.  She claims that

she did not misappropriate Rohm and Haas trade secrets; and that she did not breach contractual

obligations to Rohm and Haas, and that Rohm and Haas breached its contractual obligations to

her under an EEOC-mediated settlement reached at the time of her departure from Rohm and

Haas.

The State action progressed through pleadings, discovery and nine days of

hearing.  On April 17, 2001, the State Court issued a Preliminary Injunction Order.  On June 19,

2001, the State Court issued a well-reasoned Opinion in support of the Preliminary Injunction

Order which presented findings that Lin now improperly seeks to re-litigate before this Court.

The State Court found that Lin intentionally misappropriated Rohm and Haas trade secrets;

breached her contractual obligations of confidentiality; and that Rohm and Haas had a "clear

right" to the relief that it sought.  Lin now comes to this Court in a vexatious attempt to re-litigate

the very matter she has litigated and lost in State Court.  After hearing this history at the

November 14, 2002 conference, this Court invited Rohm and Haas to file a motion to dismiss.

In this brief, Rohm and Haas will establish that this case should be dismissed for the following independent reasons:

1.     This Court must accord collateral estoppel to the findings of a Pennsylvania Court that merit collateral estoppel under Pennsylvania law.  Under the governing Restatement (Second) Judgments standards on collateral estoppel incorporated into Pennsylvania law (and that have also been consistently applied by the Third Circuit Court of Appeals), the State Court preliminary injunction findings should be accorded conclusive effect in this Federal action.  All of the elements for collateral estoppel are satisfied in this case.  The consequence of according collateral estoppel effect to the State Court preliminary injunction findings is that Lin cannot, as a matter of law, establish essential elements in her discrimination/retaliation claims (i.e., Counts I-V), in her intentional infliction of emotional distress claim (i.e., Count VIII), and in her breach of contract claim (i.e., Count IX), and those claims should accordingly be dismissed.[1]

2.     A dismissal of this Federal action is also warranted under the Colorado River doctrine.  Under a Colorado River analysis, the existence of the same parties in the two actions; the extensive parallelism between Lin's pleadings in the State action and in this case; the priority in time by over two years of the State action; the substantial litigation progress of the

---

[1]  Lin's claims for defamation and invasion of privacy in Counts VI and VII of the Amended Complaint are the subject of a separate partial Motion to Dismiss filed on October 15, 2002, which is currently pending before the Court.  The combined effect of Rohm and Haas' prior partial motion to dismiss Counts VI and VII and the instant motion to dismiss the remaining Counts of Plaintiff's Amended Complaint is that the Amended Complaint should be dismissed in its entirety.

State action; and the reactive and vexatious character of Lin's lawsuit in this federal forum following her complete failure in the State action all combine to warrant a dismissal.

The important policies underlying both collateral estoppel and <u>Colorado River</u> -- relieving parties of the cost and vexation of multiple lawsuits, of conserving judicial resources, and of encouraging reliance on State Court adjudications -- all provide strong support for this motion to dismiss.  Lin has litigated and lost in the State action.  As a matter of law, Lin cannot litigate the same matters again in this Court.

## II.     FACTUAL BACKGROUND[2]

Rohm and Haas hired Lin as a Senior Scientist in 1989, and from 1995-1999, she worked on a research project involving the invention of preparation processes for high yield catalysts for the catalytic synthesis of acrylic acid from propane.  (Amended Complaint at ¶¶8-9). In January 1999, Lin filed a charge of discrimination against Rohm and Haas with the Equal Employment Opportunity Commission ("EEOC") alleging race, gender and national origin discrimination.  (<u>Id</u>. at ¶13).  Through EEOC mediation, Lin and Rohm and Haas entered into a confidential settlement agreement in November 1999 under which Lin received money and resigned from Rohm and Haas effective November 30, 1999.  (<u>Id</u>. at ¶¶14-16).  In that agreement, any post-resignation presentation or publication by Lin required a prior trade secret review by Rohm and Haas.  (<u>Id</u>. at ¶18).

In March 2000, Lin gave a presentation at a meeting of the American Chemical Society concerning the preparation, characterization and performance of catalysts involved in the

---

[2]  For purposes of this motion only, most of the factual background is taken from Lin's Amended Complaint in this Federal action, and citations to paragraphs of the Amended Complaint are in the form "Amended Complaint at ¶_____."

synthesis of acrylic acid, i.e., the subjects of her research at Rohm and Haas.  (Id. at ¶36).

Shortly before that presentation, Lin gave Rohm and Haas an outline of her presentation for the

trade secret review, and Rohm and Haas responded by demanding that Lin not disclose certain

information in her presentation.[3]  (Id. at ¶¶38, 41-42).  Before her presentation, Rohm and Haas

sent Lin a letter demanding that she not disclose the information, but Lin ignored that demand

and gave the presentation that included the information.  (Id. at ¶¶44-45).

        In early April 2000, Lin complained informally to the EEOC about the trade secret

dispute regarding her March 2000 presentation before the American Chemical Society.  (Id. at

¶49).  In late May 2000, a Rohm and Haas attorney contacted the EEOC for assistance in

resolving the trade secrets dispute as the EEOC-mediated settlement agreement provided for

trade secret review by Rohm and Haas, but the EEOC chose not to become involved and so

notified Rohm and Haas by letter dated June 1, 2000.  (Id. at ¶¶50, 53).

III.    PROCEDURAL HISTORY

        On June 2, 2000, Rohm and Haas filed the State action seeking an injunction

against Lin to prevent further trade secrets violations and to have her comply with her settlement

and employment agreements with Rohm and Haas.  (Id. at ¶54).  On July 5, 2000, Lin filed an

Answer and New Matter and Counterclaim (attached hereto as Exhibit A) in the State action with

a lengthy introduction followed by 124 paragraphs.  On June 19, 2000, after the State action was

filed, but before filing her Answer and New Matter, Lin filed a charge of retaliation with the

EEOC (Id. at ¶57), which the EEOC sent to Rohm and Haas on September 27, 2000.

_____

        [3]  Rohm and Haas disagrees with Lin's characterization of the information as "published"
as well as other factual allegations in this area and so paraphrases her factual allegations here.

On July 10, 2000, a hearing was held before the Honorable Bernard Moore of the Montgomery County Court of Common Pleas, and on July 11, 2000, Judge Moore entered an Order enjoining Lin from disclosing or using trade secret information of Rohm and Haas. Subsequent to the issuance of that July 11, 2000 Order, there was full discovery. Judge Moore presided over nine days of hearing held between July 14, 2000 and February 26, 2001 in which the parties introduced testimony of fact witnesses and expert witnesses and numerous exhibits. Following the hearing, the parties submitted briefs.

On April 17, 2001, the State Court granted Rohm and Haas' motion and issued a Preliminary Injunction Order in which Lin was enjoined from disclosing trade secrets and from making scientific presentations or publications without first allowing for a 90-day trade secret review and approval by Rohm and Haas. On April 20, 2001, Lin moved to dissolve or modify the Preliminary Injunction Order, and on April 26, 2001, the State Court denied that motion.

Lin then appealed the Preliminary Injunction Order to the Pennsylvania Superior Court. The appeal required the State Court to issue an Opinion with findings underlying the Preliminary Injunction Order. In that Opinion dated June 19, 2001 (attached as Exhibit B),[4] the State Court issued the following findings: Lin disclosed trade secrets at the American Chemical Society meeting and in a subsequent paper (Opinion at pp. 3, 4 and 9); Lin disclosed several Rohm and Haas trade secrets relating to the development of a catalyst to be used in the synthesis of acrylic acid from propane (Opinion at p. 7); Lin copied hundreds of confidential Rohm and

---

[4]The part of the Opinion that identifies some of the actual trade secrets improperly disclosed by Lin is redacted in the attached Exhibit so as to preserve the confidentiality of those trade secrets. Citations to the State Court Opinion attached as Exhibit B are in the form "Opinion at p. ___."

Haas documents onto high storage-capacity disks and took hundreds of pages of confidential

scientific documents in violation of her contractual obligations (Opinion at pp. 3 and 9); Lin

breached her contractual obligations of confidentiality, violating, among other things, the

EEOC-mediated Settlement Agreement with Rohm and Haas (Opinion at pp. 3, 4 and 9); Rohm

and Haas was irreparably harmed by Lin's conduct (Opinion at p. 9); and Rohm and Haas had a

"clear right" to the relief that it sought in the State action.  (Opinion at p. 6).[5]

        Since the June 19, 2001 Opinion, Lin and Rohm and Haas have submitted

appellate briefs and oral argument to the Superior Court, where a decision is pending.

Throughout the trial court and appellate court proceedings, the record has remained sealed

because of the confidential nature of the evidence, and the vexatious character of Lin's litigation

conduct is reflected in her repeated attempts to litigate the sealing of the record in the State

action.  On September 14, 2001, Lin filed in the Pennsylvania Superior Court a Counter

Application to Unseal Reproduced Record.  On September 25, 2001, the Superior Court denied

Lin's counter application and issued an Order stating that "Appellee's application to seal the

certified record, briefs and reproduced record is GRANTED.  The certified record, briefs, and

reproduced record shall remain sealed until all appellate avenues, or the time for seeking such

relief, have elapsed.  Appellant's [Lin's] counter application to unseal the reproduced record is

DENIED."  Lin filed an Application for Reconsideration on October 12, 2001, contending that

there is a "strong presumption in favor of openness" and against sealing a record and that the

certified record from the Court of Common Pleas did not fit the "content based exception that

---

[5]A more detailed presentation of the exact findings of the State Court is in the argument
below on collateral estoppel.

protects legitimate trade secret interests of the parties." The Superior Court denied Lin's Application for Reconsideration on October 23, 2001. Lin recently filed in the Montgomery County Court of Common Pleas a Petition to Unseal the Record that has an argument date of January 24, 2003. Lin's lawyer signed that Petition on November 27, 2002, less than two weeks after the conference before this Court.

On July 30, 2002, after she lost the preliminary injunction litigation in State Court, Lin filed a detailed 138-paragraph Amended Complaint against Rohm and Haas in this Court. In the Federal Court Amended Complaint, Lin attempts to re-litigate in this Court factual issues that were decided adversely to her in the State Court. For example, in paragraph 25 of the Federal Court Amended Complaint, Lin alleges that she had Rohm and Haas' permission to retain in her possession documents containing confidential information and data, which is an attempt to re-litigate the contrary finding of the State Court. As another example, in paragraph 47 of the Federal Court Amended Complaint, Lin alleges that "at no time did Dr. Lin disclose information that constituted a trade secret or confidential information of Rohm and Haas" and in paragraphs 36, 45 and 47 of the Federal Court Amended Complaint, Lin alleges that her March 2000 presentation to the American Chemical Society was limited to patent examples (and hence non-confidential) - - which are allegations contrary to express opposite findings of the State Court that Lin did disclose Rohm and Haas trade secrets and confidential information in the American Chemical Society presentation and at other times. Rohm and Haas responded to the Federal Court Amended Complaint with an Answer and a partial motion to dismiss the counts on defamation and invasion of privacy, but there has been no other activity in this Federal action. Rohm and Haas incorporates herein that prior partial motion to dismiss. With the prior partial

motion to dismiss and this motion to dismiss, Lin's entire Amended Complaint should be
dismissed.

IV.    THE PARALLELISM BETWEEN THE STATE COURT AND
       FEDERAL ACTIONS

       A.    Lin's State Court Pleading

       Many of the allegations, claims and relief requests presented in Lin's detailed
26-page Answer, New Matter and Counterclaim are also presented (at times verbatim) in the
28-page Amended Complaint in this Federal action.  As shown herein, the parallelism can be
shown by a review of each part of Lin's State Court pleading - - the Introduction/Answer; the
New Matter; and the Counterclaim.

       Lin began her State Court Answer with a two-page introduction that addresses the
EEOC-related background and that presents her retaliation theory -- the same theory that is Lin's
principal theme in her Federal action.  On page 2 of Lin's Answer to the State Court Complaint,
she pleads:

              Thereafter, Rohm and Haas repeatedly violated the terms of
       the Settlement Agreement requiring Dr. Lin to again seek the
       assistance of the EEOC to enforce the terms of the settlement
       negotiated under their authority.  This lawsuit was filed in response
       to the EEOC Complaint and represents nothing more than a
       continuing pattern of harassment and intimidation by Rohm and
       Haas.

(Exhibit A at pp. 2-3) (emphasis added).

       The allegations of Lin's introduction to the State Court Answer (which do not
appear in paragraph form) can all be found in allegations presented in the following paragraphs
of the Amended Complaint in this Federal action:  ¶¶10, 11, 13, 16, 17, 18, 21, 24, 30, 31, 37, 41,

42, 44, 45, 46, 47 and 49. For example, on page 2 of her introduction to the State Court Answer, Lin pleads that "despite the prior specific agreement that disclosures made in public patent applications no longer constituted trade secrets, Rohm and Haas subsequently claimed that any discussion of the published material was not in Rohm and Haas' best interest and attempted to intimidate Dr. Lin into limiting her presentation to the American Chemical Society to matters that did not involve the European Patent Application." Those same allegations of the State Court Answer appear in paragraphs 41, 42 and 44 of the Federal Court Amended Complaint.

Following her introduction to the State Court Answer, Lin answered the State Court Complaint allegations with substantive accounts on the events in question that were later inserted into her Federal Court Amended Complaint. In particular, Lin's substantive accounts of the events presented in answers to paragraphs 16, 23, 28, 31 and 34 of the State Court Complaint are also presented in paragraphs 17, 22, 27, 37, 41, 42, 46 and 51 of Lin's Federal Court Amended Complaint. For example, in her answer to paragraph 31 of the State Court Complaint, Lin alleges that her March 2000 presentation at the American Chemical Society "disclosed no trade secret or confidential information of Rohm and Haas and was limited to the substance of matters previously authorized by Rohm and Haas and the agreements negotiated between Rohm and Haas and Dr. Lin." In paragraphs 37 and 46 of her Federal Court Amended Complaint, Lin represents the same substantive account of events to this Court in which she alleges that her presentation had been approved by Rohm and Haas prior to her departure (¶37) and was limited to information from disclosed patent examples (i.e., disclosed no trade secret or confidential information) (¶46) - - all despite the State Court's express rejection of those allegations of Lin after nine days of hearing.

The parallelism between Lin's 59 paragraphs of State Court New Matter[6] and Lin's Federal Court pleadings is complete. Many of the allegations in Lin's State Court New Matter are repeated verbatim in Lin's Federal Court Amended Complaint, and the substance of most of the other New Matter allegations re-appear in the Federal Court Amended Complaint. In particular, paragraphs 51, 52, 54, 55, 57, 59, 60, 72, 73, 88 and 95 of Lin's State Court New Matter appear verbatim in Lin's Federal Court Amended Complaint respectively at paragraphs 7, 8, 10, 11, 13, 16, 17, 30, 31, 47 and 50. Other paragraphs of Lin's State Court New Matter are essentially the same language as appears in the Federal action, with paragraphs 53, 58, 62, 63, 67, 81, 91, 164, 179, and 196 of Lin's State Court New Matter lining up with paragraphs 9, 12, 14, 18, 21, 22, 25, 38, 44, and 54 of Lin's Federal Court Amended Complaint. In addition to these paragraphs of Lin's State Court New Matter that have been inserted verbatim or with essentially the same language in Lin's Federal Court Amended Complaint, there are many paragraphs from Lin's State Court New Matter that are substantively the same as the Federal Court Amended Complaint. The allegations of paragraphs 61, 65/66, 67, 68, 80, 84, 87, 94, and 97 of Lin's State Court New Matter all substantively re-appear in paragraphs 15, 24, 25, 29, 39, 41, 45/46, 49 and 71 of Lin's Federal Court Amended Complaint. Finally, in her State Court New Matter, Lin alleges that the State Court lawsuit was brought in bad faith (¶101), for purposes of retaliation and harassment (¶¶102-103) and to limit Lin's employment opportunities and to drain her resources (¶¶108-109) -- allegations which form the core of Lin's Federal Court Amended Complaint and which appear in paragraphs 62, 68, 69, 71, 89 and 90 of the Federal Court

---

[6]  Lin starts her State Court New Matter at paragraph 51 of her State Court pleading.

pleading. In short, Lin's State Court New Matter has now become her Federal Court Amended Complaint.

Moreover, in paragraphs 94, 95, 96, 97, 101, 102 and 103 of the State Court New Matter, Lin presents the allegations that are core allegations of her Federal Court Amended Complaint. In paragraph 94 of her State Court New Matter, Lin alleges that "in April 2000, Dr. Lin contacted the EEOC to complain that the actions of Rohm and Haas were in violation of the settlement agreement and to seek assistance in enforcing the settlement agreement that the EEOC helped to mediate." In paragraph 95 of her State Court New Matter, Lin alleges that "Rohm and Haas was contacted by the EEOC on or about May 23, 2000." In paragraph 96 of her State Court New Matter, Lin states that the State Court Lawsuit was filed on June 2, 2000. In paragraph 97 of the State Court New Matter, Lin alleges retaliation, bad faith and harassment by Rohm and Haas, which allegations are repeated through averments of bad faith, harassment and retaliation in paragraphs 101, 102 and 103 of the New Matter. In paragraph 97 of her State Court New Matter, Lin specifically claims that the State Court lawsuit "is solely intended to intimidate and harass Dr. Lin in retaliation for reporting Rohm and Haas' violations of the settlement agreement to the EEOC" (emphasis added). All of those allegations in paragraphs 94, 95, 96 and 97 of Lin's State Court New Matter are core allegations in Lin's Federal Court Amended Complaint. At the end of her State Court New Matter, Lin seeks counsel fees for defending the State Court lawsuit, and that exact relief (i.e., counsel fees for defending the State Court lawsuit) is also sought in this Federal action.

In paragraph 51 of her State Court pleading, Lin states that she is a female of Chinese national origin (with the same statement being the first paragraph of factual allegations

in the Federal Court Amended Complaint), thereby setting up the discrimination/retaliation

position from the outset. Lin's State Court New Matter then proceeds with the same chronology

of alleged events in the same way as they are presented in her Federal Court Amended

Complaint, with a description of Lin's research followed by her 1999 EEOC complaint followed

by the mediated settlement and the settlement agreement followed by a description of a

December 1999 European patent application by Rohm and Haas followed by an account of the

March 2000 presentation by Lin and the dispute over the existence of trade secrets in that

presentation followed by claims of Rohm and Haas' breach of contract (i.e., the 1999 settlement

agreement reached following the original EEOC complaint) and Lin's non-breach of contract

followed by Lin's alleged contact to the EEOC in early April 2000 and Rohm and Haas' alleged

contact with the EEOC in May 2000 followed by claims of retaliation, bad faith and adverse

impact on opportunities for future employment. The structure of the State Court New Matter and

the structure of the Federal Court Amended Complaint are the same.

Lin's State Court Counterclaim presents allegations and seeks relief that are

parallel to the allegations and the relief sought in her Federal Court pleading. In the State Court

Counterclaim, Lin incorporates her Answer and all of her New Matter and then after presenting

additional factual allegations on a blocked opportunity to give a paper, Lin alleges that Rohm and

Haas has falsely disparaged her standing in the scientific community (¶117), that the "actions of

Rohm and Haas are solely intended to damage the good name and reputation of Dr. Lin in the

scientific community" (¶120) and that Lin has been harmed with potential future employers

(¶¶120, 122, 123) -- allegations that appear in Lin's Federal Court Amended Complaint through

her allegations and claims of defamation and invasion of privacy/false light (e.g., ¶¶120, 121,

122, 130, 131). At the end of her State Court pleading, Lin seeks the same relief that she seeks in this Federal action -- namely, compensatory damages, punitive damages, and counsel fees for defending the State Court lawsuit.

      B.     <u>State Court Litigation</u>

          The parallelism between the State action and the Federal action is also reflected in the litigation activity of the State action. In written discovery in the State action, Lin issued document requests (attached as Exhibit C) that relate to employment and EEO issues that are part of this Federal action. In Lin's first document requests issued within one week of the filing of the State Court Complaint and requested by Lin on an expedited basis, Lin focused on the EEOC-related issues. In request no. 2 of those State Court document requests, Lin asked for documents related to "the issues addressed by the Rohm and Haas EEO and/or the EEOC involving Lin." In request no. 3, Lin asked for "all documents relating to the Rohm and Haas EEO complaints made by or pertaining to Dr. Lin." In request no. 4, Lin asked for "all documents relating to the EEOC charges made by or pertaining to Dr. Lin." In request no. 5, Lin asked for "all documents, memoranda, e-mails or other communications from or to the EEOC concerning EEOC charge No. 170990468 and specifically including reference to any communications between [Rohm and Haas] and the EEOC since the execution of the Settlement Agreements."

          In her pre-hearing Answer to Petition for Preliminary Injunction (attached as Exhibit D) filed on July 7, 2000, she claimed that the State Court lawsuit was in retaliation for her approach to the EEOC regarding the disputes over the EEOC-mediated settlement agreement (<u>i.e.</u>, the same theory that exists in her Federal Court Amended Complaint):

> Rohm and Haas has filed this action as part of a continuing course
> of threats, harassment and intimidation against Dr. Lin and has
> done so only after Dr. Lin has been forced to seek assistance from
> the EEOC by virtue of Rohm and Haas' failure to comply with its
> contractual obligations to Dr. Lin.

Following written discovery, in a preliminary injunction hearing before the State

Court, Lin introduced testimony and exhibits (attached as Exhibit E) regarding her retaliation

theory that is presented in her Federal action.  Lin testified in the State Court hearing about her

contacts with the EEOC in April and May 2000, and she introduced as exhibits the June 1, 2000

letter from the EEOC to Rohm and Haas and a May 26, 2000 letter from Rohm and Haas to Lin

that referenced discussions with the EEOC mediator.

In her post-hearing brief in the State action (cited page attached as Exhibit F), Lin

maintained her position that the State Court lawsuit was retaliatory in nature:

> From the outset, it has been Dr. Lin's contention that [Rohm and
> Haas'] Petition for Preliminary Injunction was not brought in good
> faith but was solely intended to continue the pattern of harassment,
> oppression and retaliation that has characterized Rohm and Haas'
> conduct toward Dr. Lin since she first asserted that she was subject
> to discrimination.

In sum, there is extensive parallelism between the State action and this Federal

action.  In both actions, Lin presents the same factual allegations, has assumed the same positions

(e.g., Rohm and Haas has retaliated against her for exercising her rights to contact the EEOC;

Rohm and Haas has acted to disparage her and to lower her standing in the scientific community,

etc.), and has sought the same relief (i.e., compensatory damages, punitive damages, and the

attorneys' fees for defending the State Court lawsuit).  Consequently, as a matter of law, under

both the collateral estoppel and <u>Colorado River</u> doctrines, this Federal action should be dismissed.

V.     <u>ARGUMENT</u>

     A.     Under The Doctrine Of Collateral Estoppel, The Findings Of The State Court Preclude Lin From Establishing Essential Elements Of Her Claims In This Case And Warrant A Dismissal Of The Amended Complaint.

After extensive testimony in nine days of hearing and after the submission of post-hearing briefs by the parties, the State Court found that Lin had, in fact, disclosed trade secrets of Rohm and Haas.  The State Court issued a Preliminary Injunction in which Lin was enjoined from using or disclosing confidential information or trade secrets and from making scientific presentations or publications without first allowing an appropriate period for review and approval by Rohm and Haas.  In issuing that Injunction Order, the State Court gave Rohm and Haas the injunctive relief that it sought.  The Injunction Order was supported by a well-reasoned Opinion issued on June 19, 2001 that contains findings as to Lin's conduct; as to specific trade secret misappropriations by Lin (<u>e.g.</u>, at Lin's presentation before the American Chemical Society in March 2000); as to Lin's breaches of her contractual obligations; and as to Rohm and Haas' clear right to the relief it sought -- findings that Lin now attempts to re-litigate in this Federal action.  Lin's appeal of the State Court Order is pending before the Pennsylvania Superior Court, which has already twice rejected Lin's argument that Rohm and Haas did not have legitimate trade secrets to protect in a sealed record through its denials of Lin's applications to unseal the record.  Under the doctrine of collateral estoppel, the State Court findings cannot be

re-litigated in this Federal action, and the collateral estoppel application of the State Court

findings compels a dismissal of Lin's claims in this case.

      1.        As A Matter Of Law, The State Court Findings Are To Be
                       Accorded Conclusive Effect In This Action.

      As a general matter, "federal courts consistently apply the preclusion doctrines to

state court decisions." Pennsylvania Public Interest Research Group, Inc. v. P.H. Glatfelter Co.,

128 F.Supp.2d 747, 755 (M.D. Pa. 2001) (citation omitted).  The federal courts "must give the

acts of Pennsylvania's courts the same full faith and credit in federal court that they would enjoy

in Pennsylvania's courts." Greenleaf v. Garlock, Inc., 174 F.3d 352, 357 (3d Cir. 1999) (citation

omitted); see also, In re Brown, 951 F.2d 564, 568-569 (3d Cir. 1991) ( "federal court must give

to a state court judgment the same preclusive effect as would be given that judgment under the

law of the State in which the judgment was rendered").  Under Pennsylvania law, issue

preclusion or collateral estoppel[7] applies where:

> 1) the issue decided in the prior adjudication was identical with the
> one presented in the later action, 2) there was a final judgment on
> the merits, 3) the party against whom the plea is asserted was a
> party or in privity with a party to the prior adjudication, 4) the party
> against whom it is asserted has had a full and fair opportunity to
> litigate the issue in question in a prior action.

Shaffer v. Smith, 673 A. 2d 872, 874 (Pa. 1996) (citation omitted).

      In assessing the requisite level of finality to another Court's decision for purposes

of a collateral estoppel application, the standard is more relaxed than in an evaluation of a

potential res judicata/claim preclusion application.  As the Third Circuit Court of Appeals stated,

---

     [7] The terms issue preclusion and collateral estoppel will be used interchangeably in this
brief.

"[u]nlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral

estoppel, does not require the entry of a judgment, final in the sense of being appealable."

<u>Brown</u>, 951 F.2d at 569.  As the Court further explained, "finality for purposes of issue

preclusion is a more 'pliant' concept than it would be in other contexts.  Finality may mean little

more than that the litigation of a particular issue has reached such a state that a court sees no

really good reason for permitting it to be litigated again."  <u>Id.</u>  (quoting <u>Dyndul v. Dyndul</u>, 620

F.2d 409, 412 (3d Cir. 1980)).

   In determining whether a prior decision constitutes a final judgment for purposes

of issue preclusion or collateral estoppel, Pennsylvania courts apply the standard set forth in the

Restatement (Second) of Judgments, § 13.  <u>Shaffer</u>, 673 A. 2d at 875.  In applying collateral

estoppel to findings of a Pennsylvania Court, the Third Circuit Court of Appeals (citing <u>Shaffer</u>)

stated that the "Pennsylvania Supreme Court consults section 13 of the Reinstatement (Second)

of Judgments to define 'final judgment' for purposes of issue preclusion."  <u>Greenleaf</u>, 174 F.3d at

358.  That Restatement of Judgments standard provides:

> The rules of res judicata are applicable only when a final judgment
> is rendered.  However, for purposes of issue preclusion (as
> distinguished from merger and bar), "final judgment" includes *any*
> prior adjudication of an issue in another action that is determined
> to be sufficiently firm to be accorded conclusive effect.

Restatement (Second) Judgments § 13 (emphasis added).

   Significantly, illustration no. 1 to the Restatement section on "criteria for

determining finality in the application of issue preclusion" provides that an appealed decision on

a *preliminary injunction* can be accorded collateral estoppel effect.  Restatement (Second)

Judgment § 13, Comm. g, illus. 1.  In that Restatement (Second) § 13 illustration, the trial court

conducted a thorough hearing and granted a preliminary injunction against an arbitration based on a finding that the arbitration clause in a contract was induced by fraud.  In the illustration, the preliminary injunction order was immediately appealable, and the appellate court determined differently on the preliminary injunction record that there was no fraud.  The conclusion of the Restatement (Second) § 13 illustration was that the negative finding as to fraud made on the preliminary injunction record should be accepted as conclusive in another action as long as that finding was adequately deliberated.

In addition to the illustrations, in determining whether a prior adjudication is "sufficiently firm" to be accorded preclusive effect, the comments to the Restatement (Second) standard provide the following guidance:  "the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered.  Thus preclusion should be refused if the decision was avowedly tentative.  On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion."  Restatement (Second) Judgments § 13, Comm. g.

In Shaffer, supra, the Pennsylvania Supreme Court applied the Restatement (Second) § 13 standard to uphold the trial court's application of collateral estoppel in granting partial summary judgment to the plaintiff based on the defendant's criminal conviction for assault despite the pendency of a Post Conviction Relief Act petition by the defendant.  More specifically, the defendant in the Shaffer civil action for assault had been convicted of assault in a criminal trial.  That defendant had filed a petition to overturn the conviction (based on ineffective

assistance of counsel), which was pending at the time of the civil action.  Over the objections of

the defendant that the conviction was not final for purposes of collateral estoppel, the trial court

in the civil action accorded collateral estoppel effect to the criminal finding of assault and

consequently granted summary judgment on liability against the defendant.

The Pennsylvania Supreme Court in <u>Shaffer</u> affirmed that application of collateral

estoppel, holding first that the pendency of an appeal does not affect the use of collateral

estoppel, as a "judgment is deemed final for purposes of res judicata or collateral estoppel unless

or until it is reversed on appeal".  <u>Id</u>. at 874 (footnote and citations omitted).  The Court then

quoted and applied the above-cited Restatement (Second) § 13 standard for the basic legal

principle that in contrast to res judicata, collateral estoppel requires only that the prior

adjudication be "sufficiently firm" and also quoted a Restatement (Second) § 13 comment that

the taking of an appeal does not remove the finality to the prior adjudication.  <u>Id</u>. at 875.

Recognizing that non-application of collateral estoppel until complete disposition of all appeals

would impose an unfair litigation hardship on the party that prevailed in the prior adjudication,

the Court held that collateral estoppel was appropriate.  As the Court then summarized, "We find

our decision today serves the underlying purposes of collateral estoppel.  Collateral estoppel

relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and,

by preventing inconsistent decisions, encourages reliance on adjudication."  <u>Id</u>.  (quotation marks

and citation omitted).

Significantly, in its analysis of the applicability of collateral estoppel to either

prior state court or federal court adjudications, the Third Circuit Court of Appeals has

consistently applied the Restatement (Second) § 13 standard.  <u>See</u>, <u>e.g.</u>, <u>Greenleaf</u>, 174 F.3d at

358-359; <u>Hawksbill Sea Turtle v. Federal Emergency Management Agency</u>, 126 F.3d 461, 474

n.11 (3d Cir. 1997); <u>In re Brown</u>, 951 F.2d at 569; <u>Dyndul</u>, 620 F.2d at 411-412.  Of greatest

significance to the instant case is the analysis in <u>Hawksbill</u> that if "sufficiently firm", preliminary

injunction findings can merit the application of collateral estoppel.  Citing the Restatement of

Judgments (Second) § 13 and in particular the above-referenced illustration no. 1 in which

findings made in a preliminary injunction context were to be accorded collateral estoppel effect

in another litigation, the Court stated:

> [F]indings made in granting or denying preliminary injunctions can
> have preclusive effect if the circumstances make it likely that the
> findings are 'sufficiently firm' to persuade the court that there is no
> compelling reason for permitting them to be litigated again.
> Whether the resolution in the first proceeding is sufficiently firm to
> merit preclusive effect turns on a variety of factors, including
> whether the parties were fully heard, whether the court filed a
> reasoned opinion, and whether that decision could have been, or
> actually was appealed.

<u>Hawksbill</u>, 126 F.3d at 474 n.11 (citations and quotation marks omitted).  Those latter factors in

assessing whether preliminary injunction findings are sufficiently firm are taken directly from the

Restatement (Second) § 13, comment g.  While the Court did not actually apply this analytical

framework in <u>Hawksbill</u> (because other elements for collateral estoppel were not present),

<u>Hawksbill</u> is significant for its unequivocal adoption of the Restatement (Second) § 13

proposition that preliminary injunction findings can be accorded collateral estoppel effect.  <u>See</u>

<u>Glatfelter</u>, 128 F.Supp.2d at 756-57 (rejecting plaintiffs' argument that ruling on preliminary

injunction cannot support application of issue preclusion as contrary to the "Third Circuit's

unequivocal statement" in <u>Hawksbill</u>, but declining to apply collateral estoppel due to absence of

reasoned opinion in earlier decision by Environmental Review Board ALJ).

In <u>Greenleaf</u>, <u>supra</u>, the Court of Appeals reversed a District Court's refusal to apply issue preclusion to bar relitigation of damages that had already been addressed in the Pennsylvania Court of Common Pleas for Delaware County.  In the State action, a reverse bifurcated trial was held with a jury assessment of damages.  Before the liability phase began, the parties reached a confidential settlement.  Even though the damages verdict was never appealed and even though there was never a liability determination in the State action, the Third Circuit determined that Pennsylvania's doctrine of issue preclusion barred any relitigation of damages in Federal Court.  In so holding, the Court applied Restatement (Second) § 13 as the Pennsylvania standard for assessing finality for purposes of collateral estoppel.  In that analysis, the Court quoted some of the Restatement (Second) § 13 policy rationales for a more relaxed standard for collateral estoppel (<u>e.g.</u>, avoidance of needless duplication of effort and expense); quoted the Restatement (Second) § 13 factors for "finality" for collateral estoppel (<u>i.e.</u>, same factors as presented in <u>Hawksbill</u>, <u>supra</u>); and quoted and relied upon a Restatement (Second) § 13 illustration as having direct application to the case before it.  Under that Restatement analysis, the relitigation of damages allowed by the District Court was deemed to be "unnecessarily duplicative and a waste of valuable judicial resources - - the precise evils that issue preclusion is designed to combat."  174 F.3d at 361 (citation omitted).  In applying collateral estoppel to what it referred as a "preliminary state damages verdict", <u>id.</u> at 360, the Court expressly acknowledged the more relaxed standard applicable to collateral estoppel:

> We observe that our conclusion is consistent with the modern trend to relax traditional views of the finality requirement by applying issue preclusion to matters resolved by *preliminary* rulings . . .

<u>Id</u>. at 359 n.5 (quotation marks and citation omitted) (emphasis added).

Under the doctrine of collateral estoppel as applied in Pennsylvania, the preliminary injunction findings of the State Court should be accorded preclusive effect in this Federal action.  All of the four elements for collateral estoppel exist in this case.  First, as shown in the above account of the parallelism of the State Court and Federal actions and the above account of the State Court findings that dispose of many of the factual allegations in the Federal Court Amended Complaint, the issues in the State action (for which there is to be accorded collateral estoppel effect) are identical to the issues raised in the Federal action.  Those issues include, among others, Lin's misappropriation of Rohm and Haas trade secrets; Lin's breaches of her contractual obligations to Rohm and Haas; and Rohm and Haas' clear right to the relief it sought in the State action.  Second, the parties in the State action are identical to the parties in the action before this Court.  Third, Lin, who was represented in the State action by the same counsel who represents her in this Federal action, had a full and fair opportunity to litigate the issues to be accorded collateral estoppel effect, as Lin had nine days of hearing; submitted a post-hearing brief; and also submitted a motion for reconsideration.  Fourth, the State Court preliminary injunction findings are sufficiently firm to be accorded conclusive effect in this case.

As to the latter element for collateral estoppel, the governing standard of Restatement (Second) § 13 compels the conclusion that the State Court preliminary injunction findings are sufficiently firm so as to satisfy the finality requirement.  Illustration no. 1 to Restatement (Second) § 13, comment g provides that findings made in a preliminary injunction context can be accepted as conclusive in a second action - - a conclusion adopted by the Third Circuit Court of Appeals in <u>Hawksbill</u>, <u>supra</u>.  The more specific factors for "sufficient firmness" of preliminary rulings to merit collateral estoppel effect are all satisfied in this case: (1) the

parties were fully heard in nine days of hearing and a post-hearing brief before the State Court issued the preliminary injunction order and findings; (2) the preliminary injunction findings of the State Court were supported by a reasoned opinion (a copy of which is attached); and (3) the preliminary injunction findings and order were subject to immediate appeal and are presently now under appellate review by the Pennsylvania Superior Court.  As held by the Pennsylvania Supreme Court in <u>Shaffer</u>, <u>supra</u>, the pendency of that appeal does not detract from the sufficient firmness of the preliminary injunction findings for purposes of collateral estoppel.  673 A.2d at 874; <u>see</u> <u>also</u>, Restatement (Second) § 13, comment g ("the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment").  Thus, all of the elements for collateral estoppel are satisfied in this case, and the preliminary injunction findings should be accorded conclusive effect in this case.  Moreover, the policy rationales for collateral estoppel, as articulated by the Pennsylvania Supreme Court in <u>Shaffer</u>, all directly apply in support of a collateral estoppel effect being accorded to the State Court preliminary injunction findings - - namely, "reliev[ing] parties of the cost and vexation of multiple lawsuits", "conserv[ing] judicial resources", and "encourag[ing] reliance on adjudication."  673 A.2d at 875.  Most simply put, there is no good reason to re-litigate in this case the many issues decided by the State Court.

        With the application of collateral estoppel to the State Court preliminary injunction findings,[8] the following State Court findings are to be accorded conclusive effect in this case:

_____

        [8]  To the extent that the application of the State Court preliminary injunction findings to this case converts this motion into a summary judgment motion, Rohm and Haas requests that the motion be treated as a summary judgment motion.

1.     "Rohm and Haas has created a research team that focuses on analyzing and developing methods for synthesizing acrylic acid.  Until the end of her employment, Lin was a member of this research team."  (Opinion at p. 1).

2.     "In November 1999, Lin decided to leave Rohm and Haas.  Pursuant to the terms of an EEOC settlement, she executed an 'Agreement and Release' with Rohm and Haas.  The Agreement and Release contained three addenda: a 'Worldwide Confidentiality and Employment Agreement,' a 'Departing Employee Notice and Acknowledgment of Continuing Obligations' and an 'Acknowledgment and Records Security Statement.'  All of the above documents recognized that Lin's obligations for confidentiality of Rohm and Haas' trade secrets remained in full force and effect after her departure from the company."  (Opinion at p. 2).

3.     "The Agreement and Release also provided Lin with the publication process for scientific literature.  The agreement established that 'Dr. Lin will be able to publish subject to the review concerning trade secrets by Dr. Scott Han.  In the event of a dispute, an additional review will be conducted by Dr. Charles Tatum.'"  (Opinion at pp. 2-3).

4.     In a "scientific presentation at the American Chemical Society ("ACS") in March 2000," "Lin disclosed several Rohm and Haas trade secrets relating to the development of a catalyst to be used in the synthesis of acrylic acid from propane."  (Opinion at pp. 3, 7, 9).

5.     "None of the above trade secrets [disclosed in the ACS presentation in March 2000] are known in the industry.  These trade secrets have great value to Rohm and Haas and provide the company with a competitive advantage over its competitors in the race to mass-produce a low-cost acrylic acid.  This trade secret information is a scientific advancement over the industry's understanding and practices."  (Opinion at p. 8).

6.    "After the ACS meeting, Lin inserted some of the confidential data into a previously approved scientific paper.  This paper was to be published in a scientific journal.  She did not inform Rohm and Haas of her insertion of the confidential material nor did she submit the updated paper for a new trade secret review."  (Opinion at p. 4).

7.    "Rohm and Haas values this trade secret information and has maintained and preserved its confidentiality."  (Opinion at p. 6).

8.    "Rohm and Haas has a right to the use and enjoyment of the trade secrets discovered by its employees."  (Opinion at p. 6).

9.    "Lin learned of these trade secrets through her position as a senior scientist at Rohm and Haas."  (Opinion at pp. 6-7).

10.    In connection with Lin's ACS presentation in March 2000, "Lin submitted a very basic outline to Han for a trade secret review a few days before the presentation.  Han clearly did not have enough time to give this outline a thorough trade secret review.  However, he authorized the presentation based on the caveat that only 1996 data was to be used. . . .  Lin was aware that post-1996 data was not approved because it contained confidential trade secret information.  She never submitted her final outline and presentation slides to Han for a trade secret review.  This final outline and slide presentation contained post-1996 critical trade secret information.  Lin intentionally placed this confidential information in the final outline knowing Rohm and Haas did not authorize it."  (Opinion at p. 3).

11.    In disclosing trade secrets at the ACS meeting and in a subsequent paper, Lin "totally ignored the trade secret review process agreed to by the parties."  (Opinion at p. 9).

12.     "Prior to leaving Rohm and Haas, Lin copied hundreds of confidential Rohm and Haas documents onto high-storage-capacity computer disks.  In addition, she took some reference books that were the property of Rohm and Haas."  (Opinion at p. 3).

13.     In "intentionally plac[ing] confidential information in the final [ACS presentation] outline knowing Rohm and Haas did not authorize it," Lin committed a "clear violation of her contractual duty under the Agreement and Release."  (Opinion at p. 3).

14.     With Lin's "insert[ion] of some of the confidential trade secret data into a previously approved scientific paper" after the ACS meeting, there was "another clear violation of [Lin's] contractual obligations concerning trade secret disclosures."  (Opinion a p. 4).

15.     In disclosing "trade secrets at the ACS meeting and in a subsequent paper," Lin "breach[ed] her contractual duty of confidentiality."  (Opinion at p. 9).

16.     "The harm suffered by Rohm and Haas is clearly irreparable."  (Opinion at p. 9).

17.     "Rohm and Haas has a clear right to relief due to Lin's direct violations of her contractual duty not to disclose Rohm and Haas trade secrets."  (Opinion at p. 6).

As established below, according collateral estoppel effect to these State Court findings means that as a matter of law, Lin cannot establish the essential elements of her claims of employment discrimination and retaliation (as set forth in Counts I through V of her Amended Complaint); cannot establish her claim of intentional infliction of emotional distress (as set forth in Count VIII); and cannot establish her breach of contract claim (as set forth in Count IX). Accordingly, Lin's Amended Complaint should be dismissed with prejudice.

2.    The State Court Findings Preclude Lin From Establishing
      The Required Element Of Pretext In Her Employment
      Discrimination And Retaliation Claims Set Forth In Counts
      I through V Of The Amended Complaint.

Counts I through V of Lin's Amended Complaint in this action purport to state

employment discrimination and retaliation claims under 42 U.S.C. § 1981, Title VII of the Civil

Rights Act of 1964, and the Pennsylvania Human Relations Act. Lin's Title VII, Section 1981

and PHRA claims are analyzed under the burden-shifting framework set forth by the United

States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and further

developed in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's

Honor Center v. Hicks, 509 U.S. 502 (1993); see also, Jones v. School Dist. of Philadelphia, 198

F.3d 403, 410 (3d Cir. 1999). Under the McDonnell Douglas framework, once a plaintiff

establishes a prima facie case of discrimination and/or retaliation, the burden shifts to the

defendant "to articulate some legitimate, non-discriminatory reason" for the challenged actions.

Jones, 198 F.3d at 410 (quoting, McDonnell Douglas, 411 U.S. at 802). If the defendant comes

forward with a legitimate, non-discriminatory reason for its actions, the plaintiff must prove "that

the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

discrimination." Jones, 198 F.3d at 410. At the pretext stage, the Court must determine whether

there is sufficient evidence from which a jury could conclude that the purported reasons for the

defendant's adverse actions were in actuality a pretext for intentional discrimination or

retaliation. At all times, the plaintiff bears the ultimate burden of proving intentional

discrimination and/or retaliation. Id.; see also, e.g., Burdine, 450 U.S. at 252-53. Given the State

Court's preliminary injunction findings, Lin cannot satisfy her burden of proving pretext in this case or her ultimate burden of proving intentional discrimination or retaliation.

The gravamen of Lin's claims in Counts I through V is that Rohm and Haas' conduct in filing and litigating the State action and its articulated reasons of protecting confidential trade secret information and its rights under (among other things) the Agreement and Release mediated by the EEOC and Lin's Employment Agreement with Rohm and Haas were not intended to protect the legitimate business interests of Rohm and Haas, but were instead a bad faith, pretextual effort to discriminate and retaliate against Lin for her alleged approach to the EEOC in Spring 2000.[9]  The above-cited State Court findings preclude Lin from establishing pretext.  Those State Court findings include findings that "Rohm and Haas has a *clear right* to the relief" sought (emphasis added); that there were trade secrets being violated by Lin, with Rohm and Haas having legitimate, protectible interests in those trade secrets; that Rohm and Haas was irreparably harmed by Lin's conduct that precipitated the State Court lawsuit; that Lin intentionally misappropriated Rohm and Haas trade secrets; and that on more than one occasion, Lin breached her contractual obligations of confidentiality.  With those State Court findings having conclusive effect in this Federal action, the articulated reasons for the filings of the State Court lawsuit are conclusively established, and it is not possible for Lin to challenge them as pretextual.  Moreover, in its Order sealing the record and in its two Orders denying Lin's applications to unseal the record, the Pennsylvania Superior Court has rejected Lin's position that

---

[9]While Lin's claims are presented as retaliation under civil rights laws, they are akin to an abuse of process claim.  In an abuse of process claim, the plaintiff must have prevailed in the prior litigation.  As a practical matter, Lin's complete failure in the State action undermines her claim in this case that Rohm and Haas acted unlawfully in filing the State action.

Rohm and Haas does not have legitimate trade secret interests to protect, which in turn is a rejection of a claim of pretext.

In sum, if Rohm and Haas had a clear right to the relief sought in the State action and was irreparably harmed by Lin's intentional misappropriation of trade secrets and breach of contract and has legitimate business and trade secret interests that warrant legal protection, Lin is foreclosed from contending that Rohm and Haas did not act for its articulated reasons and that those articulated reasons were presented as pretext for intentional discrimination/retaliation. Unable to establish the required element of pretext, Lin's claims for discrimination/retaliation fail as a matter of law. Accordingly, the Court should dismiss Counts I-V of the Amended Complaint.

> 3. The State Court Findings Preclude Lin From Establishing That Rohm And Haas' Actions Were Sufficiently Outrageous To Support A Claim Of Intentional Infliction Of Emotional Distress.

Count VIII of Lin's Amended Complaint purports to set forth a claim for intentional infliction of emotional distress based on Rohm and Haas' conduct in pursuing the State action and in seeking and obtaining the relief sought in the State action. To establish a valid claim for intentional infliction of emotional distress under Pennsylvania law, the plaintiff must show that the defendant engaged in conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988). Moreover, "[i]t is the court's responsibility to determine if the conduct

alleged in the cause of action reaches the requisite level of outrageousness." Andrews v. City of Philadelphia, 895 F.2d 1469, 1486-87 (3d Cir. 1990); Cox, 861 F.2d at 395.

In this case, the State Court found that Rohm and Haas had a clear right to the relief sought; that Rohm and Haas was irreparably harmed by Lin's misappropriation of trade secrets; that on more than one occasion, Lin misappropriated trade secrets of Rohm and Haas; and that Lin breached her contractual duty to maintain confidentiality. With those conclusive findings, there was no outrageous conduct by Rohm and Haas toward Lin, and if anything, the only outrageous conduct in this case was that committed by Lin in her knowing, intentional and repeated misappropriation of trade secret and confidential information. The State Court findings conclusively establish that Rohm and Haas' actions to protect its trade secrets and contractual rights were reasonable and necessary and were not in any way outrageous, extreme, atrocious, or utterly intolerable. As a matter of law, given the State Court findings, the conduct of Rohm and Haas cannot be deemed to be so outrageous as to "go beyond all possible bounds of decency" as is necessary to establish a claim for intentional infliction of emotional distress.[10] Therefore, Lin's claim for intentional infliction of emotional distress in Count VIII of her Amended Complaint fails as a matter of law and must be dismissed.

---

[10]Even without the collateral estoppel effect accorded to the State Court findings, Lin does not allege any conduct by Rohm and Haas that, as a matter of law, can reach the requisite level of outrageousness needed for an intentional infliction of emotional distress claim.

    4.    The State Court Findings Preclude Lin From Establishing
              A Claim For Breach Of Contract.

In Count IX of the Amended Complaint, which is for breach of contract, Lin alleges that Rohm and Haas breached the terms of the EEOC-mediated Settlement Agreement and Release. Yet, in the State action, there is also a breach of contract claim, and the State Court found that Lin (and not Rohm and Haas) breached contractual obligations under the EEOC-mediated Settlement Agreement and Release. By according conclusive effect to the State Court findings on breach of contract that are tied to the same contract identified in the Federal Court Count IX claim (i.e., the EEOC-mediated Settlement Agreement), Lin has no claim for breach of contract. Lin's improper attempt to re-litigate in this Federal action the issues decided by the State Court could not be more clearly shown than through Count IX, and the policies underlying the application of collateral estoppel could not be more clearly applicable than to Lin's vexatious claim of breach of contract. As a matter of law, the conclusive effect of the State Court's finding that it was Lin who was in breach of contract means that Lin's breach of contract claim in Count IX should be dismissed.

    B.    The <u>Colorado River</u> Analysis Warrants A Dismissal Of This
             Federal Action In Favor Of The State Action.

After over two years of unsuccessful litigation in State Court, Lin has re-packaged her factual allegations (in many instances verbatim) and her claims in this action. Under a <u>Colorado River</u> analysis, this federal case should be dismissed.

In <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976), the Supreme Court held that the federal district court, which had jurisdiction over the case, should nonetheless dismiss an action brought by the United States over water rights in favor

of a state proceeding over water rights involving parallel claims in which the United States was a

defendant.  In Colorado River, there existed federal legislation that provided consent to join the

United States as a party in state proceedings over water rights.  After concluding that the

traditional abstention doctrines did not apply, the Supreme Court held that dismissal of a federal

action in favor of a state proceeding can be done for "reasons of wise judicial administration."

Id. at 817-818.  As the Court held:

> [T]here are principles unrelated to considerations of proper
> constitutional adjudication and regard for federal-state relations
> which govern in situations involving the contemporaneous exercise
> of concurrent jurisdiction . . . by state and federal courts.  These
> principles rest on considerations of wise judicial administration,
> giving regard to conservation of judicial resources and
> comprehensive disposition of litigation.

Id. at 817 (quotation marks and citations omitted).  The Court then identified four factors to

apply in evaluating whether a dismissal of the federal action in favor of the state action would be

warranted with no one factor being determinative: (1) a determination as to whether the state

court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the

desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained

by the concurrent forums.  Id. at 818.

        In Colorado River, the Court applied those factors to conclude that a dismissal of

the federal action was appropriate.  In addition to the avoidance of piecemeal litigation over the

disposition for water rights (i.e., property) that was supported by the federal legislation that

allowed the United States to be a party in state proceedings, the Court also found significant,

among other things, the absence of any proceedings in the federal action other than the filing of

the complaint.  The factors thus justified the dismissal of the federal action.

KRLSPHI:185474.2                                    32

In <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S.1 (1983), the Supreme Court provided more detail to the <u>Colorado River</u> analysis and added the following three factors -- (i) a comparison of the progress made in the State action and the Federal action; (ii) whether federal or state law applies to decide the merits of the federal action; and (iii) the adequacy of the state proceeding to protect the federal plaintiff's rights. In providing more detail to the <u>Colorado River</u> framework, the Court in <u>Moses H. Cone</u> stressed that the <u>Colorado River</u> factors are not to be applied like a mechanical checklist; are to be applied with weights given to any one factor that can vary greatly from case to case; and are to be "applied in a pragmatic, flexible manner with a view to the realities of the case at hand." <u>Id</u>. at 16, 21. Significantly, the Court also found that if the federal action is a reactive maneuver in response to the developments of the state proceedings, then a deferral to the state litigation would be more warranted:

> The reasoning . . . that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under <u>Colorado River</u> -- has considerable merit.

<u>Id</u>. at 17 n.20.

In <u>Moses H. Cone</u>, the factors did not warrant a dismissal or stay of the federal action. Unlike <u>Colorado River</u> and the instant case where the federal action had not proceeded beyond the initial pleading stage, the federal action in <u>Moses H. Cone</u> had far more activity than the state court proceeding (even though the State action had been filed first) and had advanced close to a point where there could be a judicial resolution of the issue. Moreover, unlike <u>Colorado River</u> and the instant case, <u>Moses H. Cone</u> involved only a claim of arbitrability under

the federal Arbitration Act with its underlying policy of fostering quick, prompt arbitration -- a federal policy that would be frustrated by a dismissal or stay of the federal action.

    An application of the <u>Colorado River</u> analytical framework (as refined in <u>Moses H. Cone</u>) in the instant case compels a dismissal of this Federal action.  First, as established above, there is an extensive parallelism between the State Court and Federal actions.  Lin presents the same allegations in both actions (<u>i.e.</u>, no trade secret violations by Lin; contact with the EEOC by Lin; retaliation underlying the State action; Rohm and Haas' disparagement of and threats to Lin); raises the same theories in both actions (<u>i.e.</u>, retaliation; intent to damage the good name and reputation of Lin in the scientific community; breach of contract/settlement agreements); and demands the same relief in both actions (<u>i.e.</u>, attorneys' fees for defending the State action; compensatory damages; punitive damages).  Indeed, a comparison of Lin's State Court pleading and Lin's Federal Court pleading reveals numerous word-for-word identical passages in the two pleadings.  While Lin's State Court and Federal Court pleadings are not completely identical, "exact parallelism is not required; it is enough if the two proceedings are substantially similar."  <u>See</u>, <u>e.g.</u>, <u>Romine v. CompuServe Corp.</u>, 160 F.3d 337, 340 (6th Cir. 1998) (citations and quotation marks omitted) (affirming a <u>Colorado River</u> stay of a federal action even though the parties and claims to the federal and state actions were not identical when the same underlying events and actions were at issue and when there were word-for-word identical passages in the state and federal pleadings); <u>Villa Marina Yacht Sales, Inc. v. Hatteras Yachts</u>, 947 F.2d 529, 533 (1st Cir. 1991) ("perfect identity of issues is not a prerequisite for dismissal"), <u>cert. denied</u>, 503 U.S. 986 (1992).  Thus, in the instant case where the State Court

and Federal actions are substantially similar, the parallelism predicate to a Colorado River

dismissal is satisfied.

Second, Lin's State Court pleading precedes her Federal Court Amended

Complaint by more than two years, and there has been substantial progress in the litigation of the

State action when compared to the Federal action. In the State action, there has been written

discovery, depositions, nine days of hearing before the Court, post-hearing briefs, the issuance of

an Injunction Order and an Opinion, and a fully-briefed and argued appeal. In stark contrast,

there has been no litigation activity in the Federal action.

In Moses H. Cone, the Supreme Court highlighted the comparative progress of the

state and federal actions as an important factor in the assessment of a Colorado River dismissal

or stay, and since Moses H. Cone, federal courts have relied on the comparative progress factor

in granting a dismissal or stay. See, e.g., Sto Corp. v. Lancaster Homes, Inc., 2001 WL 431504

at **5 (4th Cir. 2001); Villa Marina, 947 F.2d at 535. In Sto, the Court held that the "most

persuasive factor" favoring a stay of a federal action was the substantial progress of the State

action that had been filed three years before the Federal action and that involved three years of

litigation activity when compared to the federal action that had no litigation activity. In Villa

Marina, the party that lost in the state court[11] at a preliminary injunction stage that had been

preceded by discovery and multiple days of hearing then filed a parallel federal action. The fact

that the state action was marked by depositions, multiple days of a preliminary injunction

hearing, and a decision on the preliminary injunction motion left the state action as more

---

[11] In Villa Marina, the first action was in the Puerto Rico Superior Court, which is
functionally the same as a state court for purposes of a Colorado River analysis and which will be
referred herein as the state action.

advanced than the federal action, which was a strong basis for a <u>Colorado River</u> dismissal. Given the similar state and federal comparative progress facts of the instant case, a <u>Colorado River</u> dismissal of this Federal action is equally warranted.

Third, Lin's Federal action is reactive and vexatious -- that is, Lin filed it in reaction to her lack of success in the State Court case. Despite nine days of hearing, a post-hearing brief and even a motion for reconsideration, Lin was unable to convince the State Court that she had committed no trade secret violations, that Rohm and Haas had violated the settlement agreements, or that Rohm and Haas was retaliating against her through a bad-faith lawsuit. In issuing its Injunction Order against Lin, the State Court did not make a single finding in her favor. Lin has also failed to-date in her appeal before the Pennsylvania Superior Court, which has twice rejected her argument that Rohm and Haas does not have legitimate trade secret interests to be protected by a sealed record and which has twice denied Lin's appellate applications to unseal the record.[12]

In <u>Moses H. Cone</u>, the Supreme Court stated that there is "considerable merit" in favoring a <u>Colorado River</u> dismissal based in part on the reactive and/or vexatious nature of the federal lawsuit, and in <u>Villa Marina</u>, <u>supra</u>, the Court applied that reasoning in support of a <u>Colorado River</u> dismissal. In <u>Villa Marina</u>, the federal lawsuit was held to be reactive as it followed the lack of success in the state court preliminary injunction proceeding. Similarly,

---

[12]Lin's vexatiousness is well-reflected within the State Court litigation itself where Lin has argued the same legal issues again and again and again. For example, Lin filed a counter application to unseal the record before the Superior Court and lost; then filed an application for reconsideration of the Superior Court decision to seal the record and lost; and now, has just filed a petition to unseal the record before the Court of Common Pleas. Lin keeps moving from Court to Court. Faced with a complete failure in the State Court proceedings, Lin has now filed her Federal Court Amended Complaint.

Lin's Federal Court Lawsuit follows her lack of success in the State Court case and is reactive to that lack of success. This Court should not allow such a reactive multiplication of proceedings. In <u>Fuller Co. v. Ramon I. Gil, Inc.</u>, 782 F.2d 306 (1st Cir. 1986), the Court articulated a rationale for a <u>Colorado River</u> dismissal that applies to the instant case:

> [I]t would be unthinkable that every time a state (here, commonwealth) court defendant became dissatisfied with that court's provisional resolution of some issue . . . it could rush over to the federal courthouse in the hope of obtaining a more favorable determination.

<u>Id</u>. at 309-310.

Fourth, intellectual property is at issue in both the State Court and Federal actions, and the State Court assumed jurisdiction over the intellectual property dispute two years before the Federal action commenced. Moreover, the State Court has adjudicated the intellectual property rights in favor of Rohm and Haas, and the Pennsylvania Superior Court has recognized the existence of those intellectual property rights through its Orders sealing the record. Under <u>Colorado River</u>, it is inappropriate for the Federal Court now to become involved in the those property disputes as Lin seeks to do through, among other things, Federal Court litigation of trade secrets and the propriety of Rohm and Haas' trade secrets lawsuit in State Court.

The other factors in the <u>Colorado River</u> analytical framework either do not apply to this case or do not clearly weigh in favor of or against a dismissal. For example, the avoidance of piecemeal litigation does not apply, because there is no underlying federal legislation directed at the avoidance of piecemeal litigation in this case.[13] In addition, the federal forum

---

[13] In <u>Spring City Corp. v. American Buildings Co.</u>, 193 F.3d 165 (3d Cir. 1999), the Court held that since the "avoidance of piecemeal litigation" factor was tied in <u>Colorado River</u> to
(continued...)

inconvenience factor does not apply to this case.  Yet, the non-application of certain factors does not change the conclusion as to the propriety of a Colorado River dismissal or stay in this case, as a Colorado River dismissal or stay "does not require the presence of all of the factors."  Sto Corp., supra, 2001 WL 431504 at **3.  Moreover, as the Supreme Court stressed in Moses H. Cone, the factors of the Colorado River analysis are not a mechanical checklist, and the weight to be given to each factor varies greatly from case to case.  460 U.S. at 16.

        In sum, a dismissal of the Federal action is warranted under a Colorado River analysis.  In particular, the substantial parallelism between the State action and this Federal action, the substantial litigation progress of the State action when contrasted with the absence of activity in the Federal action, and the reactive nature of the Federal Court lawsuit all compel a dismissal.  Rohm and Haas was forced to invest substantial resources in the State action to remedy Lin's conduct and should not now have to face a multiplication of proceedings because she does not like the results of the State proceedings.  Under the principles of "wise judicial administration", "conservation of judicial resources" and "comprehensive disposition of litigation" which expressly underlie the origin of the Colorado River doctrine, the Court should dismiss this case.

---

[13](...continued)
a federal legislative policy favoring unified adjudication of water rights, generally that factor of "avoidance of piecemeal litigation" must be tied to a stated federal policy in order to be relevant in support of a Colorado River-type dismissal or stay of a federal action.

VI.    <u>CONCLUSION</u>

Whether analyzed under the doctrine of collateral estoppel or under the Colorado River doctrine, the conclusion is the same -- Lin cannot relitigate issues in this Federal action that she has already litigated and lost in the State action after having had a full and fair opportunity to be heard.  The policies underlying both doctrines of avoiding vexatious, multiple litigation; of conserving judicial resources; and of encouraging reliance on prior State Court adjudications directly support this motion to dismiss.  The Court should grant this motion as well as Rohm and Haas' prior partial motion to dismiss, and dismiss Lin's Amended Complaint in its entirety. Should the Court decide to deny this motion, Rohm and Haas moves in the alternative for a stay of this Federal action in favor of the State action.

Respectfully submitted,


*/s/ Andrew J. Rolfes*
RAYMOND A. KRESGE
ANDREW J. ROLFES
Klett Rooney Lieber & Schorling
Two Logan Square, 12th Floor
18th & Arch Streets
Philadelphia, PA 19103-2756
(215) 567-7500
          and
CELIA JOSEPH
Rohm and Haas Company
100 Independence Mall West
Philadelphia, PA 19106-2399
(215) 592-3661

Attorneys for Defendant

KRLSPHI:185474.2                                          39

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 21st day of January 2003, I caused to be served a true

and correct copy of Defendant's Motion to Dismiss and supporting Memorandum Of Law by

first-class mail postage prepaid upon plaintiff's counsel:


                Hugh J. Hutchinson, Esquire
                Leonard, Tillery & Sciolla, LLP
                1515 Market Street
                Suite 1800
                Philadelphia, PA 19102


                                */s/ Andrew J. Rolfes*
                                ANDREW J. ROLFES