UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. MANHUA MANDY LIN,      :
                             :
            Plaintiff,   :
                             :
       v.              :      CIVIL ACTION NO. 02-CV-3612
                             :
ROHM AND HAAS COMPANY,   :
                             :
           Defendant.  :

DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL

## I.    INTRODUCTION

In a June 5, 2003 teleconference, the Court directed that discovery disputes that were generally addressed by defendant's letter to the Court dated June 5, 2003 (copy attached as Exhibit A) be presented by formal motion. Defendant, therefore, submits this memorandum in support of its motion to compel responses to its document requests, a document production and answers to certain interrogatories.

Despite filing a detailed, nine-count/138-paragraph Amended Complaint, plaintiff has improperly avoided her discovery obligations through a lack of any answers to any specific document request; through a non-production of documents; through a refusal to allow access to her medical/psychiatric records via authorizations or a production; through discovery deception as it pertains to medical/psychiatric records; and through incomplete and/or evasive answers to defendant's interrogatories. Plaintiff cannot have it both ways - - that is, she cannot present detailed Amended Complaint allegations and then refuse to answer defendant's legitimate

KRLSPHI:196304.1

discovery that is related to those allegations. Moreover, as shown herein, plaintiff has not been truthful with regard to discovery related to emotional distress, and plaintiff's counsel has compounded the misrepresentations in his unequivocal statements about plaintiff's healthcare providers - - discovery misconduct that warrants the sanction of dismissal of plaintiff's emotional distress claims. For any and all of the reasons presented herein, the Court should grant this motion to compel.

## II.    PLAINTIFF'S NON-RESPONSIVENESS TO DISCOVERY

### A.    Medical/Psychiatric Records

In her Amended Complaint, plaintiff presents a claim for intentional infliction of emotional distress in which she alleges that she has suffered "severe emotional distress" requiring "professional care and counseling" (¶ 133), and in Counts I-VII (i.e., retaliation, defamation and invasion of privacy claims), she presents compensatory damages claims for emotional distress. Accordingly, in the April 11, 2003 letter to plaintiff's counsel that accompanied defendant's written discovery, defendant enclosed authorizations for release of medical/psychiatric records and requested that the authorizations be signed and returned to defendant's counsel by April 21 (letter and authorizations attached as Exhibit B). Plaintiff never responded to that request. Therefore, on or about May 8, 2003, defendant's counsel called plaintiff's counsel, and in that conversation, plaintiff's counsel said that authorizations would not be provided; that he had personally obtained a copy of the medical/psychiatric records from one healthcare provider whom he identified as Dr. Celia Woods; and that those full records would be produced. In that same conversation, plaintiff's counsel unequivocally stated that Dr. Woods has been plaintiff's only healthcare provider for plaintiff's emotional distress in her lifetime. When

Dr. Woods' records were then not produced, defendant specifically referenced that non-

production in a May 20 letter to plaintiff's counsel (attached as Exhibit C).

In its interrogatory nos. 13, 14 and 15, defendant seeks discovery regarding

plaintiff's emotional distress. Those interrogatories and plaintiff's verified answers[1] are as

follows:

> 13.    Identify all medical doctors, psychiatrists, psychologists,
> therapists, social workers, counselors, nurse practitioners, and all
> other health and mental healthcare professionals whom you have
> visited, consulted, or sought treatment for any psychological,
> emotional or mental condition from at any time during the period
> January 1, 1996 to the present.  For each person identified, please:
> state his/her address; state the date and reason of each visit,
> consultation, or treatment; state the diagnosis given at each visit,
> consultation or treatment with each individual; and identify all
> documents which mention, discuss, describe, relate to, support,
> refer to, or embody any conversation, consultation or treatment
> with said individuals, including but not limited to, communications
> or reports of any kind.
>
> Response:  Dr. Celia Woods.  Medical records to be supplied.
>
> 14.    Identify all medical doctors, psychiatrists, psychologists,
> therapists, social workers, counselors, nurse practitioners, and all
> other health and mental healthcare professionals whom you have
> visited, consulted or sought treatment from at any time in
> connection with your "emotional pain", "distress", "suffering",
> "mental anguish," "embarrassment", "humiliation", "loss of
> enjoyment of life" and/or "damage to reputation" as alleged in the
> Amended Complaint.  For each person identified, please:  state
> his/her address; state the date and reason of each visit,
> consultation, or treatment; state the diagnosis given, if any, at each
> visit, consultation or treatment with each individual; identify each
> and every medication prescribed for and taken by plaintiff and
> identify the healthcare professional who prescribed it and/or
> recommended it; state the time period(s) during which any such

---

[1]A copy of defendant's interrogatories is attached as Exhibit D, and a copy of plaintiff's
answers is attached as Exhibit E.

medication was taken by plaintiff at any point in her life; and identify all documents which mention, discuss, describe, relate to, support, refer to, or embody any conversation, consultation or treatment with said individual, including but not limited to, communications or reports of any kind.

Response: Dr. Celia Woods.

15.    Identify all medical doctors, psychiatrists, psychologists, therapists, social workers, counselors, nurse practitioners, and all other health and mental healthcare professionals whom you have visited and/or consulted for the "medical care and treatment" as referenced in paragraph 76 of the Amended Complaint and/or for the "professional care and counseling" as referenced in paragraph 133 of the Amended Complaint. For each person identified, please: state his/her address; state the date and reason of each visit, consultation or treatment; state the diagnosis given at each visit, consultation or treatment with each individual; identify each and every medication said healthcare professional prescribed for plaintiff and the time period(s) in which plaintiff took the medication; and identify all documents which mention, discuss, describe, relate to, support, refer to, or embody any conversation, consultation or treatment with said individuals, including but not limited to, communications or reports of any kind.

Response: Dr. Celia Woods.

While plaintiff answered interrogatory no. 13 with "medical records to be supplied," no records have been supplied.

Similarly, in its document requests (copy attached as Exhibit F), defendant requests documents "received by plaintiff for any psychological, emotional or mental condition since January 1, 1996" (request no. 119); documents relating to "the 'medical care and treatment' as referenced in paragraph 76 of the Amended Complaint and/or the 'professional care and counseling' as referenced in paragraph 133 of the Amended Complaint" (request no. 120); and documents from any psychiatrists, psychologists et al. relating in any way to "plaintiff's alleged

emotional pain, distress, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life and/or damage to reputation as alleged in the Amended Complaint" (request no. 121). Plaintiff has produced none of these requested documents.

On June 2, 2003, defendant's counsel called plaintiff's counsel to address (in part) plaintiff's non-responsiveness to the discovery requests for medical/psychiatric records and after message exchanges, spoke with plaintiff's counsel on June 4. In that June 4 conversation between counsel, plaintiff's counsel gave the cursory statement that documents would be produced without ever offering any explanation for the delay -- a delay without legitimate explanation given the May 8 representation that he already had the records.

Significantly, plaintiff's non-production of medical/psychiatric records is compounded by misrepresentations and deception. In the above-referenced early May 2000 conversation, in response to a question from defendant's counsel, plaintiff's counsel stated that plaintiff has seen only one medical/health provider for emotional distress in her lifetime, and he identified Dr. Celia Woods. That representation of plaintiff's counsel was then mirrored in plaintiff's above-quoted verified answers to interrogatory nos. 13, 14 and 15 in which plaintiff answered only: "Dr. Celia Woods." Yet, in a recent review of documents for defendant's discovery production to plaintiff, defendant learned that plaintiff and her counsel have not been complete in their answers and representations on this subject. On June 19, 2000, in support of her EEOC charge of retaliation that underlies the core allegations of this lawsuit, plaintiff completed in her handwriting an EEOC form entitled "Remedy Information" (copy attached as Exhibit G). Plaintiff signed that form on June 19, 2000 directly under the statement that "I declare under penalty of perjury that I have read the above statements and they are true and

correct." In paragraph 6 of the EEOC form, the question is: "<u>Other than monetary losses</u>, what losses have you incurred as a result of the alleged discrimination (<u>e.g.</u>, loss of seniority . . . had to seek psychiatric services)?" (emphasis in original). In her response, plaintiff stated:

> I have, since March 2000, suffered extreme mental and emotional stress, in addition to the pain and suffering I sustained since 1997 when the retaliation started. <u>I have been seeing Dr. P. Fiesca of Abington Memorial Health Center for my pain and suffering.</u>

(emphasis added).

Plaintiff has never amended her discovery answers to add Dr. Fiesca, has never amended her initial disclosures to add Dr. Fiesca, and has never signed an authorization for release of Dr. Fiesca's records. Plaintiff has therefore thwarted defendant's efforts to engage in discovery about plaintiff's emotional distress claims. Plaintiff's counsel also has never changed his unequivocal statement that Dr. Celia Woods has been the only healthcare provider for plaintiff's emotional distress in plaintiff's lifetime. Given plaintiff's discovery misconduct in this area of emotional distress in which plaintiff has not accurately or honestly answered the discovery; in which plaintiff's counsel has not disclosed the healthcare providers for plaintiff's alleged emotional distress; in which plaintiff has stubbornly refused to sign authorizations for medical/psychiatric records and never responded to the April 11 request for authorizations; and in which medical/psychiatric records held by plaintiff's counsel since early May 2003 have not been produced, the appropriate sanction is the dismissal of plaintiff's Count VIII claim for intentional infliction of emotional distress and of plaintiff's compensatory damages claims for emotional distress presented in Counts I-VII of the Amended Complaint.

**B.    Document Requests**

On April 11, 2003, defendant served by hand its first set of document requests (i.e., Exhibit F).  Given the burdensome 138-paragraph Amended Complaint and the numerous allegations and theories raised by plaintiff, defendant submitted a detailed set of requests seeking documents relating to plaintiff's factual allegations of retaliation, defamation, invasion of privacy, infliction of emotional distress and breach of contract, as well as to her allegations on damages.

On or about May 8, 2003, plaintiff's counsel called defendant's counsel to discuss defendant's document requests and to present his view that they were in general too burdensome. Defendant's counsel responded that the requests were not burdensome and were detailed only because of the detail of the lengthy Amended Complaint.  Defendant's counsel also responded with a proposal for plaintiff to answer the requests in blocks -- that is, if there were no documents responsive to a group of requests, then plaintiff could provide a one-sentence answer that no documents exist for the entire group of requests.  Defendant's counsel also asked if plaintiff's counsel had any proposals to address his concerns with the document requests, to which plaintiff's counsel said "no."

On May 13, 2003, plaintiff served only General Objections (attached as Exhibit H) in response to defendant's document requests.[2]  In addition to standard general objections such as attorney-client/work product privileges, plaintiff also inserted non-standard, inappropriate general objections, such as objections covering mental impressions/conclusions/

---

[2]While plaintiff's counsel erroneously wrote 4/12/03 as the date for the General Objections, the typed certificate of service shows that the General Objections were served on May 13.

opinions of plaintiff's *non*-attorney representatives and objections based on "relevance."[3]  In

these General Objections, plaintiff states that documents will be supplied to the requests "subject

to the foregoing objections."  Plaintiff never identified which specific requests she viewed to be

objectionable and which documents would be withheld or not produced.  Thus, on May 13,

plaintiff served no answers to the document requests, and she has served no answers to-date.  On

May 13, plaintiff produced no documents responsive to defendant's requests and has produced

no documents to-date.

On May 20, 2003, defendant's counsel faxed a letter (i.e., Exhibit C) to plaintiff's

counsel that addressed in part plaintiff's complete non-responsiveness to defendant's document

requests.  In that letter, defendant's counsel stated that he remained "open to discussion";

proposed May 23 as a date for the responses/documents; and asked plaintiff's counsel to call to

discuss the issues.  Plaintiff's counsel never responded in writing to the May 20 letter and never

even called defendant's counsel.  On June 2, defendant's counsel called plaintiff's counsel to

address, in part, plaintiff's non-responsiveness to defendant's document requests and after

message exchanges, spoke with plaintiff's counsel on June 4.  In that conversation, plaintiff just

cursorily offered that "documents" would be produced.  Again, to-date, plaintiff has not

answered a single document request and has not produced a single document.

### C.    Interrogatories

On April 11, 2003, defendant served its first set of interrogatories (i.e., Exhibit D),

and on May 13, 2003, plaintiff served her responses (i.e., Exhibit E).  With respect to

---

[3]While a specific relevance objection to a specific document request may be legitimate, a general objection based on "relevance" is not legitimate.

interrogatory nos. 7, 8, 12, 13, 16, 17, 18, 19, 20, 21, 23, plaintiff was non-responsive in whole or in part. Therefore, on May 20, 2003, defendant faxed the above-referenced letter that also addressed with specificity these deficiencies in plaintiff's interrogatory answers; that requested complete answers by May 23; and that asked plaintiff's counsel to call to discuss the issues.

When plaintiff did not provide the answers and plaintiff's counsel did not call to discuss the issues, defendant's counsel called plaintiff's counsel on June 2 and ultimately talked with plaintiff's counsel on June 4. When defendant's counsel tried to address plaintiff's deficiencies in her interrogatory answers, plaintiff's counsel tried to avoid any discussion of the issues, stating that documents would be provided and that he wanted to move on to his issues. When defendant's counsel stressed that a good-faith discussion of each of the interrogatory disputes was required under Local Rules so as to assess and hopefully minimize the scope of disputes that would be brought to the Court, plaintiff's counsel repeated his statement that documents would be provided and then stated that he would not be "cross-examined." In this conversation, defendant's counsel then asked about interrogatory no. 17 in which in light of plaintiff's repeated Amended Complaint claims (¶ ¶ 70K, 120, 130) that her reputation was disparaged before "potential employers," defendant asked for the identity of those potential employers. Since plaintiff's interrogatory answer of "all academic and commercial employers of persons in Plaintiff's field" is unacceptable, defendant's counsel asked plaintiff's counsel in the June 4 conversation if plaintiff would answer interrogatory no. 17; plaintiff's counsel responded with the same above-quoted non-response of "all employers in the field" and repeated his statement that he would not be "cross-examined." When defendant's counsel tried to address the other interrogatory disputes presented in the May 20 letter, plaintiff's counsel again said that he

would not be "cross-examined" and then stated that information would be provided "whenever it would become available." To-date, plaintiff has not provided the information requested in the above interrogatories.

The interrogatories in dispute as specifically identified in the May 20 letter to plaintiff's counsel are:

No. 7 -- In interrogatory no. 7, defendant requests information relating to plaintiff's economic compensatory damages, and in her response, plaintiff stated that she is "in possession of documents concerning legal costs incurred in defending the Injunction Action." Even though defendant disputes for many reasons plaintiff's ability to recover those costs in this case, defendant requested the information in discovery since plaintiff is claiming the legal costs as damages. Plaintiff has not provided the documents referenced in her interrogatory no. 7 answer.

No. 8 -- In interrogatory no. 8, defendant seeks information on the calculation of plaintiff's damages, to which plaintiff answered that "loss of income and earning capacity will be supplied." No such information has been supplied. Even though defendant disputes plaintiff's ability to present any claim for loss of income/earning capacity because plaintiff resigned from defendant in November 1999 under a separation agreement, defendant is entitled to the information for discovery.

No. 12 -- In interrogatory no. 12, defendant asks if plaintiff has any calendar, journal, diary, log or notes on day-to-day activities for January 1999-present, to which plaintiff responded by referencing a "personal journal periodically maintained" by her. Plaintiff has not produced that journal despite the interrogatory request and a separate document request.

No. 13 -- In interrogatory no. 13, defendant seeks information on plaintiff's medical/psychiatric treatment, diagnoses and consultations, to which plaintiff responded that "medical records [are] to be supplied." While defendant accepts the provision of medical records in lieu of an answer, no medical records have been provided.

No. 16 -- In interrogatory no. 16, defendant seeks information on plaintiff's applications for employment since she resigned from defendant on November 30, 1999 and her employment search history during that time. Interrogatory no. 16 reads as follows:

> 16.    For the period of November 30, 1999 to present, please: describe in detail all applications for employment that you have made, including the prospective employer to whom you applied, the job for which you applied, and the date of your application; all offers of employment that you have received, including but not limited to, the details of any such offers, including date of offer, job title, salary, and benefits; your response to each such offer; and the reason(s), if any, that you rejected any such offer; identify each and every employer for whom you have worked, and identify each and every job position you held for each and every employer, and state the exact dates/time period you have held each of your jobs; and state your hourly and annualized pay in each of the jobs you have held and identify and describe the employment benefits in each of the jobs you have held.

Plaintiff responded to interrogatory no. 16 with: "See response to Request of Documents." Notwithstanding that plaintiff never answered the document requests or produced any documents, the answer is unacceptable. Defendant asked for the information in interrogatory form to obtain an answer from plaintiff about her post-Rohm and Haas employment search and employment history. Even though defendant disputes the legitimacy of any claim for economic loss by plaintiff given her 1999 resignation under a separation agreement, it is entitled to the requested information for discovery.

No. 17 -- In interrogatory no. 17, defendant asks for the identification of and information regarding the "potential employers" referenced in paragraphs 70K, 120 and 130 of the Amended Complaint, since plaintiff alleges therein that defendant has disparaged her reputation with potential employers. Interrogatory no. 17 reads as follows:

> 17.    Identify each and every of the "potential future employers" referenced in paragraphs 70K, 120 and 130 of the Amended Complaint. For each identified potential future employer, please state if you sought employment in any way with that potential employer, and if so, how (e.g., letter, phone, etc.) and when, and identify the documents submitted by you in support of your interest in employment with that potential employer (e.g., application, resume, etc.); the dates on which you sought employment with the potential employer; the response of the potential employer to your interest in employment and the means by which that response was communicated (e.g., phone, letter, e-mail, etc.); an identification of each written communication from that potential employer; and if an offer of employment was given to you by the potential employer, state the date of the offer and your response.

Plaintiff answered interrogatory no. 17 by stating that "all academic and commercial employers of persons in plaintiff's field are potential future employers." In the above-referenced May 20 letter, defendant asked plaintiff to identify the specific potential employers apparently referenced in the Amended Complaint and provide related information, or if there are no potential employers that can be identified, then to so state in a supplemental answer. Plaintiff has not provided the requested information.

No. 18 -- In interrogatory no. 18, defendant asks for an identification by Bate-stamp numbers of the documents produced in response to defendant's request nos. 17-33, which requests are seeking the patent applications referenced in paragraphs 70A-70H (and other paragraphs) of the Amended Complaint. Interrogatory no. 18 reads as follows:

18.    Identify by Bate-stamp numbers the exact document(s) produced by plaintiff in response to each of defendant's document request nos. 17-33. Provide this information separately for each of the document requests. To illustrate, provide the Bate-stamp numbers of the exact document(s) produced by plaintiff in responses to defendant's document request no. 17, then provide the Bate-stamp numbers of the exact document(s) produced by plaintiff in response to defendant's document request no. 18, etc.

Plaintiff's answer -- "See response to Request for Production of Documents" -- is non-responsive. Again, notwithstanding the absence of responses to defendant's document requests and the absence of a document production, defendant asked for information in an interrogatory form and is entitled to that information so that it clearly understands how the different patent applications align with the different Amended Complaint allegations.

No. 19 -- In interrogatory no. 19, defendant asks for identification of and information related to patent applications referenced in Counts VI and VII of the Amended Complaint in which plaintiff is alleging that patent applications included additional co-inventors and did not place plaintiff first on the inventor list, all in some apparent scheme to denigrate her reputation. Interrogatory no. 19 reads as follows:

19.    Identify each and every patent application referenced in paragraph 70 of the Amended Complaint, in Count VI of the Amended Complaint (i.e., ¶¶ 114-123) and in Count VII of the Amended Complaint (i.e., ¶¶ 124-131). For each patent application identified in response to this interrogatory, include in that identification the patent office to which the patent application was submitted, the date of the patent application, the title and subject of the patent application, and any identifying patent application number(s) associated with the patent application. If a responsive patent application refers only to paragraph 70 or to Count VI or to Count VII, please so state.

Plaintiff's "answer" of listing patent applications for which defendant allegedly "refused to disclose supporting data" is not responsive to the interrogatory to the extent that the interrogatory relates to Counts VI and VII of the Amended Complaint. Defendant identified this deficiency in the May 20 letter, and plaintiff has chosen not to provide the requested information, or to state that plaintiff has nothing to identify.

No. 20 -- In interrogatory no. 20, defendant asks for information regarding plaintiff's Amended Complaint allegations concerning plaintiff's proposed scientific publications and presentations that defendant allegedly failed and refused to approve. Interrogatory no. 20 reads as follows:

> 20. Identify each and every of your proposed scientific publications and presentations that Rohm and Haas Company has failed and refused to approve as alleged in paragraphs 70I, 102, and 110 of the Amended Complaint. For each proposed scientific publication and presentation so identified in response to this interrogatory, include in the identification the title and date of the scientific publication or presentation; the journal or other source that was to have published the paper if Rohm and Haas Company had approved it, or the seminar or meeting at which you would have given the presentation if Rohm and Haas Company had approved it; the person(s) at Rohm and Haas Company to whom you submitted the scientific publication or presentation; the person(s) at Rohm and Haas Company who failed and refused to approve the scientific publication or presentation; and identify each document in which Rohm and Haas Company failed and refused to approve the scientific publication or presentation.

While plaintiff listed the proposed publications/presentations at issue, she did not provide the requested information as to the persons who failed/refused to approve the proposed publications/presentations and the related documents. In addition, in her answer, plaintiff extended her Amended Complaint allegations by stating that defendant "failed and refused to

approve, timely approve or have withdrawn approval" for the listed presentations. Therefore, in

the above-referenced May 20 letter, defendant requested the information as to the alleged action

taken by defendant regarding each of the listed presentations -- whether defendant refused to

approve, or did not timely approve, or withdrew approval. Plaintiff has not provided any of the

requested information.

No. 21 -- In Interrogatory no. 21, defendant asks for information regarding

plaintiff's Amended Complaint allegations of refusal to provide data and/or timely trade secret

reviews for plaintiff's presentations. Interrogatory no. 21 reads as follows:

> 21.    Identify each and every of your scientific papers and
> publications for which Rohm and Haas Company has refused to
> provide required data and/or for which Rohm and Haas Company
> has refused to provide a timely trade secret review as alleged in
> paragraph 70 and in Counts IV and V of the Amended Complaint.
> For each scientific paper and publication so identified in response
> to this interrogatory, include in the identification the title and date
> of the scientific paper or publication; the person(s) at Rohm and
> Haas Company who refused to provide the required data and the
> date of that refusal and identify each document referring or relating
> to the refusal to provide the required data; and the person(s) at
> Rohm and Haas Company who refused to provide a timely trade
> secret review and the exact dates over which it took to do the trade
> secret review at issue, and identify each document supporting the
> allegation of a refusal to provide a timely trade secret review.

While plaintiff listed the presentations at issue, she has not provided the requested

information as to the person(s) who refused to provide data or the timely trade secret review or

the related documents.

No. 23 -- Based on information that plaintiff is now receiving grant

monies (which conflicts with her claims of damage to reputation and which also relates to her

economic loss claims), defendant asked for information on grant monies limited to the time period since plaintiff left Rohm and Haas. Interrogatory no. 23 reads as follows:

> 23.    Have you applied for and/or received any grant monies from any public or private source since November 30, 1999? If so, please: identify each application for grant monies, the date of the application, the projected use of the grant monies, and the acceptance or rejection of that application; identify each award of grant monies, the amount of the award, the date of the award, the exact source of the award (e.g., the particular government agency or the particular private sector source, etc.), the general use of the grant monies, and the precise allocation of each award of grant monies (e.g., amount used for costs and expenses, amount used to compensate plaintiff, etc.); and identify each document referring or relating to the award of any grant monies.

Plaintiff answered that she has not applied for or received grant monies.

Defendant has since learned that plaintiff, through her corporation EverNu Technology LLC, has applied for and received grants. In the above-referenced May 20 letter, defendant asked for an answer to interrogatory no. 23 as it relates to EverNu Technology LLC. Also, on May 20, defendant issued a second set of document requests related to EverNu Technology LLC and grants through any other company with which plaintiff has an interest (copy attached as Exhibit I). Plaintiff has not provided the requested information. In the June 4 conversation between counsel, plaintiff's counsel firmly stated that while perhaps some compensation information might be provided (which has not yet been produced), plaintiff would not provide any of the requested grants or documents relating to EverNu Technology LLC.[4]  In explaining

---

[4]While plaintiff's response to defendant's second request for document is not yet due, defendant incorporates its second request for documents into this motion given plaintiff's counsel's firm statement in the June 4 conversation that documents would not be provided in response to defendant's second request. Defendant also raises the subject here, because a response to a fair reading of interrogatory no. 23 should have included the information about
(continued...)

plaintiff's position, plaintiff's counsel presented the ultimate irony of all -- which is that plaintiff had to protect her trade secrets and confidential, proprietary information.

## III.    ARGUMENT

Despite filing a lengthy 138-paragraph/nine-Count Amended Complaint with numerous factual allegations and legal theories, plaintiff has chosen to avoid her discovery obligations related to her Amended Complaint. Defendant's written discovery is tied directly to plaintiff's Amended Complaint allegations. Defendant seeks discovery of plaintiff's claims of "emotional distress." Defendant seeks the documents pertaining to specific Amended Complaint factual allegations related to the retaliation, defamation, invasion of privacy, infliction of emotional distress and breach of contract claims. Defendant seeks discovery of identifying information as to the "potential employers" or as to the "patent applications" or as to the "scientific presentations," all of which are referenced in only general terms in the Amended Complaint. If there is no responsive information, then plaintiff should so state, rather than provide evasive or incomplete answers. For example, if (as defendant suspects) there are no particular "potential employers" relating to plaintiff's repeated Amended Complaint allegations that plaintiff's reputation has been disparaged, then plaintiff should so state in her interrogatory answer. After all, the whole point of discovery is to obtain information and documents related to the allegations and claims presented. Simply put, defendant's discovery at issue before the Court in this motion is legitimate discovery, and plaintiff should be compelled to provide full and complete answers.

---

[4](...continued)
EverNu Technology LLC; in other words, plaintiff should not be distinguishing between herself and her company in her discovery answers about grant monies.

With respect to the non-production of plaintiff's medical/psychiatric records that were sought through authorizations, interrogatories and document requests on April 11, the judicial response should be more serious than an order compelling production. Given plaintiff's discovery deception in repeatedly not identifying in her verified interrogatory answers all of her healthcare providers for her alleged emotional distress and plaintiff's counsel's unequivocal misstatements that (other than Dr. Woods) there were no other healthcare providers for plaintiff's emotional distress in plaintiff's lifetime, the appropriate judicial response is the dismissal of plaintiff's compensatory damages claims for emotional distress and plaintiff's Count VIII claim for intentional infliction of emotional distress. While plaintiff repeatedly claims emotional distress throughout her Amended Complaint, she is intentionally thwarting defendant's efforts to discover the facts about her alleged emotional distress. Plaintiff's attempt to hide her treating physicians from discovery is sanctionable. Any judicial response more lenient than dismissal of the emotional distress claims will only tolerate and thereby encourage this discovery misconduct.

Moreover, plaintiff's non-responsiveness to the discovery requests for medical/psychiatric records is inexcusable. Because plaintiff's counsel represented during the week of May 5 that he had the complete medical/psychiatric records and still has not produced those records, the Court should dismiss plaintiff's emotional distress claims. Plaintiff cannot repeatedly complain about emotional distress in her Amended Complaint and then shield from discovery her medical/psychiatric records. Nor can plaintiff hold those records until the very end of the discovery period, because with the review of medical/psychiatric records, there is a review of a number of response options, such as -- should defendant retain a psychiatric expert? should defendant request a psychiatric independent medical examination? should defendant depose

plaintiff's treating psychiatrist(s) or psychologist(s)? etc. Without the records, defendant cannot evaluate its options, i.e., defendant is unduly prejudiced. Plaintiff cannot present emotional distress claims and then avoid her discovery obligations. A dismissal of her intentional infliction of emotional distress and compensatory emotional distress damages claims is therefore appropriate.[5]

With respect to defendant's document requests, plaintiff's complete non-responsiveness in the absence of any specific answers or objections to a single request and the absence of any production triggers application of Local Rule 26.1(g) under which the Court may summarily grant "such motion without waiting for a response." Plaintiff's general objections to all of defendant's document requests do not provide plaintiff with any basis on which to oppose the requests. As this Court held in mandating full and complete responses to document requests in Coregis Insurance Co. v. Baratta & Fenerty, Ltd., 187 F.R.D. 528 (E.D. Pa. 1999), blanket general objections cannot be used to block discovery. The Court should similarly mandate full and complete responses to defendant's document requests.

With respect to the interrogatories at issue, the bases for requiring complete answers are presented above. Plaintiff cannot respond to interrogatories by referring to documents to be produced or analyses to be supplied and then not provide the documents or information. Plaintiff also cannot just provide evasive answers to interrogatories or partial answers to interrogatories or answers that are in some regards different from the questions.

---

[5]Defendant acknowledges that the remedy of striking of emotional distress claims is not provided under the sanctions structure set forth in F.R.Civ.P. 37, but respectfully submits that the relief of striking plaintiff's emotional distress claims is warranted by all of plaintiff's discovery misconduct.

Again, defendant's interrogatories present legitimate inquiries into plaintiff's factual allegations and claims, and they should be answered.

The Local Rule 26.1(f) requirement for filing this motion has been satisfied, and undersigned counsel so certifies. As reflected by the attachments to this brief, the phone conversation with plaintiff's counsel in early May, the May 20 letter, plaintiff's counsel's non-response to the May 20 letter, and the June 4 conversation between counsel, reasonable effort to resolve the discovery disputes has been exhausted, and unfortunately, judicial intervention is required.

Finally, in a related vein, pursuant to F.R.Civ.P. 37(a)(4), defendant should be awarded its attorney fees incurred in preparing this motion to compel. There is no justification for plaintiff's discovery conduct, and a fee award is therefore appropriate.

## IV.    __CONCLUSION__

For any and all of the reasons presented herein, the Court should grant defendant's motion to compel and enter the proposed Order accompanying the motion.

Respectfully submitted,

RAYMOND A. KRESGE
ANDREW J. ROLFES
Klett Rooney Lieber & Schorling
Two Logan Square, 12th Floor
18th & Arch Streets
Philadelphia, PA 19103-2756
(215) 567-7500
      and
CELIA JOSEPH
Rohm and Haas Company
100 Independence Mall West
Philadelphia, PA 19106-2399
(215) 592-3661

Attorneys for Defendant