**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. MANHUA MANDY LIN | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. |
| | : | |
| ROHM AND HAAS COMPANY | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant | : | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO COMPEL**

## I.    INTRODUCTION

Attached hereto and incorporated herein as Exhibit "A" is a true and correct copy of Plaintiff's First Set of Interrogatories to Defendant which was served on Rohm and Haas on April 21, 2003. On the same day, Plaintiff served Plaintiff's First Request for Production of Documents Directed to Defendant Rohm and Haas Company. A true and correct copy of Plaintiff' First Request for Production of Documents is attached hereto and incorporated here in as Exhibit "B."

On May 21, 2003, Defendant served responses to Plaintiff's First Set of Interrogatories. A true and correct copy of Defendant's responses to Plaintiff's First Set of Interrogatories is attached hereto and incorporated herein as Exhibit "C." On the same day, Defendant served Defendant's responses to Plaintiff's First Request for Production of Documents, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "D." The responses to the Request for Production of Documents identified a limited number of documents that would be produced although no documents

were actually produced at the time.  On June 12, 2003, Defendant supplied a limited number of documents composed in the vast majority of copies of pleadings and other Court related documents from the matter pending in the Court of Common Pleas of Montgomery County (the "Injunction Action").

Defendant's responses to Plaintiff's First Set of Interrogatories provide virtually no substantive information.  Rather, Defendant's responses assert that the affirmative defense of collateral estoppel has already been established and that the issues addressed by the interrogatories are therefore irrelevant.

In telephone communications with counsel for Defendant, counsel for Plaintiff has also identified a series of witnesses to be scheduled for depositions.  Counsel for Defendant, however, has affirmatively represented that he will not permit the depositions of any witnesses to the extent that the witnesses would be expected to address issues involving Rohm and Haas' alleged "trade secrets," matters involving patents and patent applications for Dr. Lin's inventions or any other subject matter that purportedly relates to the action pending in the Court of Common Pleas of Montgomery County.  Counsel for Dr. Lin attempted to discuss the limitation unilaterally imposed by Rohm and Haas on discovery responses but counsel for Rohm and Haas advised that he would not discuss any substantive issues.  Counsel for Rohm and Haas stated that "this is an employment discrimination case" and he would not permit it to be turned into a matter involving intellectual property.  If it was, counsel claimed he would probably have to withdraw as counsel.  He remained adamant that prior State Court orders as well as this Court's Order of March 26, 2003 conclusively established certain facts and he would not permit them to be "re-litigated."

By this Motion, Plaintiff seeks an Order pursuant to Fed.R.Civ.P. 37 compelling substantive responses to Plaintiff's interrogatories and Requests for Production of Documents Addressed to Defendants as well as compelling the deposition of Defendant's witnesses without the restrictions unilaterally imposed by Defendant. The Motion seeks an extension of the current discovery deadline to provide a reasonable opportunity to conduct the requested discovery. This Motion further seeks the imposition of sanctions for the Defendant's failure to respond to discovery after Plaintiff's good faith effort to obtain the disclosures or discovery without Court action.

## II.    BACKGROUND

Plaintiff, Dr. Manhua Mandy Lin ("Dr. Lin") was employed as Senior Scientist at Rohm and Haas Company ("Rohm and Haas") working on a process for developing a lower cost method for the catalytic synthesis of acrylic acid from propane. Propane is an inexpensive starting material. A catalyst is a substance that, when exposed to propane, will convert the propane into one or more useful products. It is well known that catalytic activity would occur when propane was exposed to a catalyst composed of four elements – molybdenum, vanadium, tellurium and niobium (Mo-V-Te-Nb). Acrylic acid yield is a function of the manner and method of preparation of the Mo-V-Te-Nb catalyst. Scientists at Rohm and Haas, and throughout the world, routinely created and reported Mo-V-Te-Nb catalysts that resulted in acrylic acid yields of less than 10%. An acrylic acid yield of less than 10% was not commercially feasible.

Catalysts, like any substance, can be analyzed and characterized using a number of analytic methods, such as x-rays defraction ("XRD") and electron-spectroscopy

("ESCA"). These, among others, are common techniques routinely used by chemists to objectively identify and characterize solid state materials.

While employed by Rohm and Haas, Dr. Lin discovered a method for making Mo-V-Te-Nb mixed metal oxide catalyst for propane that resulted in an acrylic acid yield of 42%. The discovery was incorporated into a Patent Application filed in the United States Patent Office on May 12, 1998. The identical Patent Application was subsequently filed with European Patent Office on May 11, 1999. The European Patent Application ("EPA") reported the high yield data as well as a "recipe" detailing the specific manner and method for creating that catalyst. The EPA also disclosed detailed instructions for making a series of fifteen other catalysts that resulted in lesser acrylic acid yields. The full text of the European Patent Application was published by the European Patent Office on the Internet and in other printed media on December 8, 1999. After the publication of the detailed instructions contained in the EPA for creating sixteen separate, but related, chemical compounds, it was expected that any scientist in the field could recreate those compounds and, using standard characterization techniques, obtain objective information about the characteristics, structure and performance of each of the disclosed compounds.

In the end of November 1999, Dr. Lin terminated her employment with Rohm and Haas pursuant to a Settlement Agreement negotiated by the EEOC as part of the resolution of a discrimination claim she had filed against Rohm and Haas. Prior to her departure, however, Dr. Lin received approval to make a presentation to the American Chemical Society meeting ("ACS Meeting") scheduled for March 2000 pertaining to certain research she had conducted while at Rohm and Haas. The approved presentation

included a discussion of the effects of certain preparative techniques on catalytic structure as determined by typical characterization techniques.  She was specifically authorized to discuss the effects of the differences in catalytic structure on catalytic performance.  The approved presentation was to be based on data obtained from 1996 research.

Prior to her presentation to the ACS and consistent with her obligations under the agreements negotiated at the time of the termination of her employment, Dr. Lin provided Rohm and Haas with an outline containing the substance of the slides she intended to use in her presentation.  The slides were presented to Rohm and Haas for trade secret review. The proposed presentation deviated from the previously approved abstract in one respect. The European Patent Application was published in December 1999. Dr. Lin wanted the presentation to incorporate a reference to the high yield results achieved by her invention and reported in the EPA, although those results were generated in 1997.  Dr. Lin believed that she was justified in presenting the data since it had already been published and was readily available to the scientific community at large. Upon reciept of the proposed outline, Rohm and Haas expressed no objection to Dr. Lin's proposed use of 1996 data in her presentation. However, Rohm and Haas objected to her inclusion of the high yield data disclosed in the Patent Application because it "did not want to draw attention to that information." Rohm and Haas, through the office of its legal counsel, thereafter confirmed that Dr. Lin was authorized to proceed with her presentation so long as it was limited to 1996 data but advised her that she was not authorized to present information pertaining to "the new patent information."

Dr. Lin made a presentation to the American Chemical Society on March 28,

2000. The presentation was consistent with the approved abstract in that it was limited to a discussion of the affects of certain preparative parameters on catalytic structure as determined by standard characterization techniques and the effect of those structural changes on catalytic performance. Her presentation was accompanied by twenty slides, each of which was flashed onto a screen for a period of no more than one minute. No written materials were distributed at that presentation. The data presented on the slides were the results of objective characterization and testing techniques from catalysts prepared in the manner of one or more examples published in the EPA.

After returning to Philadelphia from the ACS meeting, Rohm and Haas made no complaint about Dr. Lin's alleged disclosure of trade secrets. However, two months later, after learning that Dr. Lin had filed a complaint with the EEOC objecting to certain threats made against her by representatives of Rohm and Haas, a lawsuit was hastily prepared and filed in the Court of Common Pleas of Montgomery County, Pennsylvania. Rohm and Haas sought injunctive relief asserting that Dr. Lin had made unauthorized disclosures of sensitive trade secret information at the ACS meeting and therefore injunctive relief was required to prevent her from repeating that conduct in the future

The injunction hearing was conducted over the course of parts of ten days extending over seven months. During the course of the Preliminary Injunction Hearing, Rohm and Haas asserted that there were four specific trade secrets that Dr. Lin had disclosed during the course of her presentation. The evidence confirmed that Dr. Lin never specifically articulated the alleged trade secrets. In fact, the substance of the alleged trade secrets did not involve the specific subject matter of Dr. Lin's presentation. Rather, Rohm and Haas asserted that a scientist reviewing the data disclosed in the slides

that accompanied Dr. Lin's presentation would easily "learn" the alleged trade secrets. Presumably, a scientist sitting in the audience could, for example, observe the data presented on slide 17, compare it to the data presented on slide 18, and thereby figure out an alleged "trade secret."

Dr. Lin has no knowledge of the trade secrets she allegedly disclosed and does not believe that any of them represent valid scientific conclusions or that they were conclusions reached by anyone at Rohm and Haas prior to her ACS presentation. Rather, from all appearances, the alleged "trade secrets" appear to be the product of a transparent effort to fabricate a "trade secret" from the limited data presented at Dr. Lin's presentation. In fact, certain of the "pairings" of information from various slides that were alleged to disclose Rohm and Haas' trade secrets do not even relate to the same catalysts. Undaunted, Rohm and Haas adamantly retained its position that the disclosures made by Dr. Lin placed the future of the company in jeopardy.

Generally, it would be anticipated that if a party was attempting to prove the existence of a trade secret, a prior written or verbal record of that trade secret would exist along with the raw data that supported the scientific conclusion. During the hearings on the Preliminary Injunction, Rohm and Haas did not present a single document or data set that actually confirmed the prior recognition of the alleged trade secrets. Rather, Rohm and Haas' designated witness merely testified that all of the data and primary source material that supported its alleged trade secrets was retained at Rohm and Haas' lab but that he did not believe it was "relevant" and therefore produced none of it in Court. The "evidence" of the alleged trade secrets was the testimony presented by Dr. Scott Han,

who based his testimony on the data disclosed by Dr. Lin, without corroboration from any other source.

Despite the total absence of underlying data or documentation of the prior existence of the alleged trade secrets, the Court of Common Pleas, on the basis of Dr. Han's strident position that Dr. Lin had, in fact, engaged in the unauthorized disclosure of Rohm and Haas trade secrets, entered a comprehensive injunction against Dr. Lin. The Superior Court affirmed the factual findings made by the Court of Common Pleas. However, as this Court knows, on an appeal from an order granting a Preliminary Injunction, the Superior Court must affirm findings of the trial Court if there is any evidence to support the findings. Clearly, Dr. Han's testimony constituted "evidence" of the alleged trade secrets.

Since the conclusion of the Preliminary Injunction Hearing, the parties have continued to engage in discovery in the Court of Common Pleas. The focus of the discovery propounded on behalf of Dr. Lin has been to determine whether primary source material actually exists to corroborate Rohm and Haas' alleged trade secrets. Extensive Request for Production of Documents, Interrogatories and Requests for Admission have been served on Rohm and Haas. The responses have failed to provide any evidence to confirm the scientific integrity or prior recognition of any of the alleged trade secrets. As recently of April 9, 2003, counsel for Dr. Lin conducted the deposition of Dr. Charles Tatum, the Chief Scientific Officer of Rohm and Haas during the relevant period. On June 6, 2003, argument was held in the Court of Common Pleas of Montgomery County on Dr. Lin's Motion to Determine Sufficiency of Rohm and Haas'

Amended Answers to Requests for Admissions and Amended Answers to Second Requests for Admissions.   At no time, has any representative of Rohm and Haas ever objected to the ongoing discovery in the Injunction Action on the grounds that the Court had already made a conclusive determination of the existence of the alleged trade secrets.

Although ongoing discovery in the Court of Common Pleas has failed to yield supporting evidence for the existence of the alleged trade secrets, evidence has been obtained that directly contradicts the evidence and testimony originally presented to prove the existence of each of the alleged trade secrets.

It is not the purpose of this Memorandum to argue the substance of the entire case.  However, it is important that this Court recognize the nature of the record in the Injunction Action.  One representative example of the record and subsequent disclosures is illustrative.

One of the alleged trade secrets disclosed by Dr. Lin is that "nitrogen, which is less expensive than argon, can be substituted for argon with no difference in the resulting catalysts."  The genesis of this "disclosure" is that one of the factors that effects a catalyst's performance is the atmosphere in which the catalyst is prepared.  The invention described in the EPA discloses that a catalyst should be prepared in an inert atmosphere and that preferably "the inert atmosphere is argon or nitrogen, more preferably argon." (See, EPA, p. 4, attached hereto and incorporated herein as Exhibit "E").  The EPA also includes a table (Table 1) that provides information, including preparation methods and yield results, for selected catalysts described in the patent application.  (See, Exhibit "E," p. 8).   The information reported about Example 12 discloses that the catalyst was prepared in an argon atmosphere and resulted in the high yield of 42% acrylic acid.

One of the slides used by Dr. Lin during her presentation contains the identical yield data (71% propane conversion, 59% acrylic acid selectivity) as the data disclosed for Example 12 in Table 1 of the EPA. This slide, however, indicates that the catalyst was prepared in an atmosphere of nitrogen. (Slide 18 from ACS presentation, attached hereto as Exhibit "F"). The reference to "nitrogen" was a typographical error by Dr. Lin. She is aware of no catalyst prepared in nitrogen that achieved these reported results or results anywhere near the high yields. However, according to the evidence presented by Rohm and Haas, a scientist attending Dr. Lin's ACS presentation who observed the data on Slide 18, and subsequently compared that information with the information contained in Table 1 of the EPA, would learn the trade secret that "nitrogen, which is less expensive than argon, can be substituted for argon with no difference in the resulting catalyst." (See, NT Han, July 14, 2000, pp. 128-130, attached hereto and incorporated herein as Exhibit "G"). Although Dr. Han concurred that the data disclosed on Dr. Lin's Slide 18 does not actually exist, he further testified that Rohm and Haas generated other data (generated by persons other than Dr. Lin after the EPA had been filed) showing that nitrogen and argon are interchangeable. (NT Han, July 10, 2000, pp. 208-212. See, Exhibit "H"). The data was not produced at the hearing, however because Dr. Han did not believe is was "relevant." Despite requests for document production and other discovery, the "other data" has never materialized. Dr. Lin contends that the entire "trade secret" is a non-existent sham.

Dr. Han further explained that at the time the EPA was filed, Rohm and Haas believed that there was a difference between nitrogen and argon and the reason the EPA says "more preferably argon" is because, at the time, it was understood that argon was the

more preferred mode of carrying out this invention.  (NT Han, July 10, 2000, pp. 210-212. See, Exhibit "G").  Thus, Rohm and Haas presented affirmative evidence in the Injunction Hearing that at the time the EPA was prepared, Rohm and Haas believed that argon was the "preferred mode" for preparing these catalysts.  However, by March 2000, Rohm and Haas had generated specific data demonstrating that nitrogen was the equivalent of argon in the preparation of these catalysts.  In fact, it is this allegedly critical discovery that constitutes the claimed trade secret.

U.S. Patent law requires that a Patent Application disclose the "best mode" of carrying out an invention.  35 P.S. § 112.

Dr. Han acknowledged that as a cheaper gas that obtains an identical result, the use of nitrogen is clearly the "best mode" for carrying out the invention.  Rohm and Haas asserted that had this information been known at the time the EPA was drafted, the EPA would not have claimed that argon was the preferred atmosphere.  This was further confirmed in correspondence from Rohm and Haas' patent counsel.  However, despite theses representations, within months of testifying that nitrogen is the equivalent of argon and therefore, the "best mode" of carrying out the invention, Dr. Han signed the Declaration of at least two new patent applications utilizing the identical catalyst preparation as the EPA in which it is affirmatively asserted that argon is the preferable atmosphere.  These patent applications, which did not become available to the public until recently, directly contradict the claim made by Rohm and Haas in the Preliminary Injunction hearing.  Certainly, if the understanding that argon and nitrogen are interchangeable in this application is a significant revelation, it would have been disclosed in any patent application filed after the discovery of this new information.  The

affirmative representations to the U.S. Patent Office by Rohm and Haas' own witness that directly contradicts the alleged trade secret coupled with the complete failure of Rohm and Haas to produce any of the underlying data that was claimed to exist place the validity of the entire "trade secret" in issue. (Other evidence obtained since the conclusion of the Preliminary Injunction hearing further undermine this alleged "trade secret" but need not be detailed here).

Follow-up discovery in the Court of Common Pleas has disclosed numerous discrepancies between the testimony presented during the Preliminary Injunction Hearing and the actual facts with respect to each of the alleged trade secrets. Those discrepancies will clearly demonstrate that the evidence offered in the Preliminary Injunction Hearing in support of the alleged trade secrets was a fabrication and a complete sham. If the evidence of "trade secrets" is exposed as a mere construct, the pursuit of Dr. Lin in the injunction proceedings is likewise exposed as a mere pretext for retaliatory conduct.

It is against this background that Plaintiff has pursued discovery in this case concerning the validity of the alleged trade secrets.

## III.    ARGUMENT

In response to Plaintiff's First Set of Interrogatories, Defendant provided almost no substantive information. Instead, virtually identical objections were asserted to each of the interrogatories. Rohm and Haas objected that the interrogatories sought discovery of "trade secret information and facts related to trade secret issues that have already been decided by the Montgomery County Court of Common Pleas," and that "re-litigation" of the findings of the State Court is barred by collateral estoppel. Defendant also objected on the grounds that the requested information was "duplicative and unduly burdensome in that the record in the State Action contains the information." These objections merely

continue the pattern displayed by Rohm and Haas throughout wherein it has refused to provide any substantive information to support the validity of the alleged "trade secrets" claimed in the Injunction Hearing.

The strategy of obfuscation and avoidance has been employed by Rohm and Haas at each and every opportunity in both this case and the Injunction Action despite the fact that a simple substantive response could easily be provided if, in fact, substantive information actually existed. If the alleged trade secrets actually exist as asserted by Rohm and Haas, it would be anticipated that Rohm and Haas could readily produce documentation and data to support those trade secrets. In fact, it would be anticipated that Rohm and Haas would be anxious to provide that supporting information so as not to unnecessarily prolong this litigation. Instead, in response to each and every discovery request, Rohm and Haas has used every possible technique to sidestep or avoid supplying substantive information.

The discovery requests propounded by Plaintiff are, in fact, follow-up inquiries with respect to various matters raised by Rohm and Haas in the State Court proceedings. Each request is succinct and requires objective information that is presumably readily available if, in fact, the alleged scientific principles have any validity. The pattern of avoiding every request for substantive information employed by Rohm and Haas cannot be allowed to continue.

The response of Rohm and Haas is based on the fundamental claim that this Court has already endorsed the affirmative defense of collateral estoppel with respect to "findings" of the Court of Common Pleas of Montgomery County. The assumption is fundamentally in error. By Order dated February 19, 2003, this Court recognized that

"the Preliminary Injunction opinion is not 'sufficiently firm' to warrant dismissal based on collateral estoppel." (Order of February 19, 2003, fn.1).     In the Court's Order of March 26, 2003 addressing Defendant's Motion for Reconsideration, this Court repeated its observation that the existence of a Superior Court opinion was "unpersuasive" to support Defendant's agreement that the Preliminary Injunction is now "sufficiently firm to merit preclusive affect." Thus, the prior orders of this Court have specifically rejected Defendant's argument that on the present record, collateral estoppel has been conclusively established.     Ignoring the direct statement of the Court, Defendant has relied instead on the statement that this Court "can give judicial notice, at the appropriate time, to a State Court finding." (Order of March 26, 2003, fn. 1).  The appropriate time, of course, will be determined when, as and if a record can be generated by Defendant to demonstrate that the State Court findings are "sufficiently firm" to warrant a recognition of collateral estoppel.  Until that time, collateral estoppel is an affirmative defense raised, but not proven.   Defendant cannot use a defense that has been asserted, but not established, as a shield to prevent legitimate discovery.

Collateral estoppel does not apply in this case for another fundamental reason. This case is focused on the Defendant's conduct, not the specific intellectual property.  If Defendant misled the Court of Common Pleas, or knowingly introduced fabricated evidence and arguments so as to punish Dr. Lin, the specific factual findings of that Court are not determinative of the issues in this case.   Rohm and Haas' objections and corresponding refusal to provide substantive responses to proper discovery is without foundation.

Despite Defendant's adamant stance in this matter, it is noteworthy that discovery is continuing on matters involving the alleged "trade secrets" in the State Court proceedings. Rohm and Haas has not objected to discovery propounded by Dr. Lin in the Injunction Action on the grounds that the matter has been fully and finally resolved. All parties recognize that the findings supporting the Preliminary Injunction are an intermediate step and do not represent the full and final findings of the Court. If the parties to the Injunction Action recognize that discovery is not precluded on matters involving the "trade secrets," it can hardly be argued that discovery should be foreclosed in this case because the findings in the Injunction Action represent final and firm determinations.

Defendant's objections that the discovery is "unnecessary, duplicative and unduly burdensome" because the record in the State Action contains information on Rohm and Haas trade secrets is simply a misstatement of fact. The parties have recently entered into a stipulation (approved by the Court of Common Pleas of Montgomery County) whereby all documents in the Injunction Action are equally available for use in this matter. If the substantive information responsive to the current requested discovery was available in State Court, there would be no need to address identical issues in this Court. Although the requested discovery in many cases follows up on discovery responses from the Injunction Action, there are no duplications and Defendant's objection on that ground is misplaced.

Finally, there is, at least by implication, a suggestion that discovery is shielded on the grounds that the information sought is confidential. Dr. Lin and her counsel have already executed a comprehensive Confidentiality Agreement that shields the disclosure

of trade secret information produced in this litigation (as well as the Injunction Action) from unauthorized disclosure to any third party. All parties recognize that there are at least claims of confidentiality with respect to the documents addressed in discovery and have long since resolved that issue. An objection on the basis that the discovery requests seeks information that is confidential is of no merit.

## IV.    INTERROGATORIES

### Interrogatories Number 1-4.

Interrogatories 1-4 request that Defendant simply provide definitions that apply to its alleged trade secrets. Throughout the Injunction proceedings, Rohm and Haas routinely referenced "good performing" and "poorly performing" catalysts in the context of its alleged trade secrets. Therefore, for example, one of the trade secrets allegedly disclosed by Dr. Lin was that "Catalysts which contain $Mo03$ will be poorly performing." When Dr. Lin filed Request for Admissions in the Injunction Action seeking an admission that the presence of $Mo03$ in a catalyst has never been used by Rohm and Haas as a screening devise to identify poorly performing catalysts, Rohm and Haas responded with an objection on the grounds that the request is vague and ambiguous in so far it requires Rohm and Haas to ascertain the intended meaning and scope of the undefined phrase "poorly performing" when no parameters (such as yield, selectivity, etc.) are provided to enable it to determine the meaning of the scope of "poorly performing." Dr. Lin agrees. Without a definition of the phrase "poorly performing" or "good performing," the alleged trade secrets are devoid of any meaning whatsoever. Therefore, Dr. Lin simply seeks an explanation from Rohm and Haas as to the intended meaning of key components of its own trade secrets.

**Interrogatory Number 5**

Interrogatory Number 5 seeks information about data generated in 1996 that was approved for use in Dr. Lin's presentation.  Throughout the Injunction proceedings, Rohm and Haas repeatedly stressed that Dr. Lin was authorized to present data generated in 1996.  Rohm and Haas testified that the data presented by Dr. Lin was unauthorized data in that it was later data generated in 1997.  In support of the Petition for Preliminary Injunction, Dr. Han executed an Affidavit in which he specifically asserted that the approval of the abstract for Dr. Lin's presentation was based upon "Dr. Lin's limiting her presentation to discussion of data generated in or prior to 1996" and that after reviewing the outline of her proposal, he "instructed Dr. Lin to make the presentation using only data generated in or prior to 1996."  At the Preliminary Injunction Hearing, Rohm and Haas stressed that Dr. Lin was only authorized to disclose data generated in 1996 or earlier but that it believed the data presented by Dr. Lin to the ACS was data from 1997 and therefore unauthorized.  The Court of Common Pleas thereafter specifically relied on this "evidence" and concluded that the Rohm and Haas legal staff requested that Dr. Lin present "the 1996 data and not the post-1996 trade secret data."  (Opinion of Court of Common Pleas, June 19, 2001, p. 3).  The Superior Court affirmed the Trial Court with a specific reference that Dr. Lin was authorized to make the "presentation of the paper subject to the caveat that only 1996 or previous data could be used.  This proviso was required because post-1996 data included critical documentation that constituted confidential trade secret information."  (Opinion of Superior Court p. 5).

In its Motion to Dismiss in this case, Rohm and Haas argued that the findings of the State Court had conclusively determined that Dr. Lin was authorized to present 1996

data but that her slide presentation "contained post-1996 critical trade secret information." (Defendant's Memorandum of Law in Support of its Motion to Dismiss, p. 25).

Despite the "evidence" presented by Rohm and Haas at the Preliminary Injunction Hearing and the specific findings of the Courts based on that "evidence," the data presented by Dr. Lin was, in fact, 1996 data. In its rush to prosecute Dr. Lin, Rohm and Haas never took the time to check on the actual data source but affirmatively accused Dr. Lin of presenting data that was beyond of her authorization. Despite Dr. Lin's protestations to the contrary, Rohm and Haas remained adamant that the data presented by Dr. Lin was generated after 1996. However, since the conclusion of the Preliminary Injunction Hearing, Rohm and Haas has finally reluctantly acknowledged (in response to Requests for Admission) that the data presented by Dr. Lin was "1996 data." Now, despite all of the prior testimony in which Rohm and Haas vigorously asserted that Dr. Lin's authorization extended only to 1996 data, Rohm and Haas claims that although the data was 1996 data, it was not "authorized 1996 data." Interrogatory No. 5 seeks information pertaining to the details of Rohm and Haas' revised position with the respect to the data presented by Dr. Lin.

### Interrogatories Numbered 6 through 13

Interrogatories 6 through 13 request information on the identity of specific catalysts. It was clear throughout the injunction proceedings that Rohm and Haas had never taken the time to identify specific data sources before aggressively attacking Dr. Lin for the alleged unauthorized disclosure of certain data. In fact, the only data disclosed by Dr. Lin was information obtained from analysis using standard

characterization techniques on catalysts whose composition had been fully disclosed in the published EPA. Any scientist who followed the instructions of the EPA for creating one or more of the catalysts, and thereafter subjected those catalysts to standard characterization techniques could have obtained the identical information presented by Dr. Lin. These interrogatories request that Rohm and Haas specifically identify the catalyst samples that it believes are the source of data at issue in this case. Rohm and Haas, thus far, has refused to make any commitment as to the actual data source of the relevant data, thereby permitting the Court of Common Pleas, as well as the Appellate Court, to be misled into basing their findings on misleading or erroneous evidence. These interrogatories request that Rohm and Haas finally acknowledge the specific data source of various data presented by Dr. Lin in the presentation.

### Interrogatories Numbered 15, 21 and 22

Interrogatory Numbers 15, 21 and 22 simply requests information that was identified in general terms in Rohm and Haas' own pleadings. Defendant's objections are without merit.

### Interrogatory Number 16

Interrogatory Number 16 requests that Rohm and Haas provide information presently known to it about the "best mode" for preparing the invention described in the EPA. Although the testimony at the injunction hearing suggested that the best mode for practicing the invention was to prepare catalysts in a nitrogen atmosphere (which purportedly achieved identical results at a lower cost), subsequent filings in the U.S. Patent Office have asserted a different conclusion. The interrogatory is not related to the specific requirements for a non-U.S. Patent Application, but merely seeks a description of

the best mode currently known to Rohm and Haas for carrying out the invention described in the EPA. If the current understanding of the best mode is the same as reported in the EPA, Rohm and Haas can so state. If subsequent discoveries have revealed a different "best mode" for carrying out the invention, Rohm and Haas can identify the updated version of its understanding of the "best mode." Either way, the interrogatory seeks information about Rohm and Haas' current knowledge about he best mode for practicing that invention. Defendant's objections are unwarranted and misleading.

### Interrogatories Numbered 17, 18, 23 and  24

Interrogatories Numbered 17, 18, 23 and 24 seek details about data supporting the alleged trade secrets. To date, no such data supporting the alleged trade secrets has been identified or produced. The requested information is relevant and Defendant's objections are without merit.

For all of the foregoing reasons, Plaintiff respectfully requests that the objections to Plaintiff's interrogatories be overruled and that Rohm and Haas be required to provide substantive responses to each of the interrogatories within ten (10) days.

## V.    REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff's Requests for Production of Documents and Defendant's response thereto follow the same pattern addressed above. The arguments pertaining to Plaintiff's interrogatories are incorporated herein by reference and will not be repeated with respect to each of the categories of documents requested from Rohm and Haas.

**Request for Production Number 12**

One Request for Production requires further clarification.  Request for Production Number 12 requests the production of a notebook prepared by Dr. Han.  The notebook was requested at the time of Dr. Han's deposition in advance of the Preliminary Injunction Hearing.  Initially, Rohm and Haas attorney's represented, on the record, that the notebook had been produced although it clearly had not been.  After a verbal Motion addressed to Judge Drayer the Court of Common Pleas, Rohm and Haas was ordered to produce the notebook in its entirety at the deposition.  The notebook was thereafter produced and briefly inspected by counsel for Dr. Lin but before Dr. Han could be questioned about the notebook, counsel for Rohm and Haas physically removed the notebook and refused to allow it to be marked as an Exhibit or to permit counsel for Dr. Lin to make copies of its contents.  Selected pages of the notebook, many containing substantial redactions, have been produced.

Plaintiff believes that Dr. Han's notebook, which records his observations and events pertaining to Dr. Lin's ACS presentation, is relevant evidence to the matters presently pending before this Court and should be produced in its entirety for inspection and copying.  The notebook contains multiple references that are clearly in error and appear to have been created "after the fact" in a transparent effort to generate evidence to support or justify the conduct of Rohm and Haas.  Having produced the notebook, albeit briefly, in the past, there is no basis to object to its production at the present.   The notebook was previously produced,  without restriction, pursuant to Court Order.  Having previously been produced for inspection it in its entirety, any objection based on

confidentiality or privilege has been waived. Defendant's objection to the production of the notebook is without merit.

Plaintiff respectfully requests that the objections to Requests for Production of Documents served on Rohm and Haas be overruled and that Rohm and Haas be required to produce the requested documents within ten (10) days.

## VI.    DEPOSITIONS

In verbal communications with counsel for Defendant, counsel for Dr. Lin identified certain witnesses to be deposed and requested that mutually convenient dates be established. The proposed deponents included Dr. Scott Han, Michael McLaughlin, Esquire, Dr. Michael Clark, Dr. Mark Schure and a corporate representative to address issues concerning Rohm and Haas' position with respect to certain Patent Applications and the decision of Rohm and Haas to institute the Injunction Action. Counsel for Rohm and Haas advised that under no circumstances would he permit any deponent to testify as to any question with respect to matters relating to the Injunction Action. Further, with respect to the patent issues, counsel for Rohm and Haas reiterated the substance of the response to Interrogatories 19 wherein it is asserted that the only representative of Rohm and Haas with relevant information is deceased. Unless and until there is a clarification of the scope of discovery in this case, conducting depositions would not be fruitful. Plaintiff therefore seeks an order compelling the production of witnesses for depositions once limits of discovery have been determined.

## VII.    REQUEST FOR EXTENSION OF DISCOVERY DEADLINE

By Order dated February 27, 2003, this Court set a discovery deadline of June 19, 2003. The parties thereafter proceeded with written discovery but Rohm and Haas

provided virtually no substantive information in response to interrogatories and Request for Production of Documents.  The failure of Defendant to respond to written discovery, together with counsel's adamant position that no discovery concerning any matters involved in the Injunction Action would be permitted has precluded the opportunity for productive depositions.  On the basis of the foregoing, Plaintiff respectfully requests that this Court extend the discovery period for sixty (60) days so as to permit Plaintiff to obtain substantive responses to requested discovery and thereafter proceed with depositions of Defendant's witnesses.

## VIII.   MOTION FOR SANCTIONS

Fed.R.Civ.P. 37(a)(4) provides that where an application for and Order compelling discovery is granted, the Court may also award the moving party with reimbursement for reasonable expenses incurred in making the Motion, including attorney's fees.  Here, Rohm and Haas has continued a pattern of avoidance and obfuscation that has completely frustrated the legitimate purpose of discovery.  Counsel for Dr. Lin has made a good faith attempt to resolve this matter without the necessity of Court intervention without success.   As is apparent from Defendant's responses to Plaintiff's request for discovery, Defendant has essentially adopted the position that the affirmative defense of collateral estoppel prevents Plaintiff from conducting virtually any discovery in this case.  Defendant would not consider any argument that is contrary to this position.  Plaintiff is therefore entitled to reimbursement of costs and counsel fees expended in the preparation of this Motion.

## IX.    CONCLUSION

For all of the foregoing reasons, Plaintiff, Dr. Manhua Mandy Lin, respectfully requests that this Court enter an Order overruling Defendant's objections to discovery and requiring Plaintiff to respond to all discovery concerning all matters involved in the Injunction Action as well as the patent issues that are addressed in this litigation. Plaintiff further requests an extension of the discovery deadline to permit Plaintiff an opportunity to obtain responses to the requested discovery.


Respectfully submitted,
Leonard, Tillery & Sciolla, LLP


By:_____
Hugh J. Hutchison

Date:_____