## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. MANHUA MANDY LIN,                    :        CIVIL ACTION
                                         :
        Plaintiff,                       :        02-CV-3612
                                         :
    v.                                   :
                                         :
ROHM AND HAAS COMPANY,                   :
                                         :
        Defendant.                       :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                        **November    , 2003**

Presently before the Court is the Motion for Summary Judgment of Defendant, Rohm and Haas Company. Plaintiff's Second Amended Complaint asserts claims of discrimination under 42 U.S.C. § 1981; retaliation under 42 U.S.C. § 2000e-3(a) and 43 P.S. §955(d); defamation; false light invasion of privacy; intentional infliction of emotional distress; and breach of contract. For the reasons that follow, we will grant Defendant's Motion for Summary Judgment in part and deny the Motion in part.

## Factual Background

The following is a brief overview of the facts. Additional facts will be provided throughout the Discussion section as they relate to the legal issues presented.

Plaintiff Dr. Manhua Mandy Lin ("Plaintiff") is a former employee of defendant Rohm and Haas Company ("Defendant") who

1

resigned from her scientist job on November 30, 1999.
Plaintiff's resignation was part of a written EEOC Settlement
Agreement and companion Agreement and Release.  The Agreements
provide that Plaintiff shall have the right to publish scientific
papers and make scientific presentations pertaining to her work
while employed by Defendant subject to Defendant's right to
perform a trade secret review prior to the time Plaintiff
publishes or makes a presentation.

On June 2, 2000, Defendant filed a Complaint in Equity and a
Petition for Preliminary Injunction in the Court of Common Pleas
of Montgomery County.  Defendant's Complaint and Petition were
largely based on Defendant's contention that Plaintiff had
delivered an "unauthorized" presentation and disclosed trade
secrets of the Defendant.  The Court of Common Pleas entered a
Temporary Restraining Order on July 14, 2000, followed by a
Preliminary Injunction Order on April 17, 2001.  The Court of
Common Pleas issued an Opinion in Support of the Preliminary
Injunction on June 19, 2001, which the Pennsylvania Superior
Court affirmed on February 20, 2003.

Prior to the institution of the state lawsuit, Defendant
learned that Plaintiff made informal complaints with the EEOC
about Defendant.  Plaintiff complained to the EEOC that Dr. Scott
Han, Defendant's employee responsible for performing trade secret
review of Plaintiff's proposed publications and presentations,

threatened to destroy her employment opportunities if she proceeded with the unauthorized presentation.

## Standards Governing Summary Judgment

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S. Ct. 732, 50 L. Ed. 2d 748 (1977). Under Fed.R.Civ.P. 56(c), summary judgment is properly rendered:

> "...if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-32, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of

the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); <u>Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland</u>, 989 F.2d 635, 638 (3rd Cir. 1993); <u>Troy Chemical Corp. v. Teamsters Union Local No. 408</u>, 37 F.3d 123, 125-126 (3rd Cir. 1994); <u>Arnold Pontiac-GMC, Inc. v. General Motors Corp.</u>, 700 F. Supp. 838, 840 (W.D. Pa. 1988). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

In <u>Celotex Corp. v. Catrett</u>, <u>supra</u>, the Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment. Specifically the Court in that case held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. <u>Celotex</u>, 477 U.S. at 323. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324 (quoting Fed.R.Civ.P. 56(e)).

4

This does not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.  Obviously, Rule 56 does not require the nonmoving party to depose its own witnesses.  Rather, Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c),except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the required showing that a genuine issue of material fact exists.  <u>Id</u>.  <u>See Also</u>, <u>Morgan v. Havir Manufacturing Co.</u>, 887 F.Supp. 759 (E.D.Pa. 1994); <u>McGrath v. City of Philadelphia</u>, 864 F.Supp. 466, 472-473 (E.D.Pa. 1994).

### **<u>Discussion</u>**

<u>Retaliation Claims Under Title VII and PHRA</u>

    1.  <u>The State Lawsuit</u>

Plaintiff alleges that Defendant filed the state lawsuit in retaliation for her informal complaints to the EEOC.  Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act prohibit retaliation in the employment context with respect to certain protected activities.  42 U.S.C. § 2000e-3(a); 43 P.S. § 955(D).[1]

---

[1]    Courts have generally interpreted the PHRA in accordance with the standards applied to claims brought under Title VII of the Civil Rights Act of 1964. <u>Grande v. State Farm Mut. Auto. Ins. Co.</u>, 83 F. Supp. 2d 559, 562 (E.D. Pa. 2000).  We analyze Plaintiff's Title VII and PHRA claims under the same

In the Third Circuit, "to advance a prima facie case of retaliation, a plaintiff must show that (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Company, 206 F.3d 271, 279 (3rd Cir. 2000). If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. See Fuentes v. Perskie, 32 F.3d 759, 763 (3rd Cir. 1994) (quoting McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802 (1973)).

"To defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.

---

standards.

6

a.   The Prima Facie Case

For purposes of their Motion for Summary Judgment, Defendant does not dispute that Plaintiff's written and verbal contacts with the EEOC prior to her filing a formal charge with the EEOC are "protected activities."[2] Likewise, Defendant does not dispute that filing a Complaint in Equity and Petition for Preliminary Injunction against Plaintiff was an "adverse employment action."

Defendant and Plaintiff do disagree, however, on whether Plaintiff has established the requisite causal connection between the protected activity and the adverse employment action.  We find that Plaintiff has established a sufficient causal connection to sustain a prima facie case of retaliation.

The Court can discern three factors that Plaintiff contends

---

[2]       An informal complaint can be a "protected activity" so long as the complainant "possessed the requisite good faith belief that he was protesting conduct outlawed by Title VII." Bianchi v. City of Philadelphia, 183 F.Supp.2d 726, 739 (E.D.Pa 2002).

Defendant does contend that Plaintiff did not engage in a "protected activity" under the PHRA.  Plaintiff's Amended Complaint alleges that Defendant sued her in retaliation "for asserting her rights before the PHRC" and for seeking "the benefit of the PHRC's enforcement proceedings."  It is clear, however, that Plaintiff did not make  any complaints directly with the PHRC prior to Defendant bringing the state lawsuit. Plaintiff now argues that her informal complaints with the EEOC are protected activities for which the PHRA prohibits retaliation.  To the extent that the informal complaints can be deemed "protected activity" under Title VII, we find that they are likewise "protected activity" under the PHRA.  See 43 P.S. § 955(d) (making it unlawful for "any person. . .to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act. . .").

establish a causal connection.  First, Plaintiff relies on the
fact that the state suit was filed ten days after Defendant
learned of her informal complaints with the EEOC.  This
conclusion alone requires the determination of disputed fact, but
taking the facts in the light most favorable to the Plaintiff,
the Court accepts Plaintiff's version of timing.[3]  The Third
Circuit has cautioned that the probative value of temporal
proximity in retaliation cases "must be considered with a careful
eye to the specific facts and circumstances encountered."
Farrell, 206 F.3d at 279, n.5.  Upon considering a motion for
summary judgment where the adverse employment action came only
ten days after the protected activity, temporal proximity is
strong evidence of a causal connection.  See Jalil v. Avdel
Corp., 873 F.2d 701, 708 (3rd Cir. 1989).

      The second factor relied upon by the Plaintiff to show
causal connection is Plaintiff's allegation that Defendant could
not identify any trade secret violations at the time of filing
the state suit.  Plaintiff supports this allegation by pointing

---

      [3]     Defendant contends they made the decision to sue
Plaintiff on May 11, 2000.  However, Defendant's only evidence of
this decision is the affidavit of Dr. Han.  Because the Court may
not make credibility determinations, we must allow the jury to
decide when the decision to sue Dr. Lin was made.
      It is also unclear from the record when Defendant learned of
Dr. Lin's contact with the EEOC.  The Defendant does admit to
having contact with the EEOC on May 23, 2000, so taking the
evidence in the light most favorable to the Plaintiff, we will
assume that Defendant learned of Plaintiff's informal complaint
with the EEOC on that date.

to Defendant's failure to provide documentation of their trade secret analysis prior to filing the state lawsuit.  Plaintiff also concludes that Dr. Han's deposition testimony, taken more than a month after the complaint was filed, shows that Defendant could not identify any trade secret violations.  Even if the Court accepts Plaintiff's interpretation of Dr. Han's deposition testimony, it does not appear to the Court that this suggests a retaliatory motive on the part of the Defendant.  At best, this supports Plaintiff's temporal proximity argument, that Defendant had not developed its trade secret violation case prior to her protected activity.

Finally, Plaintiff alleges that Defendant has provided inconsistent reasons for initiating the state lawsuit.  See Farrell, 206 F.3d at 281 (noting that a plaintiff may establish a causal connection by showing that the employer gave inconsistent reasons for the adverse employment action).  Plaintiff's evidence of this inconsistency is a letter from a Rohm and Haas attorney to the EEOC setting forth its reasons for instituting the state lawsuit. (Plf.'s Ex. N).  The letter indicates that factors such as Defendant's belief that Plaintiff had scheduled another unauthorized presentation and that the EEOC had warned Defendant of Plaintiff's refusal to abide by the parties' agreement, as well as their belief that Plaintiff had revealed trade secrets, motivated Defendant's decision to bring the state suit.  See id.

It appears to the Court that there are material issues of fact pertaining to Defendant's alleged belief that Plaintiff presented an immediate threat to disclose trade secrets and confidential information of Defendant.  For example, prior to the institution of the state lawsuit, the EEOC sought to clarify any "impressions" Defendant had gotten from communications with the EEOC.  (Def.'s Ex. A-11).  The Court also finds significant the fact that some of these additional motivations post date the date by which Defendant alleges the decision to sue Plaintiff in state court was made.  See fn 3 supra.

The Court therefore finds that the temporal proximity and the apparent inconsistency in the Defendant's decision to sue Plaintiff establish a sufficient causal connection to sustain Plaintiff's prima facie case of retaliation.

> b.  Defendant's Legitimate, Non-Retaliatory Reason

After Plaintiff establishes a prima facie case of retaliation, the burden switches to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action, i.e., filing the state lawsuit.  Fuentes, 32 F.3d at 763. This has been articulated by the Third Circuit as a "relatively light burden." Id. at 763.  The Defendant claims it brought the state suit because it has an interest in protecting it's intellectual property.  (Def.'s Memo. at p.54-55).  This is clearly a legitimate reason for seeking an injunction against

10

Plaintiff in state court.

The record reveals ample evidence to support this non-discriminatory reason.  First, there is the letter Dr. Han presented to Plaintiff before she gave her presentation.  (Def.'s Ex. A-4).  The letter clearly indicates that Defendant had "intellectual property concerns" regarding certain information Defendant believed was contained in Plaintiff's presentation. Defendant directed Plaintiff not to discuss this information in her presentation or Defendant would consider legal action against her.  Second, Defendant presents the affidavit of Dr. Han, the scientist chosen by Plaintiff to perform trade secret review on her presentations.  Dr. Han claims, and Plaintiff concedes, that he told Plaintiff not to disclose particular data that he had not approved in his trade secret review.  (Def.'s Ex. B; Plf.'s Memo. p.3 ).  Furthermore, Defendant has provided evidence to support a general interest in protecting its trade secrets.  Defendant has brought similar claims against other employees in the past. (Def.'s Ex. C, D).  And most significantly, Defendant had several agreements with Plaintiff governing its intellectual property. (Def.'s Ex. A-3).

Defendant's evidence demonstrates that it has an interest in protecting its intellectual property.  Therefore, Defendant has satisfied its light burden of producing a legitimate reason for filing the state suit against Plaintiff.

11

c.  Pretext

Having decided that Defendant has satisfied his burden of producing a legitimate, non-discriminatory reason for the adverse employment action, the burden now shifts back to the Plaintiff. To survive summary judgment, "plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.

The Third Circuit has stated that "[t]o discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765.  This Court, therefore, reminds both parties that the purpose of this lawsuit is not to re-litigate whether trade secret violations actually occurred, but to determine whether Defendant's belief that they occurred is what motivated it to pursue Plaintiff in state court.

In an effort to cast doubt that Defendant was motivated by a belief that trade secret violations occurred, Plaintiff comes dangerously close to attempting to litigate the merits of the

alleged trade secret violations.[4]  However, Plaintiff does
provide sufficient evidence, outside of the merits of the trade
secret violations, to allow a reasonable jury to disbelieve that
Defendant was motivated by a true belief that trade secret
violations had occurred and may occur again in the future.

For instance, Plaintiff points to the absence of evidence
documenting Defendant's alleged trade secret analysis of
Plaintiff's presentation between the date of the letter
threatening legal action (March 27, 2000) and the filing of the
state lawsuit (June 2, 2000).  This suggests, Plaintiff contends,
that Defendant did not really believe Plaintiff's presentation
contained any trade secrets and only began to search for
disclosures after it learned about her informal complaint with
the EEOC (May 23, 2000).

The only evidence Defendant has provided to document it's
technical and legal review following the March 27 letter is the
testimony of Dr. Han and Mr. Vorous, as well as a few notations
on a desk calender referencing meetings without an indication of

---

[4]    Plaintiff argues that during his deposition, Dr. Han's
analysis was nothing more than "superficial commentary" and that
he failed to mention any of the trade secrets ultimately
identified in the preliminary injunction hearing.  (Plf.'s Memo.
p.51).  The issue, however, is not whether Defendant had
developed the precise theory and arguments it ultimately used in
the preliminary injunction hearing prior to learning about
Plaintiff's contact with the EEOC.  What is relevant to
Plaintiff's retaliation claim is whether Defendant truly believed
there were *any* trade secret violations when it filed the state
lawsuit.

what the substance of those meetings were other than that they
involved the Plaintiff.  (Def.'s Exs. B, C).  Defendant
apparently contends that the alleged communications, memorandum,
and emails related to the trade secret review are all either
protected by attorney-client privilege, attorney work product, or
confidential trade secrets.

    We conclude that the issue of whether Defendant performed a
technical and legal trade secret analysis, as they contend they
did, is an issue of fact that must be determined by the jury.
Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151,
120 S.Ct. 2097, 2110 (2000)(noting that upon consideration of a
motion for judgment as a matter of law, the court must "disregard
all evidence favorable to the moving party that the jury is not
required to believe").  If a jury finds that Defendant did not
pursue an evaluation of Plaintiff's presentation until after they
learned of her informal complaint with the EEOC, they may
reasonably infer that Defendant brought the state suit for a
reason other than a true interest in protecting its trade
secrets.

    Further casting doubt on Defendant's true motive for
pursuing the trade secret claim is the additional "motivating
factors" for bringing the suit that are cited by Defendant in a
letter to the EEOC.  As discussed above in the causal connection
prong of the prima facie case, some of these motivating factors

14

occurred after Plaintiff's informal complaint with the EEOC and more significantly, after the date Defendant allegedly decided to bring the state suit against Plaintiff. (Plf.'s Ex. N; Def.'s Memo. at p.49)  Therefore, it is up to the jury to decide the significance of these seemingly inconsistent statements.

Because we find Plaintiff has cast sufficient doubt on Defendant's legitimate, non-retaliatory reason, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and PHRA claim for retaliation tied to the state lawsuit is denied.

2.  <u>Plaintiff's Contractual Right to Publish</u>

Plaintiff alleges that in retaliation for the complaints she filed with the EEOC and the PHRC, Defendant interfered with her contractual right to publish.  Defendant's retaliatory interference, Plaintiff alleges, consisted of refusing to provide her with needed data, failing to timely provide needed data, refusing to provide timely trade secret review of papers and presentations, and refusing to approve proposed presentations and publications despite knowledge that they did not contain trade secrets.[5] (Plaintiff's Amended Complaint ¶¶ 99-102).

a.  Availability of Data to Plaintiff

There is no dispute that Plaintiff was required to return all Rohm and Haas data in her possession by State Court Order

---

[5]     Because neither party has briefed the issue, we will assume without deciding that these alleged actions are "adverse employment actions" within the protection of Title VII.

15

dated July 11, 2000. (Def.'s Ex. E).   It is further undisputed
that Defendant has subsequently not given Plaintiff access to all
the data she requested.   (Plf.'s Ex. LL; Defendant's Motion for
Summary Judgment at p.26).  What the parties do dispute is
Plaintiff's right of access to Rohm and Haas data.  We find that
because Plaintiff has failed to produce any evidence to establish
her right to Rohm and Haas data, she has not shown that she
suffered an "adverse employment action" by Defendant's refusal to
provide her with all the data she requested.

    Plaintiff bases her "right" to Rohm and Haas data on two
contentions.  First, Plaintiff claims that the State Court's
Order requiring her to return all data was based on a
misrepresentation made by Defendant.  The statement in
Plaintiff's Termination Agreement declaring that Plaintiff has
returned all confidential documents is crossed off with a
notation indicating that this section is covered under the
Agreement and Release.  (Plf.'s Ex. S).  According to Plaintiff,
one of Defendant's Human Resources representatives
"misrepresented" in the State Court that it was her common
practice to cross out this section on the Termination Agreement
when an employee departs with an Agreement and Release.  (Plf.'s
Exs. E, T).  This is a "misrepresentation," Plaintiff contends,
because Defendant has never crossed out this section on the
Termination Agreement.  Despite the fact that Plaintiff reached

16

this conclusion upon review of Defendant's discovery responses, Plaintiff fails to produce any evidence to support this contention.

Whether Defendant has routinely crossed out this section of the Termination Agreement is inapposite to the issue. The notation on Plaintiff's Termination Agreement says that this section is covered under the Agreement and Release. (Plf.'s Ex. S). The Agreement and Release signed by Plaintiff clearly states, "No later than my last day worked at Rohm and Haas, I will return all documents containing confidential or trade secret information, including research notebooks, which I have had in my possession to Rohm and Haas. . . I will retain no copies of such documents in my possession." (Def.'s Ex. A-3). Plaintiff has failed to provide any evidence to rebut this plain language.

Plaintiff's second contention is that despite the plain language of the Agreement and Release, because the Agreement and Release granted her the right to publish, it was "clearly inherently anticipated" that she would be given access to the necessary data. (Plf.'s Memo. at p.43). Though this is clearly the contractual interpretation that Plaintiff wants to apply to the Agreement, she has failed to show that this is the contractual interpretation that Defendant attached to the Agreement prior to her complaints to the EEOC. Other than her assertion that her right to publish makes her right of access to

data self evident, Plaintiff's only evidence that Defendant was
aware and approved of her retaining data after her resignation is
the deposition testimony of Dr. Han.  A close reading of the
excerpt of Dr. Han's testimony reveals that Dr. Han merely
admitted that a paper written by Plaintiff prior to her ACS
presentation could not have been written without reference to the
underlying data which he concluded did not constitute a trade
secret. (Plf.'s Ex. H at pp. 291-93).  This admission is
consistent with Plaintiff's obligation under the Agreement and
Release to return all confidential and trade secret information.

We find that this admission does not support an inference
that it was "inherently anticipated" for Plaintiff to have access
to any data necessary to publish scientific papers.  Because
Plaintiff cannot establish a right of access to any and all Rohm
and Haas data she desires, we cannot find that she suffered an
"adverse employment action" by Defendant's failure to comply with
her every request for data.

b.  Trade Secret Review and Approval of Scientific
Presentations and Publications

Plaintiff alleges that Defendant failed to approve
scientific publications and presentations in retaliation for her
complaints with the EEOC.  However, Plaintiff's Memorandum of Law
in Opposition to Defendant's Motion for Summary Judgment
("Plaintiff's Memorandum") fails to identify these presentations

or publications.  This Court must therefore search the record for evidence to support this contention.

Upon review of the record, we can only conclude that Defendant's alleged failure to approve scientific publications or presentations refers to Defendant's inability to provide trade secret review of eighty-eight slides Plaintiff intended to use in the ACS meeting in Chicago and a presentation at Northwestern University in August 2001.  (Def.'s Ex. A-68).

We find that Plaintiff has failed to show Defendant acted with a retaliatory motive when it was unable to complete trade secret review of the slides in time for these presentations.  As stated above, because Plaintiff has failed to discuss these alleged acts of retaliation in her Memorandum and has therefore not presented any evidence that Defendant acted with retaliatory animus, we can only assume that she is depending on temporal proximity as her causal connection for a prima facie case of retaliation.  Even if temporal proximity alone were enough to establish a prima facie case,[6] Plaintiff has failed to rebut Defendant's legitimate non-discriminatory reasons for its failure to complete the trade secret review.  Defendant has cited the

---

[6]    The Third Circuit has acknowledged that the sufficiency of temporal proximity to establish a causal connection for retaliation depends on the facts of each case.  Farrell, 206 F.3d at 279-81.  Here, Plaintiff has not offered any additional evidence to support her contention that Defendant acted with retaliatory animus.

inability to perform the trade secret review in the short time allotted by Plaintiff, as well as the fact that Dr. Han was hospitalized and subsequently not able to work during this time period.  (Def.'s Memo. at p.27; Def.'s Exs. A-68, B).

For the reasons stated above, Defendant's Motion for Summary Judgment on the issue of Defendant's retaliatory motive for failure to approve scientific publications and presentations, as well as failure to provide timely trade secret review, is therefore granted.


Race Discrimination Under Section 1981

_____Plaintiff alleges Defendant discriminated against her because of her race in violation of 42 U.S.C. § 1981.  Section 1981 protects individuals' rights to make and enforce contracts, which includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."  42 U.S.C. § 1981.

In the absence of direct evidence of discrimination, a claim under section 1981 requires the application of the same burden shifting framework employed in the retaliation claim discussed above.  Jones v. School Dist. Of Philadelphia, 198 F.3d 403, 410 (3rd Cir. 1999).  Because we find that Plaintiff has failed to establish a prima facie case of discrimination based on race we

20

end our analysis there.

 To establish a prima facie case for race discrimination under § 1981 Plaintiff must prove: (1) that she is a member of a protected class; (2) that she suffered some form of adverse employment action; (3) under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated more favorably.  See id.

     The only adverse employment action Plaintiff specifically identified in Count I of her Amended Complaint is the institution of the state lawsuit.  In her Factual Allegations, Plaintiff also identifies several other of Defendant's action which she labels "discriminatory."  Because we find that Plaintiff has failed to establish a prima facie case of discriminatory intent for any of Defendant's actions, summary judgment must be granted in favor of Defendant on this claim.

 In support of her allegation that the state lawsuit was discriminatory, Plaintiff states that her internet research revealed that Defendant had never sued any other employee in connection with trade secret disclosures.  (Plf.'s Depo. p.111 at Def.'s Ex. A).  To the contrary, Defendant has in fact identified non-Asian employees whom it sued based on the belief that they made improper disclosures.  (See Def.'s Exs. C, D).  Plaintiff's only response is the unsupported conclusion that these other

lawsuits are "irrelevant." (Plf.'s Depo. pp.112-116 at Def.'s Ex. A). To the extent that Plaintiff is inviting us to consider whether the material in her presentation actually contained trade secrets, as stated above, we decline to visit the merits of the trade secret claim that is still awaiting a final injunction hearing in State Court. Because Plaintiff has offered no other evidence that would allow a rational fact finder to conclude that Defendant acted with discriminatory intent when it brought the state lawsuit, summary judgment is granted in favor of Defendant on this claim.

In a related vein, Plaintiff's Memorandum claims that Defendant has acted in a discriminatory manner because Plaintiff knows "of no other non-Asian American who has ever been instructed by [Defendant] that it would not authorize any reference to published data in a scientific presentation that otherwise dealt with work performed at Rohm and Haas." (Plf.'s Memo. at p.39). Plaintiff is apparently arguing that Defendant's failure to pre-authorize her presentation is itself discriminatory. As evidence of Defendant's discriminatory animus, Plaintiff offers two examples where she concludes Rohm and Haas scientists were permitted to publish non-public information. (Plf.'s Exs. EE, FF, GG, HH). Once again, Plaintiff is attempting to have this Court decide that the material in her presentation was published information and

therefore, not the subject of any trade secrets.  Because
Plaintiff has no other evidence that she has been treated less
favorably than similarly situated individuals, she has not
established a prima facie case of discrimination based on
Defendant's failure to authorize her presentation.

Plaintiff also makes general allegations that Defendant's
interpretation of the Agreement and Release, particularly their
right to review her scientific communications, is "outrageous"
and "blatantly discriminatory." (Plf.'s Memo. at p. 66-67).
Plaintiff's Memorandum further cites Defendant's "taking
affirmative action to enforce its claimed right of access and
review of all of Dr. Lin's communications with her current
employer" as part of this discriminatory action.[7]

All of this conduct is discriminatory, Plaintiff concludes,
because Defendant "has never subjected a white former employee to
the kind of discriminatory scrutiny that it now seeks to impose
on [Plaintiff]."  Plaintiff's only "evidence" of her disparate
treatment is her own belief that no other white male former
employee is subject to the same amount of scrutiny.  Such
unsupported conclusory statements are insufficient to establish
discriminatory intent.  See Jones v. School Dist of

---

[7]    This allegedly "discriminatory action" is actually
Defendant's discovery requests pertaining to the state lawsuit.
(Plf.'s Memo. at p.66; Plf.'s Affidavit ¶¶ 7, 8).

Philadelphia, 19 F.Supp.2d 414, 421 (E.D.Pa. 1998).

Because Plaintiff has failed to present sufficient evidence
from which an inference of discrimination on the basis of race
can be drawn, we grant Defendant's Motion for Summary Judgment on
Plaintiff's Section 1981 claim.[8]


Defamation

Count VI of Plaintiff's Amended Complaint alleges Defendant
defamed Plaintiff in connection with two patent applications and
other unidentified "published defamatory remarks." (Plf.'s
Amended Complaint p.24). To establish a claim for defamation
under Pennsylvania law, a plaintiff must prove: "(1) the
defamatory character of the communication; (2) its publication by

---

[8]    Plaintiff asserts that she has identified "discrete
incidents of overt efforts by [Defendant] to deprive her of the
right to make and receive contractual benefits and privileges in
the same manner as similarly situated white employees or former
employees." As stated above, Plaintiff has not identified
similarly situated persons who have been treated more favorably.
Her attempt to compare herself to others requires the Court to
evaluate her publications to determine whether they contain trade
secrets, which we declined to do. Otherwise, Plaintiff has
merely reiterated her subjective belief that she is being treated
differently. (See Plf.'s Dep. p. 163, 171, 176, 180 at Def. Ex.
A).
    Plaintiff cannot string together several actions by the
Defendant for which she has no evidence of discriminatory intent
and claim that taken as a whole they must be motivated by
discrimination. Taking the record as a whole, we find that
Plaintiff has merely demonstrated a history of disagreement
between herself and Defendant without evidence that it is in any
way connected to her race.

the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion."  42 Pa.C.S.A. § 8343(a).

    1.  <u>Patent Applications</u>

    In Count VI of her Amended Complaint Plaintiff alleges she was defamed by patent applications drafted and filed by Defendant.  These patent applications are defamatory, according to Plaintiff, because: (1) they listed multiple co-inventors whom Plaintiff contends did not contribute to the invention, and (2) Plaintiff was listed near the bottom of the list of inventors on the applications even though she claims she was the sole inventor.[9]

    We agree with Defendant that as a matter of law the patent applications are incapable of having a defamatory meaning.  It is the function of the Court to decide, in the first instance,

---

    [9]    In her deposition Plaintiff identified two patent applications which she alleges are defamatory.  (Plf.'s Depo. pp.225-26 at Def.'s Ex. A).  It should be noted that it is undisputed that the inventors were listed in alphabetical order on the patent applications.  (Def.'s Exs. A-29, 33).  Defendant has also provided evidence that there is no legal significance to the order in which names on a patent application are listed and many corporations routinely list inventors alphabetically. (Def.'s Ex. J).  Plaintiff has not provided any evidence to the contrary.

whether the communication complained of is capable of a defamatory meaning.  <u>Remick v. Manfredy</u>, 238 F.3d 248 (3rd Cir. 2001).  Under Pennsylvania law, a communication is defamatory if "it tends to harm the individual's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  <u>Tucker v. Fischbein</u>, 237 F.3d 275, 282 (3rd Cir. 2001) (quoting <u>Corabi v. Curtis Publishing Co.</u>, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971)).

Plaintiff has offered no evidence to support a finding that the patent applications have harmed her reputation, lowered her estimation in the community, or otherwise deterred persons from dealing with her.  <u>Id.</u>  It appears to us that Plaintiff's complaint regarding the patent applications is only that she did not receive all of the credit she alleges she deserves. Plaintiff has failed to cite any authority that supports a claim for defamation where the complained of communication merely failed to advance the plaintiff's reputation as much as she would have liked.  We therefore find that, as a matter of law, the patent applications are incapable of having a defamatory meaning.

     2.  <u>"Published Defamatory Remarks"</u>

In Count VI of her Amended Complaint, Plaintiff alleges that Defendant has "otherwise published defamatory remarks and statements."  When asked to identify these allegedly defamatory remarks in her deposition, Plaintiff identified an article from

26

an internal Rohm and Haas publication ("Formula" article) as well as two emails authored by Dr. Han. (Plf.'s Dep. at Def's Ex. A, p.250).

We find that Plaintiff's claim of defamation, as it relates to the internal publication and the emails, is barred by the statute of limitations.[10]

---

[10]    Under Pennsylvania law, claims for defamation are subject to a one year statute of limitations. 42 Pa.C.S.A. § 5523(1). In her deposition, Plaintiff admits that she was a aware of the "Formula" article by September 2000. (Def.'s Ex. A at p.505). Plaintiff was also aware of the first email by July 5, 2000 and the second email by April 2001. (Id. at 507-09). Plaintiff's Complaint in this case was not filed until June 2002, therefore, her claims for defamation related to the "Formula" article and the two emails are time-barred.

We further find, that even if Plaintiff's claims were not time-barred, they would fail as a matter of law. On a motion for summary judgment in cases where the nonmoving party ultimately bears the burden of persuasion at trial, the moving party may show that he is entitled to judgment a matter of law by demonstrating that the nonmoving party's evidence is insufficient to establish his claim. Celotex Corp. V. Catrett, 477 U.S. 317 (1986). Once the Defendant makes this showing, it is incumbent upon the Plaintiff to bring evidence that disputes this contention to the attention of the Court. Id.

Upon reviewing the record, it is clear to the Court that Plaintiff lacks the evidence to support the essential elements of her defamation claim as it relates to the emails and the article identified in her deposition. Plaintiff's Memorandum of Law does not even address the emails or the article.

To the extent Plaintiff attempts to support her defamation claim with the affidavit of former Rohm and Haas colleague, Dr. Wu, we find this evidence to be insufficient. (Plf.'s Ex. AA). Dr. Wu's affidavit does not identify any specific defamatory statements or remarks made by Defendant. The affidavit simply reveals that Dr. Wu and other unidentified former and current Rohm and Haas employees are aware of Plaintiff's involvement in a state lawsuit pertaining to trade secret disclosures. We find that this affidavit is wholly insufficient to support Plaintiff's claim for defamation.

In her Memorandum of Law Plaintiff also alleges that Dr. Han defamed her by discussing the state lawsuit and telling other Rohm and Haas employees that she made unauthorized disclosures of trade secrets.  (Plf.'s Memo. at p.36-37).  Under Pennsylvania law, a statement imputing business misconduct is defamation *per se*.  <u>Syngy, Inc. v. Scott-Levin, Inc.</u>, 51 F.Supp.2d 570, 580 (E.D.Pa. 1999).  If the Court finds that the words allegedly used by defendant are defamatory *per se*, the Plaintiff is relieved of the requirement of proving special damages[11] and need only show general damages.  <u>Id.</u> 580-81.

Plaintiff asserts that the allegation that she is "incapable of maintaining confidential trade secret information is a serious accusation of business misconduct." (Plf.'s Memo. at p. 62).  However, other than the scientific community's allegedly general knowledge of Plaintiff's involvement in the state lawsuit, Plaintiff only points to Dr. Han's alleged discussions with two Rohm and Haas employees about the state court litigation as the basis for her defamation claim.  It is unclear whether Dr. Han said anything other than the fact that the litigation was ongoing and that it involved Plaintiff disclosing trade secrets, which are true statements.  <u>See</u> <u>U.S. Healthcare Inc. v. Blue Cross of</u>

---

[11]    Special damages requires proof of a specific monetary or out-of-pocket loss as a result of the defamation.  <u>Syngy, Inc.</u> 51 F.Supp.2d at 580 (citing <u>Restatement (Second) of Torts § 575</u> (1976 Main Vol.).

Greater Philadelphia, 898 F.2d 914, 923 (3rd. Cir. 1990); 42
Pa.C.S.A. §8343(b)(1) (truth is a defense against a claim for
defamation).  However, even assuming Dr. Han made defamatory
remarks concerning Plaintiff, we find that Plaintiff has failed
to demonstrate the requisite damages to make out a defamation
claim.

Plaintiff claims that as a result of the alleged defamation,
her former colleagues have disassociated themselves from her.
(Plf.'s Memo. at p.36, 61).  Specifically, Plaintiff alleges that
her colleagues declined her invitations to be co-authors with her
on two scientific publications.  Id. at 36-37.  Upon review of
the deposition testimony of two of Plaintiff's former colleagues,
it is clear that their decisions not be co-authors with Plaintiff
was not a result of any allegedly defamatory statements made by
Defendant.  Dr. Peter D. Klugherz clearly states that he did not
want to be a co-author because he was not interested in the
publications and publication was simply not a goal of his.
(Plf.'s Ex. V at pp. 67, 79).  Dr. Michael B. Clark testified
that he decided not to be a co-author based on Plaintiff's
involvement in the state litigation, and not because of anything
specifically said by Defendant. (Plf.'s Ex. W at pp.30-31).  Dr.
Clark further testified that Plaintiff is "still respected in the
Analytical Department" and her reputation was not part of the
reason for him for not wanting to be her co-author.  Id. at 35.

It is clear that any discussion Dr. Han had with Plaintiff's co-employees regarding the state lawsuit did not cause them to disassociate themselves from Plaintiff. Plaintiff has failed to show that she has suffered any harm as a result of these discussions, therefore, her claim for defamation must fail as a matter of law.

Invasion of Privacy/False Light

In Count VII of her Amended Complaint, Plaintiff asserts a claim for false light invasion of privacy. The allegations for invasion of privacy largely mirror Plaintiff's allegations in her defamation claim regarding the patent applications. In essence, Plaintiff claims that Defendant placed her in the false light of being a co-inventor rather than the sole inventor of the subject matter of the two patent applications.

The tort of false light invasion of privacy is defined as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

>       (b) the actor had knowledge of or acted in
>       reckless disregard as to the falsity of the
>       publicized matter and the false light in which the
>       other would be placed.

Curran v. Children's Service Center, 396 Pa.Super. 29, 39, 578
A.2d 8, 12 (1990) (quoting Restatement (Second) of Torts § 652E).
The tort applies "only when defendant knows that the plaintiff,
as a reasonable man, would be justified in the eyes of the
community in feeling seriously offended and aggrieved by the
publicity." Id.

Plaintiff's claim for false light invasion of privacy must
fail as a matter of law because Plaintiff has provided no
evidence to support the element of knowledge or reckless
disregard of falsity on the part of Defendant. In fact, all of
the persons named as co-inventors on the patent applications at
issue signed a sworn Declaration stating that he was an inventor.
(Def. Exs. A-30; A-32). Because Plaintiff has failed to provide
any evidence to suggest Defendant acted with reckless disregard
when it filed the allegedly false patent applications, we must
grant Defendant's motion for summary judgment on Count VII of
Plaintiff's Amended Complaint.[12]

_____

[12] Furthermore, we are skeptical of the applicability of
the false light invasion of privacy theory to the patent
applications. It is not surprising that Plaintiff has provided
no case citation to support the proposition that it is highly
offensive to a reasonable person to be named as a co-inventor on

Intentional Infliction of Emotional Distress

_____ Count VIII of Plaintiff's Amended Complaint alleges that the conduct of Defendant intended to and did inflict severe emotional distress on Plaintiff.  The Pennsylvania Supreme Court has neither accepted nor rejected this tort as part of Pennsylvania law.  Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 527 A.2d 988 (1987).  The Pennsylvania Superior Court has held, however, that a claim for intentional infliction of emotional distress (IIED) will lie where the conduct complained of is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hunger v. Grand Cent. Sanitation, 447 Pa.Super. 575, 584,670 A.2d 173, 177 (1996)(quoting Restatement (Second) of Torts §46 cmt.d (2003)).  Generally, IIED will be recognized where the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id.  A plaintiff must also establish physical injury or harm and prove the existence of the alleged emotional distress by "competent medical evidence."

a patent application.  An exhaustive search of the relevant case law has revealed no such authority.  In fact, we have not uncovered a single case where a plaintiff has recovered under the theory of false light invasion of privacy for failure to receive proper recognition for an achievement.

Robinson v. May Dept. Stores Co., 246 F.Supp.2d 440, 444 (E.D.Pa. 2003); Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 527 A.2d 988 (1987).

In her deposition, Plaintiff identifies the following as the conduct that inflicted severe emotional distress: (1) an alleged threat by Dr. Han in March 2000 that he would destroy Plaintiff's career; (2) Defendant's failure to review 88 slides which caused Plaintiff to cancel her presentation to be given in Chicago in August 2001; (3) the alleged abandonment by her former colleagues as evidenced by their decision not to participate as coauthors with her on a paper; (4) alleged lies told by Rohm and Haas witnesses in the state court proceedings. (Plf.'s Depo. pp.344-48 at Def.'s Ex. A).

We find that Plaintiff's claim of intentional infliction of emotional distress fails as a matter of law because none of the conduct identified by Plaintiff rises to the level of outrageousness necessary to recover for IIED under Pennsylvania law.[13]

It is extremely rare to find conduct in the employment context that rises to the level of outrageousness necessary to recover for IIED under Pennsylvania law. See Imboden v. Chowns

---

[13]    A Pennsylvania tort law treatise warns that "precedent to date supports the conclusion that the Pennsylvania courts will exercise great caution in allowing recovery for intentional infliction of emotional distress." 3 West's Pennsylvania Practice, Tort's: Law and Advocacy § 11.7 (2002).

Communications, 182 F.Supp.2d 453 (E.D.Pa. 2002) (finding that
retaliation for complaining about sexual harassment is
insufficient basis for claim of IIED); Fugarino v. University
Services, 123 F.Supp.2d 838 (E.D.Pa. 2000) (male supervisor's
alleged treatment of female employee was not sufficiently
outrageous to support her claim for IIED where supervisor had
allegedly publicly reprimanded employee, disparaged her
professionally and personally to others, searched her desk at
work, asked her out on dates, and made single obscene phone call
to her at work); Landmesser v. United Air Lines, Inc., 102
F.Supp.2d 273 (E.D.Pa. 2000)(employer's purportedly embarrassing
manner of terminating employee for violation of company policy
and circulation of rumors about employee and her alleged
misconduct did not support a claim for IIED).

 None of the conduct identified by Plaintiff can be said to
"go beyond all bounds of decency" so as to be regarded as
"atrocious, and utterly intolerable in civilized society."
DiSalvo v. Lower Merion High School Dist., 158 F.Supp.2d 553
(E.D.Pa. 2001).  We therefore grant Defendant's motion for
summary judgment on Count VIII of Plaintiff's Amended Complaint.


Breach of Contract
 Count IX of Plaintiff's Amended Complaint alleges Defendant
breached the terms and conditions of the EEOC Settlement

Agreement and the Agreement and Release.  During Plaintiff's
deposition, Defendant asked Plaintiff to identify which
provisions of the two Agreements she contends were breached by
the Defendant.  Plaintiff's attorney objected to the question on
the basis that it called for Plaintiff to provide legal
interpretations but allowed Plaintiff to answer as best she
could.  (Plf.'s Dep. p.411 at Def. Ex. A).  Thereafter Plaintiff
identified several provisions she believed Defendant had
breached. (Id. at pp.411-50).  Plaintiff's Memorandum of Law
focuses the breach of contract claim on two contractual
provisions.

The first provision identified by Plaintiff requires
Defendant to "pay out-of-pocket expenses and reasonable
compensation" for time spent in assisting Defendant in the
prosecution of patents.  (Def.'s Ex. A-3B). We find that
Plaintiff has failed to establish a breach of contract claim as
to this provision.

To make out a breach of contract claim under Pennsylvania
law, Plaintiff must prove 1) the formation of a contract, 2) the
terms of the contract, 3) performance by the plaintiff, 4) breach
by the defendant and 5) damages.  Momah v. Albert Einstein
Medical Center, 978 F.Supp. 621, 636 (E.D.Pa. 1997).  Plaintiff's
claim fails under the third, fourth, and fifth elements.

In her Memorandum of Law, Plaintiff identifies a letter

dated September 18, 2001 (Plf.'s Ex. KK) in which Defendant
requested that Plaintiff agree to review two patent applications,
sign the corresponding Declaration, and sign a Confidentiality
Agreement pertaining to the two applications.  The letter also
indicated that it was Defendant's position that reading the
applications and signing the corresponding declarations were
Plaintiff's contractual obligations for which she would not be
compensated.  This letter is the only evidence Plaintiff offers
in support of her breach of contract claim.  (Plf.'s Memo. at
pp.42, 69-70).  Plaintiff fails to show that she performed any
work in aid of the prosecution of these patents for which she
should be reasonably compensated.  Therefore, Plaintiff has not
demonstrated that she has sustained any damages as a result of
Defendant's alleged breach.

The second provision which Plaintiff alleges Defendant
breached requires Plaintiff, Defendant, and Defendant's employees
to "use their best efforts to refrain from making any disparaging
comments about the other."  (Def. Ex. A-3).  Plaintiff makes no
argument in support of this claim and simply references her
arguments under her defamation and false light claims.  Because
we found that Plaintiff had not established the damages component
of her defamation claim, her breach of contract claim must also

fail for want of damages.[14]  Defendant's motion for summary judgment on Count IX of Plaintiff's Amended Complaint is therefore granted.

## **Conclusion**

An appropriate order follows.

---

[14]    Plaintiff's false light claim was comprised entirely of conduct addressed in the defamation claim.  Though we didn't reach the damages component of Plaintiff's defamation claim as it related to the patent applications, we find that the discussion of the applications' incapability of carrying defamatory meaning equally applies to any allegation that the applications are "disparaging."

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


DR. MANHUA MANDY LIN,                  :      CIVIL ACTION
                                       :
        Plaintiff,                     :      03-3692
                                       :
    v.                                 :
                                       :
                                       :
ROHM AND HAAS COMPANY,                 :
                                       :
        Defendants.                    :

## ORDER

AND NOW, this       day of November, 2003, upon consideration of Defendant Rohm and Haas Company's Motion for Summary Judgment, Plaintiff's Response, and Defendant's Reply thereto, it is hereby ORDERED, for the reasons stated in the accompanying Memorandum, as follows:

1) Defendant's Motion for Summary Judgment is GRANTED as to Counts I, IV, V, VI, VII, VIII, and IX of Plaintiff's Amended Complaint; and

2) Defendant's Motion for Summary Judgment is DENIED as to Counts II and III of Plaintiff's Amended Complaint.

IT IS FURTHER ORDERED that Counts I, IV, V, VI, VII, VIII, and IX of Plaintiff's Amended Complaint are DISMISSED WITH PREJUDICE.

BY THE COURT:

_____
J. CURTIS JOYNER, J.