## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

DR. MANHUA MANDY LIN                    :
                                        :
            Plaintiff                   :
                                        :
        vs.                             :        CIVIL ACTION NO.  02-cv-3612
                                        :
ROHM AND HAAS COMPANY                   :
                                        :        JURY TRIAL DEMANDED
            Defendant                   :

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLANTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT REGARDING BREACH OF CONTRACT**

By Order dated November 13, 2003 (and entered November 17, 2003) this Court granted in part and denied in part Defendant Rohm and Haas Company's Motion for Summary Judgment.  By this Motion, Plaintiff Dr. Manhua Mandy seeks reconsideration of the Court's dismissal of Plaintiff's breach of contract claim to correct a clear error of law and to prevent manifest injustice.  It is submitted that genuine issues of material fact are established by the record considered by the Court with respect to two elements of the breach of contract claim:

     1.    Defendant's breach of its obligation to compensate Plaintiff for assisting in the prosecution of patents applications, and

2.    Defendant's violation of Plaintiff's contractual right to publish.


It is respectfully submitted that the Court's Opinion in support of its Order entering Summary Judgment against Plaintiff on both of these claims demonstrates that relevant matters of record were overlooked, misinterpreted or not interpreted in the light most favorable to the non-moving party.   Plaintiff therefor requests that the Court reconsider its Order with respect to these issues to prevent manifest injustice.

## ARGUMENT

I.    The Court Overlooked or Misinterpreted the Evidence of Record that Dr. Lin Provided Services at the Request of Rohm and Haas in Support of the Prosecution of Patent Applications

In the Amended Complaint, Dr. Lin asserts a claim for breach of contract that includes a breach of Rohm and Haas' obligation to compensate Dr. Lin for the time spent assisting Rohm and Haas in the prosecution of patent applications.  (Defendant's Exhibit A-3B, "Departing Employee Notice and Acknowledgment of Continuing Obligations") The relevant language of the agreement provides that

"Rohm and Haas is entitled to your complete cooperation in executing papers required for filing and prosecuting any patent applications and for establishing Rohm and Haas ownership.  If it is necessary for you to do any of these things after termination, we will pay out-of-pocket expenses and reasonable compensation for the time spent in review of papers and other aspects of such cooperation."


The language of the agreement requires Dr. Lin to cooperate in filing and prosecuting patent applications. Specifically, the agreement imposes the obligation on Rohm and Haas to pay reasonable compensation "for time spent in review of papers or

other aspects of such cooperation," clearly anticipating that Dr. Lin would be compensated for more than simply signing her name to a patent application.

As an inventor, Dr. Lin has an uncompromising obligation to honestly and completely certify that the contents of a patent application are true. That is exactly the "cooperation" that Rohm and Haas presumably expects of an inventor when requesting their cooperation in prosecuting a patent. As a matter of law, Dr. Lin cannot be party to conduct involving dishonesty or misrepresentation. (37 C.F.R. § 10.23) In the first instance, it is the obligation of the inventor to ensure the accuracy of the claims and specifications of the application filed for his/her invention. The contractual obligation between Rohm and Haas and Dr. Lin does not and cannot redefine Dr. Lin's obligation as the inventor under law.

Fundamentally, the record currently before the Court reflects a divergence of opinion about the intent of the contractual obligations assumed by Dr. Lin and Rohm and Haas. Rohm and Haas apparently interprets Dr. Lin's duty to "cooperate" as essentially a duty to sign off on anything that the Rohm and Haas Patent Department prepares and puts in front of her. Dr. Lin interprets her obligation of "cooperation" as an independent obligation to fulfill her role as an inventor in the process of prosecuting a patent application. The fact that she insists on reviewing the relevant data to support the claims and specifications of a patent for her invention is not a failure of cooperation but, rather, an integral part of her duty to fulfill that obligation.

In its Opinion, the Court specifically found that, based on the record presented in conjunction with the Motion for Summary Judgment, "Plaintiff fails to show that she performed any work in aid of the prosecution of these patents for which she should be

reasonably compensated." Opinion, p. 36. In that context, the record before the Court includes the following:

1.      Two patent applications for Dr. Lin's inventions filed with the U.S. Patent Office in September 2000 including:

 a.      Patent application for "Methods for Producing Unsaturated Carboxylic Acids and Unsaturated Nitriles," DN A01105 (Defendant's Exhibit A-77)

 b.      Declaration and Power of Attorney, DN A1105 (Defendant's Exhibit A-30)

 c.      Patent application for "Recycle Process," DN A1106 (subsequently, Patent Number US 2002-0123647A1) (Defendant's Exhibit A-76)

 d.      Declaration and Power of Attorney, DN A01106 (Defendant's Exhibit A-32)

2.      Correspondence from Paul Chirgot on behalf of Rohm and Haas Company, September 18, 2001 (Plaintiff's Exhibit KK)

3.      Correspondence from Dr. Lin, September 24, 2001, (with Summaries of Charges, Payments and Balance) (Defendant's Exhibit A-21)

4.      Correspondence from Dr. Lin, March 14, 2003 (with Invoice for Professional Services) (Defendant's Exhibit A-25)

5.      Excerpts of Deposition of Dr. Lin (Defendant's Exhibit A, pp. 143-204)

6.      Affidavit of Dr. Lin, Paragraph 9.

These documents and exhibits demonstrate that Rohm and Haas filed a series of patent applications (for example, DN 99-040, DN 99-064, DN AO1105, DN AO1106)

(Defendant's Exhibit A-24) for which Rohm and Haas requested assistance from Dr. Lin to prosecute the applications. The record also provides evidence that Rohm and Haas filed two of the patent applications (DN AO1105 and DN AO1106) for inventions attributed to Dr. Lin and that these applications were filed more than a year before she was ever notified that the applications had been filed. (Plaintiff's Exhibit KK) When Rohm and Haas requested that Dr. Lin simply "sign off" on the patent application, the request was accompanied by terms and conditions that were inconsistent with Dr. Lin's existing contractual relationships. (See, Plaintiff's Exhibit KK) As explained by Rohm and Haas, although Dr. Lin's assistance was requested, before she would be permitted to even see the patent application for her own invention (contrary to U.S. patent law) Rohm and Haas required that Dr. Lin sign a proposed Confidentiality Agreement. The proposed Confidentiality Agreement (attached to Plaintiff's Exhibit KK) redefines and expands the term "Confidential Information" at the very time that Dr. Lin and Rohm and Haas were disputing the definition of that term in the Preliminary Injunction hearing. Further, the Confidentiality Agreement, among other things, required that Dr. Lin return all copies of the patent application for her own invention, a restriction that is also contrary to law. Moreover, the new terms imposed by Rohm and Haas required that Dr. Lin cooperate in the prosecution of the patent application without compensation. (Exhibit KK) These terms fundamentally changed the contractual relationship set forth in the existing agreements whereby Rohm and Haas agreed to compensate Dr. Lin for "out-of-pocket expenses" and for "time spent in the review of papers and other aspects of such cooperation." Dr. Lin refused to agree to the newly imposed terms.

Dr. Lin expressed her complete willingness to cooperate under the existing terms of her contractual agreement with Rohm and Haas. In fact, in furtherance of her obligation to cooperate in the prosecution of patent applications, Dr. Lin obtained and reviewed substantial documentation so as to assure herself that her "cooperation" was consistent with her obligations to the U.S. Patent Office as well as to Rohm and Haas. (See, e.g., Defendant's Exhibit A-24) As a result of cooperating in the prosecution of the Patent Application DN 99-040 for her invention, and pursuant to her contractual right, Dr. Lin submitted an invoice for the value of the time spent and out-of-pocket expenses incurred (Defendant's Exhibit A-24) in the amount of Three Thousand and Five ($3,005) Dollars. Rohm and Haas paid the charges in full.[1]

Dr. Lin then invoiced Rohm and Haas in the amount of Eight Thousand Five Hundred and Fifty One ($8, 551) Dollars for the time spent and out-of-pocket expenses incurred for filing Patent Application DN 99-064. (Defendant's Exhibit A-24) Rohm and Haas reimbursed her in the amount of Two Hundred and Fifty ($250) for those services, obviously leaving a balance due.[2]

Dr. Lin subsequently invoiced Rohm and Haas in the amount of Six Thousand Five Hundred and Seventy Two ($6,572) Dollars for the time expended and out-of-pocket costs incurred for filing the foreign Patent Applications DN 99-040 and DN 99-064. Rohm and Haas refused to reimburse Dr. Lin for any of that time and costs. Dr. Lin invoiced Rohm and Haas in the amount of Nine Hundred ($900) for her cooperation and

---

[1] Patent Application DN 99-040 was filed on January 4, 2001. The patent application was published on January 24, 2002 as Patent Application No. 2002-0010365.
[2] Patent Application DN 99-064 was filed on October 2, 2000. A patent was issued on that application as Patent No. 6653253 (issued 11/25/03).

out-of-pocket expenses with respect to the filing of Patent Applications DN AO1105 and DN AO1106. Rohm and Haas refused to reimburse Dr. Lin for any of those services.

Rohm and Haas also requested Dr. Lin's "cooperation" in prosecuting Patent Applications 09-962487 and 09-962,988. (Defendant's Exhibit A-25) Unfortunately, Dr. Lin discovered that by that request, Rohm and Haas was simply attempting to have her incur costs and spend time and effort to no avail. At the time that Rohm and Haas requested that Dr. Lin invest her time and expend her resources for cooperation in the prosecution of those patents, (Plaintiff's Exhibit KK) the applications had already either been abandoned or dismissed. That fact was not disclosed to Dr. Lin. The fact that Dr. Lin was requested to provide services with respect to patent applications for her inventions that had already been abandoned and/or dismissed by the U.S. Patent Office does not relieve Rohm and Haas of the obligation to pay for the cooperation and out-of-pocket expenses incurred by Dr. Lin at Rohm and Haas' request. All of the foregoing is supported in the record by the testimony of Dr. Lin (Exhibit A, N.T. Lin pp. 143-204; Affidavit of Dr. Lin)

In the opinion granting the Motion for Summary Judgment, this Court concluded that the record was barren of any evidence that would support the existence of a genuine issue of material fact as to whether Dr. Lin performed any work pursuant to her agreement to cooperate with Rohm and Haas in the prosecution of patent applications for her inventions. (Opinion of the Court p. 35) In fact, as noted herein, there is substantial evidence that Dr. Lin provided services in the furtherance of the prosecution of the patent applications at Rohm and Haas' request. There is no provision in the agreement that provides that she will only be paid if a patent is issued. There is no provision that

requires her to sign a patent application in violation of her obligations under patent law. The agreement does provide, however, that she is to be paid for her "complete cooperation" in prosecuting any patent applications. The record confirm that, at the request of Rohm and Haas, she did, in fact spend time in the review of papers and other aspects of the prosecution of multiple patent applications. The record also clearly provides an evidentiary foundation for Dr. Lin's claim that Rohm and Haas, by refusing to pay for her out-of-pocket expenses and time invested in the prosecution of patent applications, breached the contract and caused her to suffered substantial damages as a result.

The Court is clearly conversant with the standards to be applied when ruling on a Motion for Summary Judgement.  It is not necessary for the parties to fully satisfy their burden of proof in the context of a Motion for Summary Judgement.  All that is required is a showing, when all facts and reasonable inferences are drawn in favor of a non-moving party, that there exists a genuine issue of material fact with respect to the claim at issue.

The record in respect to the Motion for Summary Judgment, when viewed in the light most favorable to Dr. Lin, clearly discloses the existence of a contractual agreement (Defendant's Exhibit A-3) requiring Rohm and Haas to pay out-of –pocket expenses and reasonable compensation for Dr. Lin's cooperation in the filing and prosecution of patent applications for her inventions.  The record also clearly provides evidence that Dr. Lin performed services pursuant to that contract at the request of Rohm and Haas (Defendant's Exhibit A, N.T. Lin, pp. 143-204; Exhibit A-24; Exhibit A-25; Plaintiff's Exhibit KK) and has obtained patent protection as a result of her efforts. In fact, the

record establishes that Rohm and Haas made partial payment for the services performed by Dr. Lin.  (Exhibit D-24; Exhibit A, N.T. Lin, p. 145, 146)  Finally, the record contains evidence that Rohm and Haas failed to pay Dr. Lin for a substantial portion of the services rendered. (Defendant's Exhibit A 24; Defendant's Exhibit A, N.T. Lin, pp. 143-204)

It is not the role of the Court to determine whether the services performed by Dr. Lin were satisfactory to Rohm and Haas or otherwise substantively fulfilled the terms of the contract. That is an issue for the trier of fact.  To the extent that the Court determined that there was no evidence in the record to raise an issue of fact as to whether services were performed by Dr. Lin in conjunction with the contract, the conclusion was based on an oversight or a misunderstanding or misinterpretation of the record. The record clearly demonstrates a genuine issue of material fact as to whether Rohm and Haas breached its contractual agreement to pay Dr. Lin for the services she performed in assisting in the prosecution of patent applications for her inventions at the request of Rohm and Haas.

Although the observation is perhaps premature in that it anticipates arguments that may be raised by Defendant, there is no basis to claim that the arguments above were not sufficiently articulated in the original response to Defendant's Motion for Summary Judgment. Plaintiff does not concede that the issues were not properly raised but even if the Plaintiff's original memorandum of law failed to fully explain the matters of record, the absence of fully articulated grounds for denial of a Motion for Summary Judgment does not permit the Motion to be granted "by default." Even in the absence of any response to a motion for summary judgment, Local Rule 7.1 provides that the motion must be resolved pursuant to the provisions of Fed.R.Civ.P 56(c). In other words, so long

as the record contains evidence that, when view in the light most favorable to the non-moving party, discloses the existence of a genuine issue of material fact, summary judgment is not appropriate.

It is respectfully submitted that the decision of the Court that the record failed "to show that [Dr. Lin] performed any work in aid of the prosecution of these patents" is clearly erroneous. Plaintiff respectfully requests that the Court reconsider its decision to grant Defendant's Motion for Summary Judgement on this issue and to allow the issue to proceed to trial where the matter can properly be resolved by a finder of fact.

2.    **The Court Overlooked or Failed to Interpret the Evidence in the Light Most Favorable to Dr. Lin with Respect to her Right to Publish**

In response to Defendant's Motion for Summary Judgement, this Court determined that there were no genuine issues as to any material fact that Rohm and Haas retaliated against Dr. Lin by interfering with her contractual right to publish. The Court concluded that Dr. Lin had not demonstrated a genuine issue of material fact with respect to her contractual right to publish based upon Rohm and Haas data.

The evidence of record that is relevant to this issue is as follows:

1.    The EEOC Settlement Agreement (Defendant's Exhibit A-2).

2.    The "Agreement and Release" and attachments (Defendant's Exhibit A-3)

3.    Affidavit of Dr. Manhua Mandy Lin

4.    Deposition Testimony of Dr. Scott Han (Plaintiff's Exhibit H)

5.    Dr. Lin's Termination Agreement (Plaintiff's Exhibit S)

The foregoing matters of record raise a genuine issue of material fact as to whether Dr. Lin had a contractual right to access Rohm and Haas data for the purpose of

preparing scientific presentations and publications.  Further, there is a genuine issue of

material fact as to whether Rohm and Haas denied that right in retaliation for Dr. Lin's

informal complaint to the EEOC.

The parties agree on the various documents that make up the written agreements

defining Dr. Lin's relationship to Rohm and Haas upon termination of her employment.

The documents also clearly explain the context in which they were drafted.  The

termination of Dr. Lin's employment was part and parcel of a negotiated settlement of a

charge of unlawful discrimination lodged by Dr. Lin against Rohm and Haas. The

documents that record the termination terms are an EEOC Settlement Agreement

(Defendant's Exhibit A-2) and an Agreement and Release (Defendant's Exhibit A-3).

Rohm and Haas asserts in support of its Motion for Summary Judgment that one of the

central terms of the termination agreements requires Dr. Lin to "return all Rohm and

Haas documents in her possession." A review of the documents suggests otherwise.

If the return of all Rohm and Haas documents is a key component of the

negotiated settlement of Dr. Lin's claim of discrimination, one would expect some

reference to that obligation in the EEOC Settlement Agreement. Although all parties

agree that the EEOC Settlement Agreement was the product of a lengthy mediation, it is

obvious that there is not a single reference to any obligation to return all Rohm and Haas

documents. Rather, to the contrary, there is a specific reference to Dr. Lin's **right** to

publish scientific papers based on the work she did at Rohm and Haas. (Defendant's

Exhibit A-2, Para. 7.I) The right to publish was then reaffirmed in the section of the

subsequent Agreement and Release entitled "**Payments and Benefits <u>Received</u> by Dr.**

**Lin** upon execution of this Agreement." (Emphasis added). Only the most strained

interpretation of that clause would suggest that the parties negotiated for a "benefit" that was no different than the situation involving every other departing employee.  Only the most strained interpretation of that clause would suggest that the parties intended that Dr. Lin would have the "right" to compose highly technical scientific papers without access to data generated while she was employed at Rohm and Haas. The **right** to publish scientific papers based on work she did at Rohm and Haas (obviously, the contract language solely refers to the right to publish Rohm and Haas data as Dr. Lin has no need to obtain authorization from Rohm and Haas to publish non-Rohm and Haas data) inherently incorporates the **right** to review, study and evaluate Rohm and Haas data that will be incorporated into any resulting publication.

The specific language of the Agreement and Release (Defendant's Exhibit A-3) underscores a recognition of Dr. Lin's inherent right to use Rohm and Haas data. If the return of all data was an integral part of the agreement between the parties, one would have expected to see specific reference to that obligation in the body of the Agreement and Release as well. Clearly, no such reference is present. Rather, the "obligation", is relegated to certain attachments that set forth the standard obligations of any departing employee from Rohm and Haas. Normally, departing employees, however, do not retain the **right** to publish scientific papers based on the work they did at Rohm and Haas. That was a specifically negotiated significant benefit of the settlement of Dr. Lin's discrimination claim.

A closer analysis of the EEOC Settlement Agreement shows that the parties contemplated that they would enter into a separate agreement regarding Rohm and Haas' "expectations concerning confidentiality." (Defendant's ExhibitA-2, Para. 7.C.) In the

Agreement and Release, the parties further specified that Dr. Lin would abide by and be bound by the "post-separation provisions" of the Confidentiality and Employment Agreement and the Departing Employee Notice and Acknowledgment of Continuing Obligations together with the Acknowledgment and Records Security Statement. All of those documents, on their face, require that Rohm and Haas documents be returned to Rohm and Haas "no later than the last day worked." Therefore, the "post-separation provisions" that are specifically referenced in the Agreement and Release do not relate to the return of Rohm and Haas documents. Moreover, the Agreement and Release stresses that all other provisions notwithstanding the "post-separation obligations" of Dr. Lin regarding "confidentiality…remain inviolate." In interpreting the Agreement and Release, the Court may not assume that the language of the document was chosen carelessly. Obviously, the drafters of the Agreement and Release had some purpose in inserting the limiting reference to an ongoing obligation of "confidentiality" as opposed to <u>all</u> of the standard obligations required of departing employees.

The Agreement and Release also contains a clause that provides that the Agreement and Release controls any conflict with the routine departing employee obligations contained in the exhibits. (Defendant's Exhibit A-3, Para. 13) Once again, the Court must assume that the language was not inserted carelessly but that the parties inserted that language for a purpose. The reference to "conflicts" between the intended terms of the Agreement and Release and the ongoing routine obligations of departing employees as specified in the exhibits to the Agreement and Release is then followed by the clarification that the superceding terms of the Agreement and Release do not apply to the ongoing obligation of confidentiality. It is apparent from the terms of the documents

that the parties were specifically referencing the conflict between the limitations normally placed on departing employees and Dr. Lin's negotiated and acknowledged right of access to Rohm and Haas data for the purpose of supporting her "right to publish."

There is no dispute that Dr. Lin was bound by an ongoing obligation not to disclose Rohm and Haas trade secrets. The continuing obligation to respect confidentiality obligations is separate and apart, however, from the obligation to return all Rohm and Haas data.  Moreover, retention of a limited amount of Rohm and Haas data is not inconsistent with that obligation to maintain confidentiality.

Dr. Lin's interpretation of the intention of the parties is corroborated by the notations on her Termination Agreement. (Plaintiff's Exhibit 5).    On its face the Termination Agreement contains a standard form "Records Security Statement" acknowledging that the departing employee has "returned all Company Confidential documents." That language, however, is crossed off and replaced with the legend, "covered under Agreement and Release" on Dr. Lin's Termination Agreement. Common sense dictates that if the intent of the Records Security Statement was identical with or consistent with the intended terms of the Agreement and Release, there would be no reason to cross off the Record Security Statement. The only reasonable interpretation of the crossed off language requiring the return of all Rohm and Haas documents is that it was recognized as inconsistent with the intent of the parties under the Agreement and Release.

In its Opinion the Court observed that Dr. Lin had failed to produce any evidence to establish her right to Rohm and Haas data.  The Court explained its decision with a two-part analysis.  First, the Court concludes that there is no disputed issue of fact

because Dr. Lin failed to produce evidence to support her contention that in the
Preliminary Injunction Hearing, Rohm and Haas' representative, Ann Bowie, testified
inconsistently with a subsequent document production.  (Opinion, pp. 16-17)  That
portion of the Court's analysis misconstrues the fundamental nature of the issue.

Dr. Lin is a scientist.  All scientists, let alone all persons, have the right to publish
based upon the work they have performed.  The right to publish, however, is limited
where another party's intellectual property is involved.  A person may publish so long as
the publication does not violate trade secret or other confidential intellectual property
rights of some other party.

When Dr. Lin negotiated the settlement of her discrimination charge against
Rohm and Haas, one of the underlying benefits that she negotiated was the "right to
publish."  The only possible interpretation of this contractual language is that she
negotiated a right to publish scientific papers based on Rohm and Haas data.  If the
contractual provision in the Settlement Agreement with Rohm and Haas did not relate to
the right to publish based upon Rohm and Haas data, there is absolutely no sense or
purpose to the "benefit to Dr. Lin" provided by that in the agreement.  On its face, the
provision can have but one interpretation.  That interpretation requires that Dr. Lin be
given access to Rohm and Haas data pertaining to the work she performed at Rohm and
Haas for the purpose of creating scientific papers and presentations.

The interpretation claimed by Dr. Lin is corroborated by the notations on the
Termination Agreement.  The Record Security Statement of the Termination Agreement
is crossed off.  The Record Security Statement on its face, provides that Dr. Lin will
return all documents and data on the last day of her employment.  The notation also notes

15

that the Record Security Statement is being crossed off in light of the provision of the

Agreement and Release. Clearly, there is no reason to cross off the Record Security

Statement and refer to the Agreement and Release if the terms of the Agreement and

Release are consistent with the Records Security Statement. The only reasonable

interpretation for crossing off the Records Security Statement and referencing the

Agreement and Release is that the Records Security Statement was crossed off because

some provision of the Agreement and Release was inconsistent with the Record Security

Statement. At a minimum, the crossed off Records Security Statement raises a genuine

issue of fact and contract interpretation that cannot be resolved on a Motion for Summary

Judgement.

In its analysis, the Court noted that Dr. Lin had not produced the inconsistent

Termination Agreements of the other departing employees produced in discovery in the

Preliminary Injunction case. That observation, however, misses the point. The failure of

the discovery responses in the Preliminary Injunction action to corroborate Rohm and

Haas' "explanation" of the reason for crossing off the Record Security Statement merely

speaks to the credibility to Rohm and Haas' position. It does not negate the existence of

the underlying issue that Rohm and Haas' evidence addressed.

Obviously, it is Rohm and Haas' position that the Agreement and Release

requires the return of all Rohm and Haas documents and data upon separation of Dr. Lin

from her employment. The notations on the face of the Termination Agreement indicate

that Dr. Lin did not turn in the documents and data that she had in her possession when

she separated from employment. Moreover, it is abundantly clear that some specific

discussion took place with respect to the provisions of the Termination Agreement

because the crossed off Records Security Statement is initialed by a representative of Rohm and Haas and referenced to the Agreement and Release.

Where a written document, acknowledged and initialed by a representative of Rohm and Haas, appears on its face to be inconsistent with the interpretation of the agreement claimed by Rohm and Haas, an ambiguity exists that requires interpretation through parol evidence. It is that circumstance that raises a genuine issue of fact, not the observation that Dr. Lin failed to produce evidence to discredit the explanatory parol evidence subsequently offered on behalf of Rohm and Haas to suggest its interpretation. It is the existence of the issue that is relevant for purposes of summary judgement, not the presence or absence of corroborating evidence to support the credibility of the explanation offered by one or the other party. On the basis of the undisputed written record, there is a clear disparity between Rohm and Haas' claim that the Agreement and Release requires the return of all documents and data and the undisputed written legend on the Termination Agreement that acknowledges that Dr. Lin is not required to return documents and data as of the termination of her employment.

This Court's conclusion that the crossed off Records Security Statement, which appears to acknowledge that Dr. Lin did not return all documents and data, is consistent with the provisions of an Agreement and Release that requires her to return all documents and data is inherently internally inconsistent. On the basis of the record available to the Court for its consideration, there is a genuine issue of material fact with respect to the interpretation of Dr. Lin's right to retain scientific data and documents for the purpose of preparing her scientific publications. It is not the claimed "misrepresentation" of Rohm

and Haas' witness that is at issue. It is the fact that there is an issue requiring an explanation at all that verifies the existence of a genuine issue of material fact.

The Court next considered and rejected Dr. Lin's position that her right to publish "clearly inherently anticipated" that she would be given access to the necessary data. The Court concludes that although this may be Dr. Lin's interpretation, the record does not contain any evidence that Rohm and Haas attached the same interpretation prior to her complaints to the EEOC. The record, in fact, contains numerous references that confirm Rohm and Haas' concurrence that Dr. Lin had a right to review and analyze Rohm and Haas data in the preparation of her scientific publications.

The Court suggests that the only evidence presented by Dr. Lin to show that Rohm and Haas was aware of and approved the retention of data is a reference to a cited passage of Dr. Han's testimony. (Plaintiff's Exhibit H, pp. 291-293) The Court analyzes and rejects the significance of his testimony that a paper could not have been written without reference to underlying data "which he concluded did not constitute a trade secret." The Court apparently concluded that Dr. Lin was authorized to have access to scientific data so long as it was not "trade secret data." This conclusion is a legal non-sequitar. Under Pennsylvania Law, no data is "trade secret data." It is the interpretations given to data and the conclusions drawn from those interpretations that constitute trade secrets. The data itself does not constitute a trade secret.

In Pennsylvania, the Courts have adopted the definition of trade secret articulated by the Restatement of Torts, Section 757. **Felmlee vs. Lockett, 466 Pa. 1, 351 A.2d 273 (1976)**. The comments to Section 757 provide the following guidance:

> *"b. Definition of Trade Secret.* A trade secret may consist of any formula, pattern, device or compilation of

> information which is used in one's business, and which
> gives him an opportunity to obtain an advantage over
> competitors who do not know or use it.  It may be a
> formula for a chemical compound, a process of
> manufacturing, treating or preserving materials...It differs
> from other secret information in a business...in that it is not
> simply information <u>as to a single or a ephemeral events</u> in
> the conduct of the business...A trade secret is a process or
> device for <u>continuous use in the operation of the business</u>...

Thus, raw data, which is a "single or ephemeral event," is not and cannot be a trade

secret.  The Court's analysis of Dr. Han's testimony is therefore inapposit.

Based on the foregoing, the parties contemplated that Dr. Lin would be given

access to underlying scientific data, subject to her obligation to maintain its

confidentiality.  From that data, she would be permitted to prepare scientific papers and

presentations that identified scientific conclusions based upon her interpretation of that

data.  Her scientific publications would then be presented to Rohm and Haas for its

review to determine whether <u>her conclusions and interpretations</u> constituted Rohm and

Haas trade secrets.  Dr. Lin has always been willing to abide by that standard.  She

negotiated long and hard for that benefit in exchange for giving up important and

valuable rights under her discrimination claims.

Dr. Lin's position is and always has been that she does not have the right to

unilaterally disclose Rohm and Haas trade secrets.  Conversely, it is her equally strong

position that Rohm and Haas does not have the right to claim information that is not a

trade secret as its trade secret so as to prevent her from making an otherwise entirely

appropriate presentation.  That is the dispute that gave rise to this entire litigation.  When

Dr. Lin prepared her presentation to the American Chemical Society, Rohm and Haas

conducted a trade secret review and identified no trade secrets in her presentations.

Rather, Rohm and Haas objected to her discussion about "published patent information."

This entire dispute was generated when Dr. Lin asserted that Rohm and Haas had no right

to claim she was not authorized to discuss matters in the public domain.  Rohm and Haas

conversely asserted that it had the complete right of censorship and would "authorize"

her to discuss only the matters that it wanted, whether the matters were trade secret or

not.  (See, Letter of Michael McLaughlin, Defendant's Exhibit A-4)

Contrary to the Court's conclusion, the record supporting Dr. Lin's position is not

limited to the cited excerpt of the deposition testimony of Dr. Han.  In fact, in the excerpt

of Dr. Han's testimony incorporated into the record he specifically explains that he

discussed a list of publication areas with Dr. Lin where it was intended that she would

prepare a paper to submit for review.   (Plaintiff's Exhibit H, p. 295, 296)  Dr. Han

acknowledged that Dr. Lin was to prepare a paper  "based on Mo-V-Te-Nb chemistry"

using 1996 data.  Obviously, Rohm and Haas knew and agreed that the "1996 data"

would be made available to Dr. Lin so that she could create a paper which would then be

available for review.  There was never an objection to Dr. Lin's use of underlying Rohm

and Haas data.

Further evidence in support of Dr. Lin's position is also apparent from the record.

As set forth in her affidavit, Dr. Lin noted that she was engaged in numerous activities

that required her to have access to Rohm and Haas data prior to the complaint to the

EEOC.  For example, in December 1999, Dr. Lin was asked by Rohm and Haas to review

a patent application for one of her inventions to determine if the data contained in the

application was accurate.  She completed the review based upon data that was in her

possession and billed Rohm and Haas for her services. Rohm and Haas in fact paid for her services. Rohm and Haas was aware that she had data in her possession at that time and made no request that she return the data.

In February 2000, Dr. Lin completed a scientific paper based on a presentation she made in Remini, Italy the prior year. Dr. Lin made no request for additional data at the time she completed her paper but completed the paper based upon Rohm and Haas data that had been retained in her possession. Rohm and Haas made no objection and did not request that she return the data even though it was aware that she had to have the data in her possession to write the paper as of the time it was submitted for trade secret review, if not before. (Affidavit of Dr. Manhua Mandy Lin, ¶ 10) In March 2000, when Dr. Lin prepared her presentation for the American Chemical Society meeting, Rohm and Haas absolutely knew that she had data in her possession for the purpose of preparing that presentation. Dr. Han made a "trade secret review" of the presentation based upon Rohm and Haas data that was in Dr. Lin's possession. Mr. McLaughlin, counsel for Rohm and Haas, wrote to Dr. Lin immediately prior to her ACS presentation and clearly understood that she had data in her possession that was used to prepare the ACS presentation. His letter, advising Dr. Lin to limit the nature of her presentation, made no demand that she return the data upon which the presentation was based. (Defendant's Exhibit A4) In fact, Mr. McLaughlin affirmatively acknowledged that Dr. Lin's presentation in March 2000 "clearly demonstrated that you had copied and removed trade secret materials from Rohm and Haas." (Defendant's Exhibit A-10) Despite that clear demonstration, Rohm and Haas never requested that Dr. Lin return the data she had in her possession until after her EEOC claim came to light.

It is not necessary that Dr. Lin "establish" her contractual right of access to Rohm and Haas data for purposes of this motion.  Rather, it is sufficient that Dr. Lin demonstrate that there is a genuine issue of material fact with respect to the issue of whether she contractually negotiated a right to retain data for the purpose of preparing scientific papers based upon work she had done at Rohm and Haas.  The record provides overwhelming evidence that Dr. Lin retained data as of the time she separated from her employment at Rohm and Haas, that Rohm and Haas was aware that she retained data and made no objection, that Rohm and Haas made a specific notation on her Termination Agreement acknowledging that she was not returning all Rohm and Haas material in her possession and that Dr. Lin used the data in her possession for the purpose of preparing scientific presentations and publications subsequent to the termination of her employment, all without objection from Rohm and Haas.  Despite the record evidence of numerous events in which Rohm and Haas was aware that Dr. Lin had or had to have had Rohm and Haas data subsequent to the termination of her employment, the very first request that she return the data is a letter from counsel for Rohm and Haas dated May 26, 2000 (Defendant's Exhibit A10) in which Rohm and Haas specifically acknowledges that they were aware that she had data for at least two (2) months prior to the request for its return.  The request for its return occurred three days <u>after</u> Rohm and Haas became aware of Dr. Lin's complaints to the EEOC.

Contrary to this Court's finding, there are substantial grounds to demonstrate a genuine issue of fact with respect to Dr. Lin's claimed right to retain Rohm and Haas data for the purpose of preparing scientific publications and presentations.  Dr. Lin therefore respectfully requests that the Court reconsider its Order granting Summary Judgment

with respect to her right to publish based upon Rohm and Haas data and allow that the issue of retaliatory conduct with respect to this claim proceed to trial.

## II.    <u>CONCLUSION</u>

Dr. Lin is well aware that a Motion for Reconsideration is disfavored by the Court. It is not the purpose of this Motion to repeat arguments that have been fully examined and rejected by the Court. However, where, as here, the specific reasons for the Court's Order are directly at odds with the existing record, it is submitted that reconsideration of those portions of the Order are necessary to correct a clear error of law and to prevent manifest injustice.

On the basis of the foregoing it is respectfully requested that the Court reconsider those portions of its Order granting Summary Judgment on the issue of breach of contract and thereafter deny the Motion for Summary Judgment for Rohm and Haas as to the issue of breach of Rohm and Haas' contractual obligation to compensate Dr. Lin for assisting in the prosecution of patents and violating Dr. Lin's right to publish by denying access to Rohm and Haas data in retaliation for filing an informal charge with the EEOC.

Respectfully submitted,

_____
Hugh J. Hutchison, Esquire
Leonard, Tillery & Sciolla, LLP
1515 Market Street, Eighteenth Floor
Philadelphia, PA 19102
(215) 567-1530

*Attorney for Plaintiff Dr. Manhua Mandy Lin*