UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. MANHUA MANDY LIN : | |
| : | **Filed Under Seal** |
| Plaintiff : | |
| : | |
| vs. : | CIVIL ACTION NO.   02-cv-3612 |
| : | |
| ROHM AND HAAS COMPANY : | |
| : | JURY TRIAL DEMANDED |
| Defendant : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF, DR. MANHUA MANDY LIN'S, MOTION FOR RECONSIDERATION OF THE ORDER GRANTING SUMMARY JUDGMENT AS TO COUNTS II AND III OF PLAINTIFF'S AMENDED COMPLAINT**

**I.      Introduction**

By Order dated January 22nd, 2004 (and entered on January 26, 2004) this Court granted Defendant's Motion for Reconsideration or in the Alternative Renewed Motion for Summary Judgment.  The Order granted Summary Judgment as to Counts II and III of Plaintiff's Amended Complaint and dismissed the Amended Complaint with prejudice. By this motion, Plaintiff Dr. Manhua Mandy Lin seeks reconsideration of the Court's dismissal of Plaintiff's claims under Title VII and the PHRC to correct a clear error of law and prevent manifest injustice.  Further, Plaintiff seeks reconsideration on the basis of new evidence that was not previously available.  It is respectfully submitted that reconsideration of the Court's Order of January 26, 2004 is appropriate and that the Order entering Summary Judgment as to Counts II and III of Plaintiff's Amended Complaint should be vacated.  The record contains genuine issues of material fact with respect to both of those claims.

1

**II.      Argument**

      **A.      The Court's Restrictive Interpretation of Third Circuit Precedent is Unwarranted and Constitutes an Error of Law**

Defendant's Motion for Reconsideration or in the Alternative Renewed Motion for Summary Judgment asserted that the record, viewed in the light most favorable to Plaintiff, failed to raise genuine issues of material fact that the retaliatory conduct of Rohm and Haas constituted an "adverse employment action."  In resolving the motion, the Court relied on the precedent of <u>Robinson vs. City of Pittsburgh</u>, 120 F.3rd 1286 (3rd Circuit 1997).  The Court concluded that an "adverse employment action" under Title VII as defined by the Third Circuit required evidence that the retaliatory conduct "alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely effect his or her status as an employee." (Memorandum in Order, p. 2).  The Court then specifically recognized that, in a footnote, the <u>Robinson</u> court expanded on its explanation of the applicable law. (Memorandum and Order, p.3).  The Court clearly adopted the content of the footnote as further support for its analysis of the issues in this case.

      The court in <u>Robinson</u>, of course, analyzed the applicable law in the context of the facts presented to it.  Its holding, therefore, was addressed to the facts in that case.  However, the very footnote upon which this Court relied in its Memorandum and Opinion (<u>Robinson</u> at 1301, footnote 15) cites <u>with</u> <u>approval,</u> the opinion in <u>Passer vs. American Chemical Society,</u> 935 F.2nd 322, 331 (D.C. Circuit 1991). In <u>Passer,</u> the Defendant's retaliatory cancellation of a seminar planned in honor of Plaintiff gave rise to a retaliation claim because the cancellation <u>potentially</u> humiliated Plaintiff in the eyes of his peers and made it more difficult for him to procure future employment.  <u>Passer,</u>

2

cited in Plaintiff's original Memorandum in response to Defendant's Renewed Motion for Summary Judgment, clearly recognizes an "adverse employment action" <u>without proof of a specific instance</u> of a lost subsequent employment opportunity. A cause of action was stated merely by demonstrating that the conduct of the Defendant would make it more difficult to procure future employment. That is exactly the case presented by the record in this case.

<u>Robinson</u> also cites with approval <u>Nelson vs. Upsala College,</u> 51 F.3rd 383 (3rd Circuit 1995). <u>Robinson</u>, at 1301 footnote 15. Although the facts in <u>Nelson</u> did not give rise to a retaliation claim, the court determined that there was no claim because Nelson could not meet the standard that the alleged retaliatory conduct "had no impact on any employment relationship that Nelson had, <u>or</u> <u>might</u> <u>have</u> <u>in</u> <u>the</u> <u>future</u>." <u>Nelson</u> at 389. Clearly, although the facts in <u>Nelson</u> did not require the recognition of a broader standard, <u>Robinson</u> acknowledged and approved of the definition of an adverse employment action where the conduct of the Defendant <u>might</u>, in the future, have an adverse impact on an employment relationship.

This broader interpretation of the definition of "adverse employment action" is clearly the definition that is adopted by the EEOC. Title VII protects private citizens not only against invidious discrimination but also against retaliation or reprisals aimed at punishing complainants or deterring others from making similar complaints in the future. 42 U.S.C. § 2000e-3(a). This Court based its decision on the assumption that <u>Robinson</u> requires, in all circumstances, that retaliatory conduct must be serious or tangible enough to alter an employee's actual compensation, terms, or privileges of employment. The EEOC explicitly rejects that standard:

3

> The Commission disagrees with those decisions and concludes that such constructions are unduly restrictive. The statutory retaliation clauses prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity. Of course, petty slights and trivial annoyances are not actionable, as they are not likely to deter protected activity. More significant retaliatory treatment, however, can be challenged regardless of the level of harm. 1 EEOC Compliance Manual § 8-II (c) (3) (2000).

Obviously, there may be circumstances where a reasonable person might be deterred from engaging in protected activity even in the absence of serious and tangible employment consequences. The intent of the statute, on its face, is to prohibit conduct that not only causes direct and objective adverse consequences to the Plaintiff but will potentially intimidate others and cause them to refrain from exercising their rights as well. The Supreme Court has instructed that the EEOC Compliance Manual is entitled to deference to the extent of the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with all earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." EEOC vs. Arabian American Oil Company, 499 U.S. 244, 257 (1991) (quoting Skidmore vs. Swift and Company, 323 U.S. 134, 140 (1944). The standard addressed in the EEOC Compliance Manual contains imminently valid reasoning and appears consistent with the authorities cited with approval in footnote 15 of the Robinson opinion.

Inherent in the court's Memorandum and Opinion in support of its Order granting summary judgment is the concept of "no harm, no foul." The analysis fails to recognize the distinction between a violation and the availability of remedies. The nature of the damage sustained as a result of an unlawful personnel action goes to the issue of damages, not liability. An illegal act of retaliation is a wrong in itself under Title VII,

regardless of whether that wrong would warrant an award of remedies.  Hashimoto vs. Dalton, 118 F.3rd 671 (9th Circuit 1997).

On the basis of the foregoing, it is respectfully submitted that this Court, particularly in its reliance on only a portion of footnote 15 of Robinson, has endorsed a definition of "adverse employment action" that is far more restrictive than the Robinson court intended.  As there are sound policy reasons for recognizing a more expansive definition of the term "adverse employment action," many of which are specifically referenced in authorities cited with approval in footnote 15 of Robinson, it is respectfully submitted that the restrictive definition of adverse employment action adopted by this court constitutes a clear error of law that must be reversed to prevent manifest injustice.  Clearly, the conclusion does not interpret the record in the light most favorable to plaintiff.  This Court's Order of January 26, 2004 should be vacated and Counts II and III of the Amended Complaint should be reinstated to permit Plaintiff to prove her case at trial.

      **B.**    **This Court Should Reconsider Its Order of January 26th in Light of New Evidence**

It has long been recognized that a Motion for Reconsideration is appropriate "to present newly discovered evidence which would provide a basis for [the Court] to vacate, alter or modify [its] rulings."  Glaziers & Glassworkers Local 252 vs. Newbridge Securities, 823 F.Supp. 1188, 1190 (E.D.Pa. 1993) (Judge Joyner).  It is respectfully submitted that the record, as supplemented with previously unavailable objective evidence that Rohm and Haas' retaliatory conduct has directly caused an alteration of Dr. Lin's compensation from her employer, requires that this Court reconsider and vacate its decision that Dr. Lin has not suffered an "adverse employment action."

From the outset, it has been apparent that the Injunction action was not motivated by a legitimate effort to protect Rohm and Haas' intellectual property. The evidence of Rohm and Haas' trade secrets and intellectual property presented in the injunction hearing was demonstrably fabricated, sensationalized and misleading. As the evidence of "trade secrets" presented by Rohm and Haas lacked any legitimacy, it was clear that the entire proceeding was initiated and pursued for some other reason. It has been obvious to Dr. Lin that the conduct of Rohm and Haas throughout has been solely intended to undermine, compromise or outright destroy any opportunity that she might have to reenter the professional marketplace as research scientist. This is precisely the conduct that Dr. Han overtly threatened on the day before Dr. Lin gave her presentation to the American Chemical Society. (Rohm and Haas Exhibit A-7).

In the Injunction action, Rohm and Haas blindly pursued Dr. Lin with fabricated claims of trade secret disclosures. Rohm and Haas affirmatively sought to protect a "sealed record" so the truth could not be circulated while routinely and repeatedly informing its employees and others that Dr. Lin had "been found guilty of making unauthorized trade secret disclosures." Dr. Lin has no way to fight back to correct the misleading and damaging information distributed by Rohm and Haas without potentially violating the Order sealing the state court record. Rohm and Haas has knowingly undermined and sabotaged Dr. Lin's negotiated agreement that allowed her to make scientific presentations and publish scientific papers based upon the work that she performed while at Rohm and Haas. These acts, and others, were clearly undertaken with the intention of materially altering Dr. Lin's future employment prospects or conditions. Substantial evidence produced since the conclusion of the preliminary injunction hearing

6

has confirmed that Rohm and Haas' motive in filing the injunction action was to use its vast financial resources and predatory tactics to destroy, at all costs, any professional opportunity that might be available to Dr. Lin.  In its original order dismissing Dr. Lin's claims of retaliation, this Court concluded that the conduct of Rohm and Haas did not even raise an issue of fact as to whether that conduct had or would have a materially adverse effect on Dr. Lin's future employment opportunities.  Dr. Lin strongly disagrees.  Nevertheless, Rohm and Haas persisted in its tenacious effort to destroy Dr. Lin and the evidence of record now confirms, beyond any question, that Rohm and Haas' conduct has had a direct materially adverse impact on Dr. Lin's compensation, terms and conditions of employment.

Without even the slightest pretense of justification other than its claim that the Preliminary Injunction Order authorized access to any and every future scientific endeavor of Dr. Lin, Rohm and Haas sought blanket discovery of all of EverNu's intellectual property.  Rohm and Haas pursued this course despite the absolute knowledge that the published information identifying the subject of EverNu's research confirms that the research has absolutely nothing to do with the work that Dr. Lin was engaged in while employed at Rohm and Haas.  In the absence of any evidence that the work in which EverNu is engaged actually related to the work that Dr. Lin performed while employed at Rohm and Haas, there is no distinction between Dr. Lin's circumstances and those of every single former Rohm and Haas employee who is subsequently employed as a research chemist.  Rohm and Haas does not, however, seek blanket access to the work performed by all other former employees just to see if the ex-employee might be using Rohm and Haas confidential information.  Yet, even in the face of published information

that EverNu is not engaged in research relating to the work Dr. Lin did at Rohm and Haas, Rohm and Haas has remained relentless in its pursuit of litigation against Dr. Lin. That litigation has now been expanded to include her current employer, EverNu.

There can be no other purpose for Rohm and Haas' conduct other than to continue to harass Dr. Lin and cause her, and her employer, to expend substantial resources to fend off these attacks. Rohm and Haas knows that EverNu, as a start-up company, has limited resources available to it. Rohm and Haas knows that if it continues to pursue its aggressive efforts to undermine EverNu under the guise of "discovering" the research that Dr. Lin is engaged in, EverNu must eventually collapse under the onslaught. At a minimum, Rohm and Haas knows that its tenacious pursuit of Dr. Lin must cost her and her employer, directly or indirectly, substantial funds.

In granting the Motion for Summary Judgment, this Court concluded that Dr. Lin's "speculation" as to the effect that the Preliminary Injunction would have on future employment prospects was insufficient to establish that her future employment conditions had been "materially altered." Plaintiff's Response to Defendant's Motion for Reconsideration or in the Alternative Renewed Motion for Summary Judgment was filed on December 9, 2003. At that time, although EverNu had retained counsel to protect its intellectual property interests, neither Dr. Lin nor EverNu had any clear sense as to the cost of that legal representation and its direct impact on Dr. Lin's compensation.

Initial bills received from local counsel were relatively modest and could potentially be covered by reallocating indirect costs so as to minimize any impact on the compensation owed to Dr. Lin. However, subsequent to December 9, 2003, EverNu received statements for additional legal services from local counsel as well as statements

for services from Drinkle, Biddle & Reath, LLP. These services were required by EverNu as a direct product of Rohm and Haas' retaliatory conduct toward Dr. Lin, EverNu's Principal Scientist and President. With the receipt of these additional statements, it can be conclusively demonstrated, for the first time, that no amount of budgetary reallocation can provide sufficient financial resources to satisfy these obligations other than to use the funds that had been allocated to compensate Dr. Lin. The immediate and future impact of these events is to materially alter the compensation that Dr. Lin will be paid for her professional services to EverNu. As there are no alternative resources available to EverNu, the loss of Dr. Lin's compensation is irreversible.

It is now clear that Rohm and Haas will go to any extent to undermine any future opportunity that Dr. Lin might have to resume her profession as a research scientist. It is also now clear beyond any possible question that the conduct of Rohm and Haas has had a direct adverse impact on Dr. Lin's compensation and conditions of employment. EverNu has been required to invest a minimum of Ninety Thousand ($90,000) Dollars to protect its intellectual property. This unanticipated expense constitutes more than ten percent of all of EverNu's available resources and consumes virtually all of the funds that otherwise would have gone to Dr. Lin. As Rohm and Haas continues its unjustified pursuit of EverNu, the amount of funds that must be diverted to protect its intellectual property will clearly rise. There simply is no resource to pay the necessary legal fees other than to utilize the resources that otherwise would have been used to compensate Dr. Lin. On the basis of recent events, it is now clear that the Injunction action has caused a substantial and direct loss to Dr. Lin's compensation and materially altered the terms of

the only employment she could obtain. Further, Rohm and Haas' present course, if unchecked, must inevitably lead to the collapse of EverNu and with it, Dr. Lin's employment. Even when the most restrictive definition of adverse employment action is utilized in the analysis and evaluation of Dr. Lin's claims, the evidence of record now confirms that the conduct of Rohm and Haas has resulted in an adverse employment action.

      Dr. Lin has come to this Court seeking justice and an opportunity to put an end to this charade. The proof is there to demonstrate that Rohm and Haas' motive for initiating this litigation was unlawful retaliation. The proof is now present, beyond any question, that the unlawful retaliation has had a direct, adverse impact on Dr. Lin's compensation and terms of employment with EverNu. The Order dismissing Counts II and III of Plaintiff's Amended Complaint should be vacated and the trial on Counts II and III should be permitted to proceed.

**III.    Conclusion**

For all of the foregoing reasons it is respectfully requested that this Court reconsider its Order of January 26, 2004 and reinstate Counts II and III of Plaintiff's Amended Complaint.

          Respectfully submitted,

          LEONARD, TILLERY & SCIOLLA, LLP

          By:_____

          HUGH J. HUTCHISON, ESQUIRE
          Attorney I.D. No.: 02384
          1515 Market Street, 18th Floor
          Philadelphia, PA 19102-2068
          (215) 567-1530
          Attorney for Plaintiff

Date: