### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. MANHUA MANDY LIN | : | |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION NO.   02-CV-3612 |
| ROHM AND HAAS COMPANY | : | |
| Defendant | : | |

### AFFIDAVIT

I, Dr. Manhua Mandy Lin, depose and state as follows:

1.       I am the President and Principal Scientist of EverNu Technology, LLC a Pennsylvania Limited Liability Company.  I take this affidavit in support of the Motion for Reconsideration both as an individual Plaintiff in this matter and in my role as an officer of EverNu.

2.       By way of background, I incorporate the substance of my affidavits of December 9th, 2003 that were filed in opposition to Defendant's Motion for Reconsideration or in the Alternative Renewed Motion for Summary Judgment. EverNu is a start-up technology consulting company that has applied for research grants for various emerging technologies. EverNu's business depends on conducting Small Business Innovative Research (SBIR) funded entirely by federal government agencies.  EverNu obtains this federal funding by submitting grant applications to governmental agencies proposing solutions to unsolved scientific problems that those agencies have posed to the public at large.   Innovation is the key to successfully obtaining SBIR funding from the federal government which funds only about 10% of all SBIR proposals.  On its face, a

proposal that secures SBIR approval does not involve any other party's trade secret because the federal SBIR guidelines require that the successful SBIR proposals introduce new and innovative ideas that have not been previously explored.

3.     In 2002, EverNu submitted a grant application to the U.S. Department of Energy in response to a solicitation from the D.O.E.  The EverNu grant application sought funding for an original research project titled "Metal Oxide Catalyst for Methacyrlic Acid Preparation via One-step Oxidation of Isobutane."  The research has absolutely nothing to do with anything I worked on while employed at Rohm and Haas.

4.     EverNu was initially awarded One Hundred Thousand ($100,000) Dollars to conduct a feasibility study for the proposed research.  (Grant No. ER83420)  The feasibility study was conducted in collaboration with chemists associated with Temple University because EverNu lacked sufficient manpower and facilities to conduct the research on its own.  The research proposals and results for this project are confidential, propriety intellectual property of EverNu Technology and subject to confidentiality agreements with Temple University, the D.O.E. and the collaborating scientists.

5.     The D.O.E. publishes abstracts of the various grants awarded under its SBIR program.  Apparently, in March 2003, Rohm and Haas saw the abstract of this grant on the Internet.  Ever since that time, Rohm and Haas has been seeking access to EverNu's confidential technology along with any and all other documents and data concerning EverNu Technology.  Despite Rohm and Haas' relentless pursuit of EverNu's proprietary information, on the basis of published abstracts, Rohm and Haas absolutely knows that a project relating to metal oxide catalysts for methacrylic acid preparation via one-step oxidation of isobutane is completely unrelated to anything that I worked on

while I was at Rohm and Haas and could not involve the use of Rohm and Haas trade secrets. Rohm and Haas has pursued this strategy despite the specific acknowledgment in my Separation Agreement that I was free to pursue a career as a research scientist so long as I refrained from working in the limited area of acrylic acid catalysts for one year. In fact, during the Injunction Hearing Rohm and Haas' witnesses specifically testified that Rohm and Haas technology did not work for catalysis of methacrylic acid. Nevertheless, Rohm and Haas has tenaciously pursued its effort to obtain access to EverNu proprietary documents and data based on the argument that it is entitled under the Preliminary Injunction Order to have access to any and all of my scientific work product of any nature whatsoever. Rohm and Haas has merely argued that it is "self-evident" that all such data and documents are relevant to its claims against me as an individual. In effect, Rohm and Haas claims, and is affirmatively pursuing, an unlimited right of access to anything and everything I do as a research scientist for any future employer for an unlimited time into the future to determine, without any other justification, whether I am "using" Rohm and Haas "trade secrets" in the course of my work. To my knowledge, no other former Rohm and Haas employee has been subjected to a similar effort to obtain universal oversight of all their post-Rohm and Haas scientific work.

6. In April 2003, Rohm and Haas propounded a set of document requests upon me in the Injunction Action seeking the production of all grant applications filed by EverNu together with communications with all consultants and collaborators concerning those grant applications and all other documents relating to those grant applications. In response, objections were filed on my behalf on the grounds, among others, that all of the requested materials were the property of EverNu and therefore were not my documents to

produce. Rohm and Haas filed a Motion to Compel seeking an Order requiring me to produce EverNu's documents. By Order dated August 11, 2003, the Court of Common Pleas entered an Order requiring me to turn over to Rohm and Haas all of EverNu's confidential and proprietary information. I sought reconsideration of that Order.

7. I was advised and believed that the Order requiring me to produce EverNu's proprietary documents to one of its competitors was procedurally and substantively wrong and that EverNu needed to have its interests protected in Court. EverNu's interests include the interests of the D.O.E., Temple University and its collaborating scientists to the extent that they contributed to or have the contractual right to benefit from EverNu's work. On August 15, 2003, I met with and retained John Chesney, Esquire and the firm of Drinkle, Biddle & Reath, LLP to represent EverNu's interest in protecting its intellectual property. Subsequently, EverNu also retained Paul Troy, Esquire of Kane, Pugh, Knoll & Driscoll, LLP to act as local counsel in the Court of Common Pleas of Montgomery County.

8. On August 25, 2003, Rohm and Haas served EverNu with a Deposition Notice and a Subpoena Duces Tecum that purported to require EverNu to disclose information pertaining to virtually all of its activities, its internal organization, its sources of revenue, its scientific discoveries and publications and the roles of each of its collaborators. The discovery requests also required the production of virtually all of EverNu's confidential, proprietary and general business records. Attached hereto and incorporated herein as Exhibit XX is a true and correct copy of the Notice of Deposition and Subpoena Duces Tecum served on EverNu Technology. On August 28, 2003, Mr. Chesney filed a Motion for Protective Order on behalf of EverNu and requested that the

Court vacate its Order of August 11th that was addressed to me personally. On September 4th, 2003, Mr. Chesney filed a Motion to Quash the Subpoenas served on EverNu and asked the Court to enter a Protective Order to protect EverNu's proprietary intellectual property. Mr. Chesney also filed a Motion seeking an immediate Stay of the Court's Order requiring me to produce EverNu's proprietary information.

9. In response to those motions, Rohm and Haas vigorously attacked EverNu and claimed that the Preliminary Injunction Order gave it the right to complete and unrestricted access to all of EverNu's proprietary information solely because I worked for EverNu. Rohm and Haas claimed the right to review any and all of my scientific work or the fruits of my scientific work for my post-Rohm and Haas employer just to see if it contained any Rohm and Haas trade secret information.

10. On December 12, 2003, the Court heard oral argument on EverNu's motions. On December 16, 2003, the Court entered an Order denying both of EverNu's motions without Opinion. Attached hereto and incorporated herein as Exhibit YY is a true and correct copy of the Order of the Court of Common Pleas of December 16, 2003.

11. EverNu has filed an appeal of the Court's Order requiring the production of all of its proprietary information and contemporaneously filed an application with the Trial Court seeking an Order staying discovery pending the appeal. Rohm and Haas again aggressively attacked EverNu's effort to protect its proprietary information. In its Memorandum in Opposition to EverNu's Motion to Stay Pending Appeal, Rohm and Haas argued that "there can be no legitimate dispute about the fact that this discovery is germane and integral to this litigation as well as the enforcement of the Court's Order

enjoining Dr. Lin from using or disclosing Rohm and Haas trade secrets." No other substantive justification for its right to gain access to EverNu's proprietary information was offered despite the fact that all published information concerning the subject of EverNu's research confirms that it is unrelated to the work I did while employed at Rohm and Haas.

12. By Order dated January 27, 2004, the Court denied EverNu's application for stay pending appeal, again without opinion. Attached hereto and incorporated herein as Exhibit ZZ is a true and correct copy of the Court's Order of January 27, 2004.

13. EverNu has now filed an Application for a Stay Pending Appeal with the Superior Court of Pennsylvania. In support of that application, Mr. Chesney filed an extensive record together with a brief in support of its application. Attached hereto and incorporated herein as Exhibit AAA is a true and correct copy of the Brief in Support of Appellant EverNu Technology, LLC for a Stay Pending Appeal. The Brief was filed on February 3, 2004 and contains much of the relevant background to the dispute.

14. In April 2003, EverNu applied for a continuation of the D.O.E. grant to conduct original research on metal oxide catalysts for methacyrlic acid preparation via one-step oxidation of isobutane. In July 2003, the Department of Energy awarded EverNu additional funds in the amount of Seven Hundred Fifty Thousand ($750,000) Dollars to continue the research initiated under the original grant. Attached hereto and incorporated herein as Exhibit BBB is a true and correct copy of the abstract of that grant. In addition, EverNu applied for and was awarded a One Hundred Thousand ($100,000) Dollar grant from the Department of Energy to conduct a feasibility study for research on

a project titled "Metal Oxide Catalysts for Methyl Ethyl Keytone Production via One-step Oxidation of n-Butane." (Contract Number ER83652).

15. With the resources of these two grants and consistent with the grant application budgets submitted to and approved by the D.O.E., EverNu was to compensate me at the rate of Ten Thousand Fifty ($10,050) per month over two years for my services as Principal Investigator and as grant administrator.

16. In the first week of August 2003, EverNu received the first disbursement of funds under the continuation of its original grant. (Contract No. ER83420). EverNu has now received funds totaling Two Hundred Thirty-Four Thousand Nine Hundred Ninety-Nine ($234,999) Dollars from that grant. In the first week of September 2003, EverNu received the first disbursement of funds from its second grant for research for metal oxide catalysts for methyl ethyl keytone production. EverNu has now received funds totaling One Hundred Thousand ($100,000) Dollars from that grant. Attached hereto and incorporated herein as Exhibit CCC are the Remittance Notices from the Department of Energy reflecting the distribution of funds to EverNu under both grants.

17. EverNu's budget, as approved and funded by the Department of Energy grants, contains no provision for the payment of legal fees. EverNu first engaged counsel within a matter of days after its first receipt of funds under the Department of Energy grants. Counsel was retained on an emergency basis and I did not know or have any idea what the cost of the required legal services would be. It was not a matter that could be avoided, however, because without protection from Rohm and Haas' tenacious effort to obtain all of EverNu's proprietary information, EverNu could not continue to exist as a functioning entity. As a matter of business judgment, I believed it was prudent to retain

7

as much of EverNu's financial resources as possible to be able to meet the corporation's obligation to pay legal fees.  The only budget item that represented an opportunity to withhold significant funds was my compensation although there may be a modest ability to reallocate certain of the "indirect costs" in the budget to cover legal expenses.  EverNu has therefore paid all of its obligations except for my compensation.  It remained my hope that EverNu's proprietary information could be protected with a relatively small investment in legal fees that perhaps could have been paid out of savings from other indirect costs thereby permitting my full compensation to be restored.

18.  In the end of October and November 2003, EverNu received statements for services from Mr. Troy totaling Three Thousand Seven Hundred Ninety-Seven ($ 3,797.58) Dollars and Fifty-Eight Cents.  Attached hereto as Exhibit DDD are true and correct copies of the relevant portions of the statements of October and November from Mr. Troy.

19.  In December 2003 and January 2004, EverNu received additional statements from Mr. Troy in the aggregate amount of Three Thousand Four Hundred Eighty-Two ($3,482.50) Dollars and Fifty Cents.  On December 31, 2003, EverNu received its initial statement for services from Drinker, Biddle & Reath, LLP.  The statement covered services performed during the period of August 15, 2003 through November 30, 2003.  The total charge for fees and expenses was Sixty-Three Thousand Forty-Three ($63,043) Dollars.  In the first week of February EverNu received an additional bill for services through December 31, 2003 in the amount of Nineteen Thousand Five Hundred Forty-Four ($19,544) Dollars.  The total legal fees incurred by EverNu to date to protect its intellectual property interests and to protect the interests of

the D.O.E. and EverNu's collaborating scientists from disclosure to Rohm and Haas is Eighty-Nine Thousand Eight Hundred Sixty-Seven ($89,867) Dollars. Attached hereto and incorporated herein as Exhibit EEE are the statements for legal services incurred by EverNu since mid-December, 2003.

20.    It is now clear that the magnitude of the legal fees required to defend the intellectual property interests of EverNu will consume a substantial portion of the resources of EverNu that would otherwise have been available to pay me. These resources cannot be replaced by any other source. The original expectation was that I would begin receiving compensation at the rate of Ten Thousand Fifty ($10,050) Dollars per month as of July 2003. As a direct result of the conduct of Rohm and Haas, I have suffered a loss in compensation from EverNu of Eighty Thousand Four Hundred ($80,400) Dollars to date. It is obvious that those losses will continue to grow for so long as it takes to defend EverNu's intellectual property interests.

21.    I am personally familiar with the foregoing facts and I certify under penalty of perjury that they are true and correct to the best of my knowledge, information and belief.

_____/S/_____<br>DR. MANHUA MANDY LIN

Date:  February 9, 2004